## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V. | C.A. No. |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| ETI SOLID STATE LIGHTING INC. | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Signify North America Corporation and Signify Holding B.V. (collectively, "Signify") for their Complaint against ETI Solid State Lighting, Inc. ("ETI"), allege as follows:

## NATURE OF THE ACTION

1.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* including 35 U.S.C. § 271, which gives rise to the remedies specified under 35 U.S.C. §§ 281 and 283-285.

## THE PARTIES

2.     Plaintiff Signify North America Corporation is a corporation organized and existing under the laws of Delaware with its principal place of business at 400 Crossing Blvd, Suite 600, Bridgewater, NJ 08807.

3.     Plaintiff Signify Holding B.V. (formerly known as Philips Lighting Holding B.V.) is a corporation organized and existing under the laws of the Netherlands with its registered office at High Tech Campus 48, 5656 AE Eindhoven, The Netherlands.

4.     On information and belief, ETI is a limited liability company organized and existing under the laws of Ohio with its principal place of business at 4873 Thurmon Tanner Pkwy, Flowery Branch, GA 30542. ETI is registered to do business in the state of Georgia and has designated David A. Gilinsky, CPA, at its Flowery Branch location, as its registered agent.

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338 and because this action arises under the patent laws of the United States, 35 U.S.C. § 271, *et seq*.

6.     This Court has personal jurisdiction over ETI in this action because ETI has committed acts within this District giving rise to this action, and ETI has established minimum contacts with this forum such that the exercise of jurisdiction

over ETI would not offend traditional notions of fair play and substantial justice. ETI, directly and through subsidiaries or intermediaries, has conducted business and committed and continues to commit acts of infringement in this District by, among other things, making, using, importing, offering to sell, and selling products and providing services that infringe the Asserted Patents, and/or has induced acts of patent infringement by others in this judicial district, the State of Georgia, and elsewhere in the United States. Personal jurisdiction by this Court over ETI is appropriate at least under a specific jurisdiction and/or stream of commerce theory. Upon information and belief, ETI imports LED products, including the infringing products in this case, through several ports of entry throughout the United States. ETI intends for its LED products to be sold throughout the United States, including Georgia.

7.    In addition, ETI delivers LED products, including the products accused of infringement in this case, into the stream of commerce with the expectation that they will be purchased by customers in Georgia. ETI intends to and actually does serve the Georgia market, directly and indirectly, with its LED products. By way of example, ETI recently relocated its headquarters to Flowery Branch, GA and, according to its CEO, did so with the goal of "bringing [ETI] closer to key markets." On information and belief, ETI's Flowery Branch headquarters also serves as a warehousing and distribution facility. For example, ETI states that its "111,000-

square-foot facility will house both the company's office space and an extensive warehouse." *See* https://www.etissl.com/eti-lighting-announces-relocation-of-corporate-headquarters-to-flowery-branch-ga/.

8.      Further, ETI, both directly and through intermediaries, sells its products to customers in this District and throughout the State of Georgia. By way of example, ETI provides customers with a "Where to Buy" page on its website, where it provides contact information for a sales representative, based in Commerce, GA,[1] as an agent responsible for sales throughout the state. *See* https://www.etissl.com/where-to-buy/.

9.      To this end, ETI has initiated the purchase, importation, and sale of LED lighting products, including, upon information and belief, several of the products accused of infringement in this litigation. For example, ETI has imported substantial volumes of LED wrap lights, LED wall packs, and LED downlights into the United States, all of which are categories of infringing products. *See* Exs. J, K. Upon information and belief, these products are then delivered to ETI's Flowery Branch location in this district for sale to consumers in this district.

10.      ETI is aware that its products will reach Georgia and is further aware that its LED products are actually sold in Georgia. These infringing products have been and continue to be purchased by and used by consumers in Georgia. The

---

[1] https://www.linkedin.com/in/mitch-griffin-8353461b0/

exercise of jurisdiction over ETI would be fair and reasonable. Personal jurisdiction by this Court over ETI is also appropriate because ETI has had and continues to have substantial, continuous, and systematic contacts with this forum and has purposefully availed itself the benefits of conducting activities in the forum by purposefully directing its activities toward this state and this District.

11.    Plaintiff incorporates herein the allegations contained in the preceding paragraphs. Venue is proper in this judicial district pursuant to at least 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(b). As mentioned above, on information and belief, ETI is a limited liability company organized and existing under the laws of Ohio, and ETI has designated David A Gilinsky, CPA as its registered agent for service of process in this District. Furthermore, ETI may be sued in this district because it conducts regular business in this district, because, on information and belief, its principal place of business is in this District, and because it commits acts of infringement (i.e., sells and offers to sell accused products) in this District.

## THE PATENTS-IN-SUIT

12.    Signify (previously known as Philips Lighting) is a global market leader in solid state and connected lighting with unparalleled expertise in the development, manufacturing, and application of innovative LED lighting solutions.

13.    Signify is known the world over for being at the forefront of lighting innovation. Signify and its inventors have won many awards for their lighting work,

including the famed L-Prize and the IPO inventor of the year. Signify has used its cutting-edge technology to bring world class LED light installations at iconic American landmarks, such as the Empire State building, the San Francisco Bay Bridge, and the Georgia State Aquarium in Atlanta.



14.     Signify's wholly-owned subsidiary, Cooper Lighting is headquartered in the Northern District of GA, in Peachtree City. Within the Northern District, Cooper Lighting's LED products have been used to light numerous local landmarks and public facilities ranging from the Mercedes Benz Stadium to the Sprayberry High School football field in Marietta, GA, to the Henry County Board of Commissioners.







15.    Signify's LED products are even used to light the iconic Sanford Stadium at the University of Georgia.



16.    In addition to offering its state-of-the-art lighting products to consumers, Signify also funds the Signify Foundation, a non-profit organization dedicated to enabling access to the benefits of sustainable lighting solutions for

underserved communities. Since its founding in 2017, the Signify Foundation has impacted nearly 10 million people in 19 countries, bringing lighting solutions designed to facilitate access to fundamental services, to increase security, and provide livelihood opportunities to those in need.

17.     To protect its intellectual property resulting from its significant investments, Signify has obtained numerous patents directed to various LED inventions and technologies, including many originating from within this District. For example, Signify's LED-related patents include U.S. Patent Nos. 8,789,978; 9,709,253; 10,634,321; 10,506,682; 11,408,588; 9,677,727; 10,473,280; 7,654,703; and 7,511,437 (collectively, the "Patents-in-Suit" or "Asserted Patents").

18.     U.S. Patent No. 8,789,978 (the "'978 Patent"), titled "Light Emitting Diode Recessed Light Fixture," was duly and legally issued by the United States Patent and Trademark Office on July 29, 2014. The '978 Patent relates to an LED downlight module. The downlight module may include a heat sink, at least one LED coupled to the heat sink, a driver, and an adapter with an Edison based connector, allowing the fixture to be electrically coupled to an Edison base socket. The downlight module may also include mounting devices. Plaintiff Signify Holding B.V., formerly known as Philips Lighting Holding B.V., is the assignee and owner of all right, title, and interest in the '978 Patent, a copy of which is attached as Exhibit A.

19.    U.S. Patent No. 9,709,253 (the "'253 Patent"), titled "Light Emitting Diode Recessed Light Fixture," was duly and legally issued by the United States Patent and Trademark Office on July 18, 2017. The '253 Patent relates to a recessed lighting fixture including an LED module. The lighting fixture may include an adapter with an Edison screw-in plug at one end of the adapter and a plug connector at an opposing end, allowing the fixture to be electrically coupled to an Edison base socket. Plaintiff Signify Holding B.V., formerly known as Philips Lighting Holding B.V., is the assignee and owner of all right, title, and interest in the '253 Patent, a copy of which is attached as Exhibit B.

20.    U.S. Patent No. 10,634,321 (the "'321 Patent"), titled "Light Emitting Diode Recessed Light Fixture," was duly and legally issued by the United States Patent and Trademark Office on April 28, 2020. The '321 Patent relates to an LED downlight module. The downlight module may include an inner surface, at least one LED, a driver electrically coupled to the LED light source, and an adapter with an Edison screw-in plug at one end and a plug connector at the opposing end, allowing the driver to be electrically coupled to an Edison base socket. The downlight module may also include an LED light source with a first LED that emits light of a first color temperature and a second LED that emits light of a second color temperature. Plaintiff Signify Holding B.V., formerly known as Philips Lighting Holding B.V., is

the assignee and owner of all right, title, and interest in the '321 Patent, a copy of which is attached as Exhibit C.

21.    U.S. Patent No. 10,506,682 (the "'682 Patent"), titled "Configurable Lighting System," was duly and legally issued by the United States Patent and Trademark Office on December 10, 2019. The '682 Patent generally relates to a luminaire having a control module. The control module may include a switch having multiple positions and a plurality of resistive components coupled to the switch. The switch and resistive components may further be coupled to a light source. Plaintiff Signify Holding B.V., formerly known as Philips Lighting Holding B.V., is the assignee and owner of all right, title, and interest in the '682 Patent, a copy of which is attached as Exhibit D.

22.    U.S. Patent No. 11,408,588 (the "'588 Patent"), titled "Configurable Lighting System," was duly and legally issued by the United States Patent and Trademark Office on August 9, 2022. The '588 Patent generally relates to a luminaire for providing illumination of a selected color temperature, lumen output, or photometric distribution.  *See* '588 Patent at Abst. As explained in the '588 Patent, "[t]he luminaire can comprise at least two light sources that have different illumination characteristics, for example different color temperatures, different lumen outputs, or different photometric distributions. The system can configure the luminaire to operate a first of the two light sources, a second of the two light sources,

or both of the light sources based on an input." *Id.* Plaintiff Signify Holding B.V., formerly known as Philips Lighting Holding B.V., is the assignee and owner of all right, title, and interest in the '588 Patent, a copy of which is attached as Exhibit E.

23.    U.S. Patent No. 10,473,280 (the "'280 Patent"), titled "Wall Pack Light Fixture," was duly and legally issued by the United States Patent and Trademark Office on November 12, 2019. The '280 Patent generally relates to a lighting fixture with a housing comprising multiple components having a specific configuration to each other. For example, the lighting fixture disclosed by the invention may include a housing comprising a mounting box and a cover box that fastens to the mounting box. The lighting fixture may further include at least one LED for emitting light and a driver electrically connected to the at least one LED.  Plaintiff Signify Holding B.V., formerly known as Philips Lighting Holding B.V., is the assignee and owner of all right, title, and interest in the '280 Patent, a copy of which is attached as Exhibit G.

24.    U.S. Patent No. 9,677,727 (the "'727 Patent"), titled "Wall Pack Light Fixture," was duly and legally issued by the United States Patent and Trademark Office on June 13, 2017. The '727 Patent generally relates to lighting fixtures with a housing comprising multiple components having a specific configuration to each other. For example, the lighting fixture disclosed by the invention may include a housing comprising a mounting box and a cover box that fastens to the mounting

box. The lighting fixture may further include at least one LED for emitting light and a driver electrically connected to the at least one LED. The LED fixture may also have a mounting box of a first length and a cover box of a second length, wherein the length of the cover box is longer than the that of the mounting box. Plaintiff Signify Holding B.V., formerly known as Philips Lighting Holding B.V., is the assignee and owner of all right, title, and interest in the '727 Patent, a copy of which is attached as Exhibit F.

25.     U.S. Patent No. 7,654,703 (the "'703 Patent"), titled "Directly Viewable Luminaire," was duly and legally issued by the United States Patent and Trademark Office on February 2, 2010. The '703 Patent generally relates to devices that include thermally separate compartments for a luminaire. Plaintiff Signify Holding B.V., formerly known as Philips Lighting Holding B.V., is the assignee and owner of all right, title, and interest in the '703 Patent, a copy of which is attached as Exhibit H.

26.     U.S. Patent No. 7,511,437 (the "'437 Patent"), titled "Methods and Apparatus for High Power Factor Controlled Power Delivery Using a Single Switching Stage per Load," was duly and legally issued by the United States Patent and Trademark Office on March 31, 2009. The '437 Patent generally relates to lighting apparatus with a particular power configuration. Plaintiff Signify North

America Corporation is the assignee and owner of all right, title, and interest in the '437 Patent, a copy of which is attached as Exhibit I.

## FACTUAL BACKGROUND

27.    On information and belief, ETI is in the business of offering for sale, selling, and distributing lighting products, including light products based on LED technology.

28.    On information and belief, ETI directly and/or indirectly offers its infringing products online and in brick and mortar locations, to sell and distribute products throughout the United States, including this District.

29.    On information and belief, ETI makes, uses, offers to sell, sells, and/or imports the accused products.

30.    On information and belief, ETI makes, uses, offers to sell, sells, and/or imports the Color Preference Recessed Downlight with Nightlight Trim: DL-6-67-907-SV-D (hereinafter "Color Preference Downlight"), infringing at least the '978, '253, '321, '588, and '682 Patents. The Color Preference Downlight is mapped to the claims of certain of these patents later in this Complaint. An image of the Color Preference Downlight is provided below.



*See, e.g.*, Ex. L.

31.    On information and belief, ETI makes, uses, offers to sell, sells, and/or imports the 9" Decorative LED Color Preference Spin Light: SL-9-81-807-SV-N-BN (hereinafter "LED Spin Light"), infringing at least the '588 and '682 Patents. The LED Spin Light is mapped to the claims of these patents later in this Complaint. An image of the LED Spin Light is provided below.



*See, e.g.*, Ex. M.

32.     On information and belief, ETI makes, uses, offers to sell, sells, and/or imports the Outdoor Wall Pack Light: WP-78-850-MV (hereinafter "Wall Pack Light"), infringing at least the '280 and the '703 Patents. The Wall Pack Light is mapped to the claims of certain of these patents later in this complaint. An image of the Wall Pack Light is provided below.



*See, e.g.*, Ex. N.

33.    On information and belief, ETI makes, uses, offers to sell, sells, and/or imports the VersaPak Adjustable Wall Pack: VPK-1-LB3-CP3-MV-LVD (hereinafter "VersaPak Wall Pack"), infringing at least the '280, '727, and '703 Patents. The VersaPak Wall Pack is mapped to the claims of certain of these patents later in this Complaint. An image of the VersaPak Wall Pack is provided below.



*See, e.g.*, Ex. O.

34.    On information and belief, ETI makes, uses, offers to sell, sells, and/or imports the 18" Adjustable LED Under Cabinet Light with Growth Mode: GL-18IN-500LM-8-CP3-SV-TD (hereinafter "LED Under Cabinet Light"), infringing at least the '703 and '588 Patents. An image of the LED Under Cabinet Light is provided below.



*See, e.g.*, Ex. P.

35.    On information and belief, ETI makes, uses, offers to sell, sells, and/or imports the 4 FT EL Install Wrap Light infringing at least the '437 Patent. The 4 FT EL Install Wrap Light is mapped to the claims of this patent later in this Complaint. An image of the 4 FT EL Install Wrap Light is provided below.



*See, e.g.*, Ex. Q.

36.    At least as early as January 20, 2021, ETI received actual notice that certain of its products infringe the '253 Patent and the '703 Patent when Signify provided ETI with information about these patents and infringing products.

37.    At least as early as July 26, 2023, ETI received actual notice that certain of its products infringe the '978 Patent, the '321 Patent, the '280 Patent, the '588 Patent and the '437 Patent when Signify provided ETI with infringement analyses regarding these patents.

38.    ETI has long been aware of Signify's fundamental patent portfolio in the LED lighting space, first meeting with Signify in 2015 to discuss ETI's infringement of Signify's patents.  Since then, however, Signify has repeatedly tried, with no success, to meaningfully engage ETI to resolve ETI's longstanding infringement of dozens of Signify's patents.  Through many letters over the past decade, ETI has become well aware of its infringement, including its infringement of the Asserted Patents.  Yet, to this day ETI, has refused to meaningfully engage with Signify in a productive discussion to compensate Signify for its repeated and willful infringement of Signify's patents.

## GENERAL ALLEGATIONS

39.    ETI has directly and indirectly infringed and continues to directly and indirectly infringe each of the Patents-in-Suit by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), and/or (c), including but not necessarily limited to one or more of making, using, selling, offering to sell, and importing into the United States, and inducing and contributing to infringement by others, in this District and elsewhere in the United States, the products identified below.

40.    ETI's acts of infringement have caused and continue to cause damage to Signify. As a result of ETI's wrongful acts, Signify is entitled to recover damages from ETI in an amount to be awarded at trial.

41.    ETI's infringement of the Patents-in-Suit has been and continues to be willful. ETI has been aware of its infringement of Signify's patents since it received notice of infringement, but has continued to sell those products despite being forewarned of its infringement.

42.    ETI has committed and continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and ETI knew or should have known that its actions constituted an unjustifiably high risk of infringement.

43.    ETI's infringement of the Patents-in-Suit is causing irreparable harm for which Signify has no adequate remedy at law unless ETI is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the Patents-in-Suit.

44.    In the interest of providing detailed averments of infringement, Signify has identified below at least one claim per patent to demonstrate infringement. However, the selection of claims should not be considered limiting, and additional claims of the Patents-in-Suit that are infringed by ETI will be disclosed in compliance with any applicable local rules and standing orders.

## COUNT ONE

### (Infringement of U.S. Patent No. 8,789,978)

45.    Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

46.    On information and belief, ETI has directly infringed and is directly infringing claims of the '978 Patent, including at least claim 9, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, products substantially similar to the Color Preference Downlight mapped below, and/or other products with substantially similar features (collectively, the "'978 Accused Products").

47.    Signify names this exemplary infringing instrumentality to serve as notice of ETI's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '978 Accused Products.

48.    Claim 9 of the '978 Patent recites:

9. A downlight module, comprising:

a heat sink comprising an upper surface and a lower surface;

at least one light emitting diode (LED) thermally coupled to the heat sink;

a housing defining a cavity therein, the housing being coupled to the lower surface of the heat sink;

a plurality of mounting devices coupled to an external surface of the downlight module, wherein the mounting devices are disposed on opposite side surfaces of the downlight module and wherein the mounting devices being configured to be disposed within an interior of a light fixture housing when engaged to the light fixture housing;

a driver disposed above the upper surface of the heat sink, the driver being electrically coupled to the at least one LED; and

an adapter including an Edison based connector at one end configured to be electrically coupled to an Edison based socket and connected to the driver at an opposing end,

wherein the at least one LED emits light through the cavity.

49.     On information and belief, the Color Preference Downlight is a downlight module. For example, this limitation is shown below.



50.     On information and belief, the Color Preference Downlight comprises a heat sink comprising an upper surface and a lower surface. For example, this limitation is shown below.





51.     On information and belief, the Color Preference Downlight comprises at least one light emitting diode (LED) thermally coupled to the heat sink. For example, this limitation is shown below.



52.     On information and belief, the Color Preference Downlight comprises a housing defining a cavity therein, the housing being coupled to the lower surface of the heat sink. For example, this limitation is shown below.



53. On information and belief, the Color Preference Downlight comprises a plurality of mounting devices coupled to an external surface of the downlight module, wherein the mounting devices are disposed on opposite side surfaces of the downlight module and wherein the mounting devices being configured to be disposed within an interior of a light fixture housing when engaged to the light fixture housing. For example, this limitation is shown below.



54.     On information and belief, the Color Preference Downlight comprises a driver disposed above the upper surface of the heat sink, the driver being electrically coupled to the at least one LED. For example, this limitation is shown below.







55.    On information and belief, the Color Preference Downlight comprises

an  adapter  including  an  Edison  based  connector  at  one  end  configured  to  be

electrically coupled to an Edison based socket and connected to the driver at an opposing end. For example, this limitation is shown below.



56.    On information and belief, in the Color Preference Downlight, the at least one LED emits light through the cavity. For example, this limitation is shown below.



57.    The full extent of ETI's infringement is not presently known to Signify. On information and belief, ETI has made and sold, or will make and sell, products under different names or part numbers that infringe the '978 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '978 Patent that is infringed and each product that Signify is aware of that infringes the '978 Patent in accordance with the applicable scheduling order in this case.

58.    On information and belief, ETI has been aware of and has had notice of the '978 Patent and its infringement of the '978 Patent since at least July 26, 2023, when Signify provided its infringement analysis of the '978 patent, among many other Signify patents.

59.    On information and belief, by continuing to make, use, sell, offer to sell and/or import the '978 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 9 of the '978 Patent by active inducement under 35 U.S.C. § 271(b). ETI has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '978 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. ETI has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by ETI's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '978 Accused Products in the United States. ETI has performed and continues to perform these affirmative acts with knowledge of the '978 Patent and with knowledge and intent that such actions would induce infringement of the '978 Patent by ETI's direct and indirect customers.

60.    On information and belief, by continuing to make, use, sell, offer to sell an/or import the '978 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 9 of the '978 Patent by contributorily infringing under 35 U.S.C. § 271(c). ETI's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '978 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to ETI's customers and end-users directly infringing the '978 Patent. The '978 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by ETI to be especially made or especially adapted for use in infringement of the '978 Patent.

61.    On information and belief, ETI has performed and continues to perform the above-identified acts of infringement with knowledge of the '978 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the '978 Patent. Accordingly, ETI's continued infringement of the '978 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

62.    On information and belief, Signify has suffered and continues to suffer damages as a result of ETI's infringement of the '978 Patent in an amount to be determined at trial.

63. On information and belief, ETI's infringement of the '978 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless ETI is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '978 Patent.

64. On information and belief, and in light of the allegations above, including ETI's willful infringement of the '978 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

## COUNT TWO

### (Infringement of U.S. Patent No. 8,709,253)

65. Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

66. On information and belief, ETI has directly infringed and is directly infringing claims of the '253 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, products substantially similar to the Color Preference Downlight mapped below, and/or other products with substantially similar features (collectively, the "'253 Accused Products").

67. Signify names this exemplary infringing instrumentality to serve as notice of ETI's infringing acts, but Signify reserves the right to name additional

infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '253 Accused Products.

68.    Claim 1 of the '253 Patent recites:

1. A downlight module for use with a recessed housing located above a ceiling, comprising:

a heat sink, wherein the heat sink includes an inner surface;

at least one LED light source coupled to the inner surface of the heat sink, wherein the at least one LED light source is oriented to emit light out of the downlight module:

a driver electrically coupled to the at least one LED light source; and

an adapter comprising an Edison screw-in plug at one end of the adapter and a plug connector at an opposing end of the adapter, wherein the plug connector is configured to electrically couple and mechanically couple the adapter to the driver, and wherein the Edison screw-in plug is configured to electrically couple the driver to an Edison base socket.

69.    On information and belief, the Color Preference Downlight is a downlight module for use with a recessed housing located above a ceiling. For example, this limitation is shown below.



70.     On information and belief, the Color Preference Downlight comprises a heat sink, wherein the heat sink includes an inner surface. For example, this limitation is shown below.



71.    On information and belief, the Color Preference Downlight comprises at least one LED light source coupled to the inner surface of the heat sink, wherein the at least one LED light source is oriented to emit light out of the downlight module. For example, this limitation is shown below.



72.     On information and belief, the Color Preference Downlight comprises a driver electrically coupled to the at least one LED light source. For example, this limitation is shown below.



73.    On information and belief, the Color Preference Downlight comprises an adapter comprising an Edison screw-in plug at one end of the adapter and a plug connector at an opposing end of the adapter, wherein the plug connector is configured to electrically couple and mechanically couple the adapter to the driver, and wherein the Edison screw-in plug is configured to electrically couple the driver to an Edison base socket. For example, this limitation is shown below.



74.    The full extent of ETI's infringement is not presently known to Signify. On information and belief, ETI has made and sold, or will make and sell, products under different names or part numbers that infringe the '253 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its

identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '253 Patent that is infringed and each product that Signify is aware of that infringes the '253 Patent in accordance with the applicable scheduling order in this case.

75.     On information and belief, ETI has been aware of and has had notice of the '253 Patent and its infringement of the '253 Patent since at least January 20, 2021, when it received a letter from Signify informing it of the same.

76.     On information and belief, by continuing to make, use, sell, offer to sell and/or import the '253 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 1 of the '253 Patent by active inducement under 35 U.S.C. § 271(b). ETI has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '253 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. ETI has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by ETI's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '253 Accused Products in the United States. ETI has performed and continues to perform these affirmative acts

with knowledge of the '253 Patent and with knowledge and intent that such actions would induce infringement of the '253 Patent by ETI's direct and indirect customers.

77.    On information and belief, by continuing to make, use, sell, offer to sell an/or import the '253 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 1 of the '253 Patent by contributorily infringing under 35 U.S.C. § 271(c). ETI's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '253 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to ETI's customers and end-users directly infringing the '253 Patent. The '253 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by ETI to be especially made or especially adapted for use in infringement of the '253 Patent.

78.    On information and belief, ETI has performed and continues to perform the above-identified acts of infringement with knowledge of the '253 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the '253 Patent. Accordingly, ETI's continued infringement of the '253 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

79.    On information and belief, Signify has suffered and continues to suffer damages as a result of ETI's infringement of the '253 Patent in an amount to be determined at trial.

80.    On information and belief, ETI's infringement of the '253 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless ETI is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '253 Patent.

81.    On information and belief, and in light of the allegations above, including ETI's willful infringement of the '253 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

**COUNT THREE**

**(Infringement of U.S. Patent No. 10,634,321)**

82.    Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

83.    On information and belief, ETI has directly infringed and is directly infringing claims of the '321 Patent, including at least claim 8, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, products substantially similar to

the Color Preference Downlight mapped below, and/or other products with substantially similar features (collectively, the "'321 Accused Products").

84.    Signify names this exemplary infringing instrumentality to serve as notice of ETI's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '321 Accused Products.

85.    Claim 8 of the '321 Patent recites:

> 8. A downlight module comprising:
>
> an inner surface;
>
> a light emitting diode (LED) light source mechanically coupled to the inner surface of the downlight module, the LED light source comprising a first LED that emits a first light of a first color temperature and a second LED that emits a second light of a second color temperature such that the LED light source provides an output light that is a combination of the first light and the second light;
>
> a driver electrically coupled to the LED light source; and
>
> an adapter comprising an Edison screw-in plug at one end of the adapter and a plug connector at an opposing end of the adapter, wherein the plug connector is configured to electrically couple the adapter to the driver, and wherein the Edison screw-in plug is configured to electrically couple the driver to an Edison base socket.

86.    On information and belief, the Color Preference Downlight is a downlight module. For example, this limitation is shown below.



87. On information and belief, the Color Preference Downlight comprises an inner surface and a light emitting diode (LED) light source mechanically coupled to the inner surface of the downlight module, the LED light source comprising a first LED that emits a first light of a first color temperature and a second LED that emits a second light of a second color temperature such that the LED light source provides an output light that is a combination of the first light and the second light. For example, this limitation is shown below.





88.    On information and belief, the Color Preference Downlight comprises a driver electrically coupled to the LED light source. For example, this limitation is shown below.



89.    On information and belief, the Color Preference Downlight comprises an adapter comprising an Edison screw-in plug at one end of the adapter and a plug connector at an opposing end of the adapter, wherein the plug connector is configured to electrically couple the adapter to the driver, and wherein the Edison screw-in plug is configured to electrically couple the driver to an Edison base socket.

For example, this limitation is shown below.



90.     The full extent of ETI's infringement is not presently known to Signify. On information and belief, ETI has made and sold, or will make and sell, products under different names or part numbers that infringe the '321 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '321 Patent that is infringed and each product that Signify is aware of that infringes the '321 Patent in accordance with the applicable scheduling order in this case.

91.    On information and belief, ETI has been aware of and has had notice of the '321 Patent since at least July 26, 2023, when Signify provided its infringement analysis of the '321 Patent, among many other Signify patents.

92.    On information and belief, by continuing to make, use, sell, offer to sell and/or import the '321 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 8 of the '321 Patent by active inducement under 35 U.S.C. § 271(b). ETI has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '321 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. ETI has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by ETI's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '321 Accused Products in the United States. ETI has performed and continues to perform these affirmative acts with knowledge of the '321 Patent and with knowledge and intent that such actions would induce infringement of the '321 Patent by ETI's direct and indirect customers.

93.    On information and belief, by continuing to make, use, sell, offer to sell an/or import the '321 Accused Products on or after ETI first had notice of Signify's

allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 8 of the '321 Patent by contributorily infringing under 35 U.S.C. § 271(c). ETI's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '321 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to ETI's customers and end-users directly infringing the '321 Patent. The '321 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by ETI to be especially made or especially adapted for use in infringement of the '321 Patent.

94.    On information and belief, ETI has performed and continues to perform the above-identified acts of infringement with knowledge of the '321 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the '321 Patent. Accordingly, ETI's continued infringement of the '321 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

95.    On information and belief, Signify has suffered and continues to suffer damages as a result of ETI's infringement of the '321 Patent in an amount to be determined at trial.

96.    On information and belief, ETI's infringement of the '321 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless

ETI is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '321 Patent.

97.    On information and belief, and in light of the allegations above, including ETI's willful infringement of the '321 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

## COUNT FOUR

### (Infringement of U.S. Patent No. 10,506,682)

98.    Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

99.    On information and belief, ETI has directly infringed and is directly infringing claims of the '682 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, products substantially similar to the LED Spin Light mapped below, and/or other products with substantially similar features (collectively, the "'682 Accused Products").

100.    Signify names this exemplary infringing instrumentality to serve as notice of ETI's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '682 Accused Products.

101.    Claim 1 of the '682 Patent recites:

1. A luminaire comprising:

a control module comprising:

at least one first switch that has multiple positions; and

a plurality of resistive components coupled to the at least one first switch, wherein each position of the at least one first switch corresponds to a resistance of the plurality of resistive components, wherein the resistance determines a current level of a plurality of current levels when power is applied to the plurality of resistive components; and

a light source coupled to the control module, wherein the light source emits an output based on the current level received from the control module,

wherein the at least one first switch, when in any position of the multiple positions, and at least one of the plurality of resistive components are coupled to the light source,

wherein the light source illuminates when the power flows through the control module to the light source, regardless of the position of the at least one first switch.

102.    On information and belief, and to the extent the preamble is limiting,

the LED Spin Light is a luminaire. For example, this limitation is shown below.



103.   On information and belief, the LED Spin Light includes a control module comprising: at least one first switch that has multiple positions; and a plurality of resistive components coupled to the at least one first switch, wherein each position of the at least one first switch corresponds to a resistance of the plurality of resistive components, wherein the resistance determines a current level of a plurality of current levels when power is applied to the plurality of resistive components. For example, as shown in Exhibit R, the LED Spin Light includes a control module, including at least the portion identified as "SWITCH PCB," having the features listed above.

104.   For convenience, the portion labeled "SWITCH PCB" is shown below:



105.   On information and belief, the at least one first switch includes the switch labeled "K1 SLIDE SWITCH" in positions 2-3-10-11 (shown in above image), 3-4-9-10, and 4-5-8-9, as shown in Exhibit R.

106.   On information and belief, the plurality of resistive components includes at least the resistors labeled "R1" to "R10," including all resistors in between those numbers as shown in Exhibit R.

107.   On information and belief, the LED Spin Light includes a light source coupled to the control module, wherein the light source emits an output based on the current level received from the control module:



108. On information and belief, the at least one first switch of the LED Spin Light, when in any position of the multiple positions, and at least one of the plurality of resistive components are coupled to the light source. For example, as shown in Exhibit R, the switch "K1 SLIDE SWITCH" in the positions mentioned above is coupled to at least one of the resistors "R1" – "R10" and the light source, regardless of the position of the switch.

109. On information and belief, the light source illuminates when the power flows through the control module to the light source, regardless of the position of the at least one first switch. As shown below, the LED Spin Light includes a color selection switch which will cause the light source to illuminate at different colors, based upon the position of the switch:

 

110.    The full extent of ETI's infringement is not presently known to Signify. On information and belief, ETI has made and sold, or will make and sell, products under different names or part numbers that infringe the '682 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '682 Patent that is infringed and each product that Signify is aware of that infringes the '682 Patent in accordance with the applicable scheduling order in this case.

111.    On information and belief, ETI has been aware of and has had notice of the '682 Patent and its infringement of the '682 Patent since at least the filing and service of this Complaint.

112.    On information and belief, by continuing to make, use, sell, offer to sell and/or import the '682 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 1 of the '682 Patent by active inducement under 35 U.S.C. § 271(b). ETI has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '682 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. ETI has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by ETI's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '682 Accused Products in the United States. ETI has performed and continues to perform these affirmative acts with knowledge of the '682 Patent and with knowledge and intent that such actions would induce infringement of the '682 Patent by ETI's direct and indirect customers.

113.    On information and belief, by continuing to make, use, sell, offer to sell an/or import the '682 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 1 of the '682 Patent by contributorily infringing under 35 U.S.C. § 271(c). ETI's affirmative acts of manufacturing, selling, offering for sale,

and/or importing the '682 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to ETI's customers and end-users directly infringing the '682 Patent. The '682 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by ETI to be especially made or especially adapted for use in infringement of the '682 Patent.

114.    On information and belief, ETI has performed and continues to perform the above-identified acts of infringement with knowledge of the '682 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the '682 Patent. Accordingly, ETI's continued infringement of the '682 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

115.    On information and belief, Signify has suffered and continues to suffer damages as a result of ETI's infringement of the '682 Patent in an amount to be determined at trial.

116.    On information and belief, ETI's infringement of the '682 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless ETI is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '682 Patent.

117. On information and belief, and in light of the allegations above, including ETI's willful infringement of the '682 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

## COUNT FIVE

### (Infringement of U.S. Patent No. 11,408,588)

118. Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

119. On information and belief, ETI has directly infringed and is directly infringing claims of the '588 Patent, including at least claim 21, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, products substantially similar to the LED Spin Light mapped below, and/or other products with substantially similar features (collectively, the "'588 Accused Products").

120. Signify names this exemplary infringing instrumentality to serve as notice of ETI's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '588 Accused Products.

121. Claim 21 of the '588 Patent recites:

21. A lighting device comprising:

a first set of LED light sources each having a first color temperature and a second set of LED light sources each having a second color temperature;

at least one switch;

wherein at least one of the first set of LED light sources and the second set of LED light sources is controlled by the at least one switch;

wherein the at least one switch includes a first configuration associated with a third color temperature different from the first and second color temperatures and in between the first and second color temperatures, wherein the third color temperature is produced by mixing light emitted by at least a portion of the first set of LED light sources and light emitted by at least a portion of the second set of LED light sources.

122.    On information and belief, and to the extent the preamble is limiting, the LED Spin Light is a lighting device. For example, this limitation is shown below.



123.    On information and belief, the LED Spin Light comprises a first set of LED light sources each having a first color temperature and a second set of LED light sources each having a second color temperature.  For example, as shown below, the LED Spin Light has an array of warm white LEDs (orange LEDs) having a first color temperature and an array of cool white LEDs (yellow LEDs) having a second color temperature.



124.    On information and belief, the LED Spin Light comprises at least one switch. This switch is shown below:



125.   On information and belief, in the LED Spin Light, at least one of the first set of LED light sources and the second set of LED light sources is controlled by the at least one switch.  For example, the first set of LED sources are orange in the image below and the second set of LED light sources are yellow. On information and belief, when the switch is set to the 2700K position, the first set of LEDs illuminate and when the switch is set to the 5000K position, the second set of LEDs illuminate. On information and belief, the switch depicted below controls the LED light sources:





126.    On information and belief, in the LED Spin Light, the at least one switch includes a first configuration associated with a third color temperature different from the first and second color temperatures and in between the first and second color temperatures, wherein the third color temperature is produced by

mixing light emitted by at least a portion of the first set of LED light sources and light emitted by at least a portion of the second set of LED light sources. For example, as shown below, the switch has positions associated with different color temperatures, at least one of which, on information and belief, is between the first and second color temperatures and produced by mixing light emitted by at least a portion of the first and second sets of LED light sources:



127. The full extent of ETI's infringement is not presently known to Signify. On information and belief, ETI has made and sold, or will make and sell, products under different names or part numbers that infringe the '588 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '588 Patent that is infringed and

each product that Signify is aware of that infringes the '588 Patent in accordance with the applicable scheduling order in this case.

128.   On information and belief, ETI has been aware of and has had notice of the '588 Patent and its infringement of the '588 Patent since at least July 26, 2023, when Signify provided its infringement analysis of the '588 Patent, among many other Signify patents.

129.   On information and belief, by continuing to make, use, sell, offer to sell and/or import the '588 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 21 of the '588 Patent by active inducement under 35 U.S.C. § 271(b). ETI has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '588 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. ETI has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by ETI's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '588 Accused Products in the United States. ETI has performed and continues to perform these affirmative acts

with knowledge of the '588 Patent and with knowledge and intent that such actions would induce infringement of the '588 Patent by ETI's direct and indirect customers.

130.   On information and belief, by continuing to make, use, sell, offer to sell an/or import the '588 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 21 of the '588 Patent by contributorily infringing under 35 U.S.C. § 271(c). ETI's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '588 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to ETI's customers and end-users directly infringing the '588 Patent. The '588 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by ETI to be especially made or especially adapted for use in infringement of the '588 Patent.

131.   On information and belief, Signify has suffered and continues to suffer damages as a result of ETI's infringement of the '588 Patent in an amount to be determined at trial.

132.   On information and belief, ETI's infringement of the '588 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless

ETI is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '588 Patent.

133.    On information and belief, and in light of the allegations above, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

## COUNT SIX

### (Infringement of U.S. Patent No. 10,473,280)

134.    Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

135.    On information and belief, ETI has directly infringed and is directly infringing claims of the '280 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, products substantially similar to the Wall Pack Light mapped below, and/or other products with substantially similar features (collectively, the "'280 Accused Products").

136.    Signify names this exemplary infringing instrumentality to serve as notice of ETI's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '280 Accused Products.

137.    Claim 1 of the '280 Patent recites:

1. A light fixture comprising:

a housing comprising:

a mounting box forming a first cavity; and

a cover box that fastens to the mounting box, the cover box forming a second cavity, the cover box comprising:

a first side that faces the mounting box when the cover box is fastened to the mounting box;

a first plurality of walls defining an outer perimeter of the cover box;

a sealing surface within the outer perimeter of the cover box, the sealing surface engaging the mounting box when the cover box is fastened to the mounting box;

a second side that faces away from the mounting box when the cover box is fastened to the mounting box;

a lower portion of the cover box;

at least one light emitting diode (LED) oriented to emit light from the lower portion; and

a driver that is mounted within the housing and electrically connected to the at least one light emitting diode.

138. On information and belief, the Wall Pack Light is a light fixture. For example, this limitation is shown below.



139.   On information and belief, the Wall Pack Light comprises a housing. For example, this limitation is shown below.



140.   On information and belief, the Wall Pack Light comprises a mounting box forming a first cavity. For example, this limitation is shown below.



141. On information and belief, the Wall Pack Light comprises a cover box that fastens to the mounting box, the cover box forming a second cavity. For example, this limitation is shown below.



142.   On information and belief, the cover box of the Wall Pack Light comprises a first side that faces the mounting box when the cover box is fastened to the mounting box. For example, this limitation is shown below.



143.   On information and belief, the Wall Pack Light comprises a first plurality of walls defining an outer perimeter of the cover box. For example, this limitation is shown below.



Walls of cover box

144.   On information and belief, the Wall Pack Light comprises a sealing surface within the outer perimeter of the cover box, the sealing surface engaging the mounting box when the cover box is fastened to the mounting box. For example, this limitation is shown below.



Sealing surface within outer perimeter of cover box

Cover box

Mounting box

145.    On information and belief, the Wall Pack Light comprises a second side that faces away from the mounting box when the cover box is fastened to the mounting box. For example, this limitation is shown below.



146.    On information and belief, the Wall Pack Light comprises a lower portion of the cover box. For example, this limitation is shown below.



147.    On information and belief, the Wall Pack Light comprises at least one light emitting diode (LED) oriented to emit light from the lower portion. For example, this limitation is shown below.



LEDs oriented to emit light from lower portion of cover box

148.   On information and belief, the Wall Pack Light comprises a driver that is mounted within the housing and electrically connected to the at least one light emitting diode. For example, this limitation is shown below.



Driver electrically connected to LEDs

149.    The full extent of ETI's infringement is not presently known to Signify. On information and belief, ETI has made and sold, or will make and sell, products under different names or part numbers that infringe the '280 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '280 Patent that is infringed and each product that Signify is aware of that infringes the '280 Patent in accordance with the applicable scheduling order in this case.

150.    On information and belief, ETI has been aware of and has had notice of the '280 Patent and its infringement of the '280 Patent since at least July 26, 2023, when Signify provided its infringement analysis of the '280 patent, among many other Signify patents.

151.    On information and belief, by continuing to make, use, sell, offer to sell and/or import the '280 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 1 of the '280 Patent by active inducement under 35 U.S.C. § 271(b). ETI has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the

doctrine of equivalents, the '280 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. ETI has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by ETI's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '280 Accused Products in the United States. ETI has performed and continues to perform these affirmative acts with knowledge of the '280 Patent and with knowledge and intent that such actions would induce infringement of the '280 Patent by ETI's direct and indirect customers.

152.    On information and belief, by continuing to make, use, sell, offer to sell an/or import the '280 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 1 of the '280 Patent by contributorily infringing under 35 U.S.C. § 271(c). ETI's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '280 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to ETI's customers and end-users directly infringing the '280 Patent. The '280 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no

substantial non-infringing uses, and are known by ETI to be especially made or especially adapted for use in infringement of the '280 Patent.

153.   On information and belief, ETI has performed and continues to perform the above-identified acts of infringement with knowledge of the '280 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the '280 Patent. Accordingly, ETI's continued infringement of the '280 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

154.   On information and belief, Signify has suffered and continues to suffer damages as a result of ETI's infringement of the '280 Patent in an amount to be determined at trial.

155.   On information and belief, ETI's infringement of the '280 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless ETI is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '280 Patent.

156.   On information and belief, and in light of the allegations above, including ETI's willful infringement of the '280 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

## COUNT SEVEN

### (Infringement of U.S. Patent No. 9,677,727)

157.   Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

158.   On information and belief, ETI has directly infringed and is directly infringing claims of the '727 Patent, including at least claim 9, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, products substantially similar to the VersaPak Wall Pack mapped below, and/or other products with substantially similar features (collectively, the "'727 Accused Products").

159.   Signify names this exemplary infringing instrumentality to serve as notice of ETI's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '727 Accused Products.

160.   Claim 9 of the '727 Patent recites:

9. A light fixture comprising:

a housing comprising:

a mounting box having a first length, the mounting box forming a first cavity; and

a cover box that fastens to the mounting box, the cover box having a second length that is longer than the first length, the cover box comprising:

a second cavity that faces the mounting box when the cover box is fastened to the mounting box;

a sealing panel within the second cavity, the sealing panel engaging the mounting box when the cover box is fastened to the mounting box;

a lower portion; and

at least one light emitting diode (LED) oriented to emit light from the lower portion; and

a driver that is mounted within the housing and electrically connected to the at least one light emitting diode.

161.    On information and belief, the VersaPak Wall Pack is a light fixture.

For example, this limitation is shown below.



162.    On information and belief, the VersaPak Wall Pack comprises a housing. For example, this limitation is shown below.



163.    On information and belief, the VersaPak Wall Pack comprises a mounting box having a first length, the mounting box forming a first cavity. For example, this limitation is shown below.



164.   On information and belief, the VersaPak Wall Pack comprises a cover

box that fastens to the mounting box, the cover box having a second length that is

longer than the first length. For example, this limitation is shown below.





Mounting box having first length

Cover box having a second length

165.   On information and belief, the cover box of the VersaPak Wall Pack comprises a second cavity that faces the mounting box when the cover box is fastened to the mounting box. For example, this limitation is shown below.



166.    On information and belief, the VersaPak Wall Pack comprises a sealing panel within the second cavity, the sealing panel engaging the mounting box when the cover box is fastened to the mounting box. For example, this limitation is shown below.



167.   On information and belief, the VersaPak Wall Pack comprises a lower portion. For example, this limitation is shown below.



Lower portion of cover box

168.   On information and belief, the VersaPak Wall Pack comprises at least one light emitting diode (LED) oriented to emit light from the lower portion. For example, this limitation is shown below.



LEDs oriented to emit light from lower portion of cover box

169. On information and belief, the VersaPak Wall Pack comprises a driver that is mounted within the housing and electrically connected to the at least one light emitting diode. For example, this limitation is shown below.



Mounted driver electrically connected to LEDs

170.   The full extent of ETI's infringement is not presently known to Signify. On information and belief, ETI has made and sold, or will make and sell, products under different names or part numbers that infringe the '727 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '727 Patent that is infringed and each product that Signify is aware of that infringes the '727 Patent in accordance with the applicable scheduling order in this case.

171.    On information and belief, ETI has been aware of and has had notice of the '727 Patent and its infringement of the '727 Patent no later than the filing and service of this Complaint.

172.    On information and belief, by continuing to make, use, sell, offer to sell and/or import the '727 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 9 of the '727 Patent by active inducement under 35 U.S.C. § 271(b). ETI has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '727 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. ETI has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by ETI's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '727 Accused Products in the United States. ETI has performed and continues to perform these affirmative acts with knowledge of the '727 Patent and with knowledge and intent that such actions would induce infringement of the '727 Patent by ETI's direct and indirect customers.

173.    On information and belief, by continuing to make, use, sell, offer to sell an/or import the '727 Accused Products on or after ETI first had notice of Signify's

allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 9 of the '727 Patent by contributorily infringing under 35 U.S.C. § 271(c). ETI's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '727 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to ETI's customers and end-users directly infringing the '727 Patent. The '727 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by ETI to be especially made or especially adapted for use in infringement of the '727 Patent.

174.    On information and belief, ETI has performed and continues to perform the above-identified acts of infringement with knowledge of the '727 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the '727 Patent. Accordingly, ETI's continued infringement of the '727 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

175.    On information and belief, Signify has suffered and continues to suffer damages as a result of ETI's infringement of the '727 Patent in an amount to be determined at trial.

176.    On information and belief, ETI's infringement of the '727 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless

ETI is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '727 Patent.

177.  On information and belief, and in light of the allegations above, including ETI's willful infringement of the '727 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

## COUNT EIGHT

### (Infringement of U.S. Patent No. 7,654,703)

178.  Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

179.  On information and belief, ETI has directly infringed claims of the '703 Patent, including at least claim 17, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, products substantially similar to the Wall Pack Light mapped below, and/or other products with substantially similar features (collectively, the "'703 Accused Products").[2]

180.  Signify names this exemplary infringing instrumentality to serve as notice of ETI's infringing acts, but Signify reserves the right to name additional

---

[2] As non-limiting examples, certain of ETI's under cabinet LED lights, area lights, and high bay lights include substantially similar features as the Wall Pack Light mapped below and fall within the category of '703 Accused Products.

infringing products, known to or learned by Signify or revealed during discovery,

and include them in the definition of the '703 Accused Products.

181.  Claim 17 of the '703 Patent recites:

17. A luminaire comprising:

a housing defining a first internal compartment containing one or more light-emitting diodes mounted on a base connected to the housing,

the housing further defining a second internal compartment containing electronic driver means coupled to the one or more light-emitting diodes for providing controlled electrical energy to the one or more light emitting diodes, said first internal compartment thermally separated from the second internal compartment, each of said first internal compartment and said second internal compartment configured to dissipate heat,

wherein the driver means comprises a controller coupled to a power supply to provide the controlled electrical energy,

wherein at least one of the controller and the power supply is thermally isolated within the second internal compartment,

wherein the housing further includes a base cover enclosing the second internal compartment, the base cover configured as a heat sink for at least one of the controller and the power supply, and

wherein the base cover is removably attached to the base.

182.  On information and belief, the Wall Pack Light is a luminaire. For

example, this limitation is shown below.



183.   On information and belief, the Wall Pack Light contains a housing defining a first internal compartment and a second internal compartment.





184.   The first internal compartment of the Wall Pack Light contains one or more light emitting diodes, as shown in the picture below, that are mounted on a base connected to the housing.



185.   The Wall Pack Light's housing defines a second internal compartment that contains electronic driver means coupled to the one or more light-emitting diodes for providing controlled electrical energy to the one or more light emitting diodes, as shown in the below image.



186.    On information and belief, the Wall Pack Light's first internal compartment is thermally separated from the second internal compartment, each of said first internal compartment and said second internal compartment configured to dissipate heat.





187.   As shown below, the driver means of the Wall Pack Light comprises a controller coupled to a power supply to provide the controlled electrical energy to the LEDs. The power supply and controller are thermally isolated within the second compartment as shown above and below.





controller coupled to a power supply to provide the controlled electrical energy

188.    The housing further includes a base cover enclosing the second internal compartment, the base cover configured as a heat sink for at least one of the controller and the power supply.





189.    The base cover of the Wall Pack Light is removably attached to the base, as shown above.

190.    The full extent of ETI's infringement is not presently known to Signify. On information and belief, ETI has made and sold products under different names or part numbers that infringe the '703 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '703 Patent that is infringed and each product that Signify is aware of

that infringes the '703 Patent in accordance with the applicable scheduling order in this case.

191. On information and belief, ETI has been aware of and has had notice of the '703 Patent since at least January 20, 2021, when it received a letter from Signify informing it of the same.

192. On information and belief, by continuing to make, use, sell, offer to sell and/or import the '703 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed at least claim 17 of the '703 Patent by active inducement under 35 U.S.C. § 271(b). ETI has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '703 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. ETI has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by ETI's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the '703 Accused Products in the United States. ETI has performed and continued to perform these affirmative acts with knowledge of the '703 Patent and with knowledge and intent that such actions would induce infringement of the '703 Patent by ETI's direct and indirect customers.

193.    On information and belief, by continuing to make, use, sell, offer to sell an/or import the '703 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continued to indirectly infringe at least claim 17 of the '703 Patent by contributorily infringing under 35 U.S.C. § 271(c). ETI's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '703 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to ETI's customers and end-users directly infringing the '703 Patent. The '703 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by ETI to be especially made or especially adapted for use in infringement of the '703 Patent.

194.    On information and belief, ETI has performed and continued to perform the above-identified acts of infringement with knowledge of the '703 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the '703 Patent. Accordingly, ETI's continued infringement of the '703 Patent was willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

195.    On information and belief, Signify has suffered and continued to suffer damages as a result of ETI's infringement of the '703 Patent in an amount to be determined at trial.

196.   On information and belief, and in light of the allegations above, including ETI's willful infringement of the '703 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

## COUNT NINE

### (Infringement of U.S. Patent No. 7,511,437)

197.   Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

198.   On information and belief, ETI has directly infringed and is directly infringing claims of the '437 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, products substantially similar to or operating in a substantially similar manner to the 4 FT EZ Install Wrap Light mapped below, including products using substantially similar driving topology to the 4 FT EZ Install Wrap Light and/or other products with substantially similar features (collectively, the "'437 Accused Products").

199.   Signify names this exemplary infringing instrumentality to serve as notice of ETI's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '437 Accused Products.

200.    Claim 1 of the '437 Patent recites:

A lighting apparatus, comprising:

at least a first load that includes at least one first LED-based light source; and

a switching power supply including a first single switching stage for the first load, the switching power supply configured to provide power factor correction and a first load power to the first load via control of the first single switching stage,

wherein the switching power supply further is configured to control the first single switching stage to provide the first load power without monitoring or regulating a first load current or a first load voltage associated with the first load, the switching power supply further comprising a rectifier configured to be coupled to an A.C. voltage source and provide as an output a rectified voltage waveform; and at least one controller configured to control first switching operations of the first single switching stage,

wherein the first single switching stage comprises at least a first energy transfer arrangement configured to provide the first load power to the first load based on a periodic coupling of the rectified voltage waveform to the first energy transfer arrangement, and

wherein the at least one controller is configured to control first switching operations of the first single switching stage to implement the periodic coupling of the rectified voltage waveform to the first energy transfer arrangement and the provision of the first load power to the first load.

201.    The 4 FT EL Install Wrap Light is a lighting apparatus, as demonstrated in the picture below.



202.   Further, the 4 FT EZ Install Wrap Light includes a first load that includes at least one first LED-based light source.  As shown in the picture above, the 4 FT EZ Install Wrap Light includes an LED-based light source.  Moreover, the 4 FT EZ Install Wrap Light is advertised as having a "direct illumination LED array."  *See*  https://www.etissl.com/product/56567241-ez-install-direct-indirect-architectural-wrap-light/

203.   The 4 FT EZ Install Wrap Light includes a switching power supply including a first single switching stage for the first load.  This is shown by the driver located in the 4 FT EZ Install Wrap Light:



204.    The driver contains a switching power supply that includes a first single switching stage for the first load (the LEDs) as shown in the schematic below.



*See* Ex. T.

205.    The switching power supply includes a single switching stage, shown by least transformer T1, diodes D11, D12, and D13, and switch Q1 shown below.



206.   The switching power supply shown in the pictures above is configured to provide power factor correction and a first load power to the first load via controlling the first switching stage shown above.   Specifically, the controller marked U1, the PT4721, is a controller that provides power factor correction as well as a first load power to the first load (the LED) by controlling the first switching stage.



207.   The datasheet for U1 (the PowTech PT4271 controller) explains it is a "high-precision isolated primary power factor correction" control chip that controls LED loads using a "single-stage active PFC."  Ex. S at 5.  The PT4271 controller within the switching power supply "integrates active power factor correction circuit to achieve high power factor" and is "specifically targeted at LED solid-state lighting."  *Id.* at 1.

208.   Further, the switching power supply within the 4 FT EZ Install Wrap Light is configured to control the first switching stage (discussed above) to provide the first load power without monitoring or regulating a first load current or a first load voltage associated with the first load voltage associated with the first load.  As

shown in the above circuit schematics, and the accompanying data sheet for the PT 4721, the single switching stage (as set forth above) is controlled in the switching power supply to provide the first load power (to the LEDs) without monitoring or regulating the current or voltage associated with that load. The circuit schematic of the driver shows this, as well as the specification of the PT 4721, demonstrating it does not monitor or regulate the load current or voltage in the control of the first switching stage.



209.    Further, the switching power supply comprises a rectifier configured to be coupled to an A.C. voltage source and provide as an output a rectified voltage waveform. The rectifier shown in the below circuit diagram of the switching power supply is configured to be coupled to the shown AC source, and its output is, upon information and belief, a rectified voltage waveform. The rectifier is shown as BR2 in the switching power supply schematic below.



210.    The switching power supply further comprises at least one controller configured to control the first switching operations of the first single switching stage. Specifically, the switching power supply shown in the schematics above and below include a controller (shown as U1) that is configured to control the switching operations of the first single switching stage, which includes T1, D11, D12, D13, and Q1.



211.  The datasheet for PT4271 shows the controller is configured to control the switching operation of a single switching stage by outputting a pulse signal to drive the power switch. Ex. S at 1, 5.

212.  Further, the single switching stage within the driver comprises at least a first energy transfer arrangement configured to provide the first load power to the first load based, upon information and belief, on a periodic coupling of the rectified voltage waveform to the first energy transfer arrangement.  The energy transfer arrangement of the single switching stage includes at least transformer T1 and diodes D11, D12, and D13 shown below.



213.    The energy transfer arrangement shown above is configured to provide

the first load power to the first load based, upon information and belief, on a periodic

coupling of the rectified voltage waveform to the first energy transfer arrangement.

The rectified voltage waveform produced by rectifier BR2, discussed above, is

coupled to the above-shown energy transfer arrangement to provide the load power

to the first load (the LEDs shown below).



214.   The datasheet for the PT4721 shows the rectified voltage wave form is periodically coupled to the energy transfer arrangement, noting that the "pulse signal drives the power switch" and describing that the system transfers the input energy to the output through the transformer, and the output voltage begins to rise. Ex. S at 5.

215.   Further, the at least one controller (U1, PT4721) is configured to control the first switching operations of the first single switching stage to implement the periodic coupling of the rectified voltage waveform to the first energy transfer arrangement and the provision of the first load power to the first load (the LEDs). The schematics and discussion above demonstrate that the controller PT 4721 does control the first switching operations of the first single switching stage to implement

the periodic coupling of the rectified voltage waveform to the first energy transfer arrangement (shown above) and provide the load power to the first load (LEDs).

216.   Further, the datasheet of the PT 4721 shows control of the switch (through GATE pin 5) to periodically allow current flow through the primary side of T1 thereby implementing the periodic coupling of the rectified voltage waveform to the first energy transfer arrangement, and providing the first load power to the first load (through T1 and diodes D11-D13).



Pin Description

| Pin Number SOP-8 | Pin Name | Pin Function Description |
|---|---|---|
| 1 | | COMP loop compensation terminal |
| 2 | | DET detects the inductor current zero-crossing moment and is used for CV control and OVP protection |
| 3 | | CS current sampling terminal, the sampling resistor is connected between CS and GND terminals |
| 4 | | GND Ground terminal |
| 5 | | GATE External MOSFET gate drive terminal |
| 6 | | VCC chip power supply |
| 7 | | EN analog dimming input |
| 8 | | DIM PWM dimming input |

217.   The full extent of ETI's infringement is not presently known to Signify. On information and belief, ETI has made and sold, or will make and sell, products under different names or part numbers that infringe the '437 Patent in a similar

manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '437 Patent that is infringed and each product that Signify is aware of that infringes the '437 Patent in accordance with the applicable scheduling order in this case.

218.    On information and belief, ETI has been aware of and has had notice of the '437 Patent since at least July 26, 2023.

219.    On information and belief, by continuing to make, use, sell, offer to sell and/or import the '437 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 1 of the '437 Patent by active inducement under 35 U.S.C. § 271(b). ETI has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '437 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. ETI has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by ETI's direct and indirect customers, including the making,

using, selling, offering for sale and/or importation of the '437 Accused Products in the United States. ETI has performed and continues to perform these affirmative acts with knowledge of the '437 Patent and with knowledge and intent that such actions would induce infringement of the '437 Patent by ETI's direct and indirect customers.

220.   On information and belief, by continuing to make, use, sell, offer to sell an/or import the '437 Accused Products on or after ETI first had notice of Signify's allegations of infringement, ETI indirectly infringed and continues to indirectly infringe at least claim 1 of the '437 Patent by contributorily infringing under 35 U.S.C. § 271(c). ETI's affirmative acts of manufacturing, selling, offering for sale, and/or importing the '437 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to ETI's customers and end-users directly infringing the '437 Patent. The '437 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by ETI to be especially made or especially adapted for use in infringement of the '437 Patent.

221.   On information and belief, ETI has performed and continues to perform the above-identified acts of infringement with knowledge of the '437 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the

'437 Patent. Accordingly, ETI's continued infringement of the '437 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

222.   On information and belief, Signify has suffered and continues to suffer damages as a result of ETI's infringement of the '437 Patent in an amount to be determined at trial.

223.   On information and belief, ETI's infringement of the '437 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless ETI is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '437 Patent.

224.   On information and belief, and in light of the allegations above, including ETI's willful infringement of the '437 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

## DEMAND FOR A JURY TRIAL

Signify hereby demands trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Signify prays for the following judgments and relief:

(a)    A judgment that ETI has infringed and is infringing the Patents-in-Suit;

(b)    A permanent injunction against ETI and its affiliates, subsidiaries, assignees, employees, agents or anyone acting in privity or concert from infringing

the Patents-in-Suit, including enjoining the making, offering to sell, selling, using, or importing into the United States products claimed in any of the claims of the Patents-in-Suit; using or performing methods claimed in any of the claims of the Patents-in-Suit; inducing others to use and perform methods that infringe any claim of the Patents-in-Suit; or contributing to others using and performing methods that infringe any claim of the Patents-in-Suit, until the expiration of the Patents-in-Suit;

(c)    A judgment that ETI's infringement of the Patents-in-Suit was willful and that ETI's continued infringement of the Patents-in-Suit is willful;

(d)    An award of damages adequate to compensate Signify for ETI's patent infringement, and an accounting to adequately compensate Signify for the infringement, including, but not limited to, lost profits and/or a reasonable royalty;

(e)    An award of pre-judgment and post-judgment interest at the maximum rate allowed by law;

(f)    An award of damages for willful infringement;

(g)    An order finding that this is an exceptional case and awarding Signify its costs, expenses, disbursements, and reasonable attorneys' fees related to ETI's patent infringement under 35 U.S.C. § 285 and all other applicable statutes, rules and common law; and

(h)    Such other further relief, in law or equity, as this Court deems just and proper.

Dated: May 2, 2025                    /s/ JOSHUA M. WEEKS
                                      Adam D. Swain
                                      ALSTON & BIRD LLP
                                      950 F. Street, NW
                                      Washington, D.C. 20004-1404
                                       (202) 239-3622

                                      Joshua Weeks
                                      ALSTON & BIRD LLP
                                      1201 West Peachtree Street
                                      Atlanta, GA 30309
                                      (404) 881-7405

                                      *Attorneys for Plaintiffs Signify Holding
                                      B.V. and Signify North America
                                      Corporation*

## **CERTIFICATION**

In accordance with L.R. 5.1C, I hereby certify that this document has been prepared in 14-point, Times New Roman font.

*/s/ Joshua Weeks*
Joshua Weeks
ALSTON & BIRD LLP