UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V.<br><br>Plaintiffs,<br><br>v.<br><br>ETI SOLID STATE LIGHTING INC.<br><br>Defendant. | Case No. 2:25-cv-00121-RWS |
| ETI SOLID STATE LIGHTING INC.,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>SIGNIFY NORTH AMERICA CORPORATION, SIGNIFY HOLDING B.V., and COOPER LIGHTING, LLC,<br><br>Counterclaim-Defendants. | |

## SCHEDULING ORDER

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan [Dkt. 22] form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court.

Discovery will close on **April 20, 2026**.

1

IT IS SO ORDERED, this 25th day of _August_, 2025.

_____
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V.<br><br>Plaintiffs,<br><br>v.<br><br>ETI SOLID STATE LIGHTING, INC.<br><br>Defendant.<br><br>ETI SOLID STATE LIGHTING, INC.,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>SIGNIFY NORTH AMERICA CORPORATION, SIGNIFY HOLDING B.V., and COOPER LIGHTING, LLC,<br><br>Counterclaim-Defendants. | Case No. 2:25-cv-00121-RWS |

## JOINT PRELIMINARY REPORT AND DISCOVERY PLAN

1. **Description of Case:**

(a)     **Describe briefly the nature of this action.**

Plaintiffs Signify North America Corporation and Signify Holding B.V. (collectively, "Signify") have brought this action against ETI Solid State Lighting,

1

Inc. ("ETI"), asserting claims of patent infringement arising under 35 U.S.C. § 1 *et seq.* including 35 U.S.C. § 271. Specifically, Signify has asserted that ETI has infringed U.S. Patent Nos. 8,789,978; 9,709,253; 10,634,321; 10,506,682; 11,408,588; 9,677,727; 10,473,280; 7,654,703; and 7,511,437 (collectively, the "Patents-in-Suit"). ETI denies that it has infringed any valid patent asserted by Signify or that Signify is entitled to any relief that it may seek.

ETI has asserted claims of patent infringement against Signify and Cooper Lighting, LLC[1] ("Cooper"). Specifically, ETI has asserted that Cooper infringes U.S. Patent Nos. 10,462,871; 10,492,262; and RE49,030. Cooper denies that it infringes any valid and enforceable claim asserted by ETI or that ETI is entitled to any relief it may seek. ETI has also asserted that Signify Holding B.V. infringes U.S. Patent No. 10,352,510. Signify Holding B.V. denies that it infringes any valid and enforceable claim asserted by ETI or that ETI is entitled to any relief it may seek.

ETI alleges that U.S. Patent No. 11,408,588 ("the '588 Patent") is unenforceable due to inequitable conduct. ETI contends that Signify personnel

---

[1] Cooper disputes that it has properly been named as a defendant in this lawsuit and maintains that all claims against it should be dismissed (*see* Dkt. 20). Throughout this Preliminary Report and Discovery Plan, Plaintiffs have described the issues to be tried and discovery that will need to be taken for the claims against Cooper for the sake of completeness. Cooper's position remains, however, that it is not properly a party to this action and should be dismissed.

intentionally withheld material prior art from the USPTO during prosecution of the '588 Patent, despite being aware of these references and their materiality.

**(b)    Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

### Plaintiff:

Signify (previously known as Philips Lighting) is a global market leader in solid state and connected lighting with unparalleled expertise in the development, manufacturing, and application of innovative LED lighting solutions. Signify owns over 5,000 granted patents.  Signify alleges that certain LED lighting products made, used, sold, offered for sale, and imported by ETI infringe one or more of the Patents-in-Suit, and that ETI's infringement of the Patents-in-Suit has been willful. Accordingly, Signify seeks, among other things, the entry of a permanent injunction against ETI, an award of damages adequate to compensate Signify for ETI's infringement, and enhanced damages based upon ETI's willful infringement.

### Defendant:

ETI also is a global market leader in solid state and connected lighting with unparalleled expertise in the development, manufacturing, and application of innovative LED lighting solutions. ETI has its own strong patent portfolio highlighting the advanced technologies it has developed in this space. ETI alleges that certain LED lighting products made, used, sold, offered for sale, and imported

3

by Signify and/or Cooper infringe one or more of U.S. Patent Nos. 10,462,871; 10,492,262; RE49,030; and 10,352,510 ( "ETI's Patents-in-Suit"), and that their infringement of ETI's Patents-in-Suit has been willful.  Accordingly, EIT seeks, among other things, the entry of a permanent injunction against Signify and Cooper, an award of damages adequate to compensate ETI for Signify and Cooper's infringement, and enhanced damages based upon Signify and Cooper's willful infringement.

**(c)     The legal issues to be tried are as follows:**

**Plaintiff:**

1.    Whether ETI's products infringe the Patents-in-Suit;

2.    Whether ETI should be enjoined from future infringement of the Patents-in-Suit;

3.    The amount of damages adequate to compensate Signify for ETI's infringement;

4.    Whether ETI willfully infringed any of the Patents-in-Suit;

5.    Whether the Court should award Signify enhanced damages to Signify based on ETI's willful infringement;

6.    Whether the Court should award Signify its costs, expenses, disbursements, and reasonable attorneys' fees related to ETIs' infringement;

4

7.    Whether ETI proves any affirmative defenses that it may raise;

**Defendant:**

1.    Whether Signify's personnel committed inequitable conduct;

2.    Whether any asserted claims of the Patents-in-Suit are invalid;

3.    Whether ETI is entitled to prevail on any of its defenses;

4.    What are the scope and meaning of certain claim terms of the Patents-in-Suit and ETI's Patents-in-Suit;

5.    Whether Signify and Cooper's products infringe ETI's Patents-in-Suit;

6.    Whether Signify and Cooper should be enjoined from future infringement of ETI's Patents-in-Suit;

7.    The amount of damages adequate to compensate ETI for Signify and Cooper's infringement;

8.    Whether Signify and Cooper willfully infringed any of ETI's Patents-in-Suit;

9.    Whether the Court should award enhanced damages to ETI based on Signify and Cooper's willful infringement;

10.    Whether the Court should award ETI its costs, expenses, disbursements, and reasonable attorneys' fees related to Signify and Cooper's infringement;

**(d)     The cases listed below (include both style and action number) are:**

(1)     Pending Related Cases: The Patents-in-Suit are currently at issue in the following cases:

| Patent Number | Pending Action |
|---|---|
| 8,789,978 | None. |
| 9,709,253 | None. |
| 10,634,321 | None. |
| 10,506,682 | None. |
| 11,408,588 | None. |
| 9,677,727 | None. |
| 10,473,280 | None. |
| 7,654,703 | None. |
| 7,511,437 | None. |

(2)     Previously Adjudicated Related Cases:  The Patents-in-Suit have previously been at issue in the following cases:

| Patent Number | Previous Action |
|---|---|
| 8,789,978 | • *Cooper Lighting, LLC v. Cordelia Lighting, Inc. et al*, 1:16-cv-02669 (NDGA);<br>• *Cordelia Lighting, Inc. et al. v. Cooper Lighting, LLC*, IPR2017-01860 (PTAB); |
| 9,709,253 | • *Signify Holding B.V. v. Keystone Technologies, LLC*, 2-24-cv-06761 (EDPA) (transferred from NDGA)<br>• *Signify North America Corporation et al v. All Star Lighting Supplies, Inc. d/b/a Luxrite*, 3-22-cv-03150 (DNJ) |

6

| | |
|---|---|
| | • *Satco Products, Inc. v. Signify North America Corporation et al.*, 6-21-cv-00146 (WDTX) <br> • *Signify North America Corporation et al v. Lepro Innovation Inc. et al.*, 2-22-cv-02095 (DNV) |
| 10,634,321 | • None. |
| 10,506,682 | • *Signify Holding B.V. v. Keystone Technologies, LLC*, 2-24-cv-06761 (EDPA) (transferred from NDGA) <br> • *Signify Holding B.V. et al v. EEMA Industries Inc.*, 2:25-cv-03928 (CDCA) |
| 11,408,588 | • *Signify Holding B.V. v. Keystone Technologies, LLC*, 2-24-cv-06761 (EDPA) (transferred from NDGA) <br> • *Signify Holding B.V. et al v. EEMA Industries Inc.*, 2:25-cv-03928 (CDCA) |
| 9,677,727 | • None. |
| 10,473,280 | • None. |
| 7,654,703 | • *Signify North America Corporation et al v. Current Lighting Solutions, LLC*, 1-23-cv-00767 (DDE) <br> • *Current Lighting Solutions, LLC v. Signify Holding BV et al.*, 1-23-cv-11398 (DMA) |
| 7,511,437 | • None. |

**2.    This case is complex because it possesses one or more of the features listed below (please check):**

Plaintiff:    At this time, Plaintiff is not aware of any information, beyond the potential use of multiple expert witnesses, that indicates this case would be any more complex than a typical case alleging infringement of multiple patents.

_____    (1)    Unusually large number of parties
_____    (2)    Unusually large number of claims or defenses
_____    (3)    Factual issues are exceptionally complex

7

|       | (4)  | Greater than normal volume of evidence |
|-------|------|------|
|       | (5)  | Extended discovery period is needed |
|       | (6)  | Problems locating or preserving evidence |
|       | (7)  | Pending parallel investigations or action by government |
| X     | (8)  | Multiple use of experts |
|       | (9)  | Need for discovery outside United States boundaries |
|       | (10) | Existence of highly technical issues and proof |
|       | (11) | Unusually complex discovery of electronically stored information |

Defendant:

|       | (1)  | Unusually large number of parties |
|-------|------|------|
| X     | (2)  | Unusually large number of claims or defenses |
|       | (3)  | Factual issues are exceptionally complex |
|       | (4)  | Greater than normal volume of evidence |
| X     | (5)  | Extended discovery period is needed |
|       | (6)  | Problems locating or preserving evidence |
|       | (7)  | Pending parallel investigations or action by government |
| X     | (8)  | Multiple use of experts |
|       | (9)  | Need for discovery outside United States boundaries |
| X     | (10) | Existence of highly technical issues and proof |
|       | (11) | Unusually complex discovery of electronically stored information |

## 3.    Counsel:

**The following individually-named attorneys are hereby designated as lead counsel for the parties:**

Plaintiff:

        Adam D. Swain
        Alston & Bird LLP

Defendant:

        David B. Cupar
        McDonald Hopkins LLC

## 4.    Jurisdiction:

Is there any question regarding this Court's jurisdiction?

_____ Yes            __X__ No

8

If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.

**5.    Parties to This Action:**

**(a)**    The following persons are necessary parties who have not been joined:

   None at this time.

**(b)**    The following persons are improperly joined as parties:

   Cooper: As explained in its motion to dismiss (Dkt. 20), Cooper

   Lighting, LLC is not properly a defendant in, and cannot be joined to, this

   action.  All claims against Cooper should be dismissed.

   ETI: Because the law and facts belie Cooper's motion to dismiss (Dkt.

   20), ETI will fill an opposition brief showing how Cooper is a properly

   named party in this suit.

**(c)**    The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:

   None at this time.

**(d)**    The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.

**6.    Amendments to the Pleadings:**

   Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed.R.Civ.P. 15. Further instructions regarding amendments are contained in LR 15.

**(a)**    List separately any amendments to the pleadings that the parties anticipate

9

will be necessary:

      Plaintiff's Statement: None at this time.

      Defendant's Statement: ETI reserves the right to amend its willful

infringement claims against Signify and Cooper.

**(b)**    Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.

**7.**    **Filing Times For Motions:**

      All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.

      All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

**(a)**    *Motions to Compel*: before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

**(b)**    *Summary Judgment Motions*: within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.

**(c)**    *Other Limited Motions*: Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

**(d)**    *Motions Objecting to Expert Testimony*: Daubert motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2E.

**8.**    **Initial Disclosures:**

      The parties are required to serve initial disclosures in accordance with Fed.R.Civ.P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures

10

should include electronically stored information.  Refer to Fed.R.Civ.P. 26(a)(1)(B).

There are no objections to either party's Initial Disclosures.

## 9.    Request for Scheduling Conference:

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.

Neither party requests a scheduling conference at this time.

## 10.    Discovery Period:

The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

Please state below the subjects on which discovery may be needed:

**Plaintiff:** Discovery will be needed on the facts relating to all of the legal issues raised in Plaintiff's Complaint and all defenses asserted by Defendant including, but not limited to:

- The identification and functionality of ETI's products that infringe the Patents-in-Suit;

- The amount of damages adequate to compensate Signify for ETI's infringement;

11

- ETI's knowledge of the Patents-in-Suit and its infringement thereof.

- The validity of the patents ETI alleges to be infringed by Signify and Cooper;

- The amount of damages adequate to compensate ETI for the alleged infringement by Signify and Cooper;

- All efforts undertaken by ETI to notify Signify and Cooper of their alleged infringement

**Defendant:**

- Whether Signify committed inequitable conduct; The identification and functionality of Signify and Cooper's products that infringe the Patents-in-Suit;

- The amount of damages adequate to compensate ETI for Signify and Cooper's infringement;

- Signify and Cooper's knowledge of ETI's Patents-in-Suit and its infringement thereof;

- The validity of ETI's patents;

- The amount of damages to compensate ETI for the alleged infringement by Signify and Cooper;

- Lack of patent marking by Signify and its licensees so that Signify's damages did not commence until it filed this suit.

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

**Plaintiff:** At this time, Plaintiff is not aware of any information indicating that additional time, beyond that allowed by the Local Rules and the Local Patent Rules, will be required for discovery in this case.

**Defendant:** Because of the total number of claims and counterclaims, it will make sense for the parties and the Court to provide the necessary time for discovery, claim construction, expert discovery and dispositive motions. Defendant therefore reserves the right to request additional time as needed and in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

## 11.   Discovery Limitation and Discovery of Electronically Stored Information:

**(a)**   What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

Interrogatories: The parties agree to proceed as provided by the Federal Rules of Civil Procedure.

Requests for Production:  The parties agree to proceed as provided by the

Federal Rules of Civil Procedure.

Depositions:

Fact depositions:

- The parties agree to proceed per the Federal Rules of Civil Procedure, *i.e.* 10 depositions. Fed.F.Civ.P. 30(a)(2)(A)(i).

Expert depositions:

- The parties agree that any expert witness opining on the issues of infringement or invalidity should be subject to a single deposition of seven (7) hours on the record for each patent for which they offer any opinions. The parties further agree that any other expert witness, such as an expert on damages, be subject to a single deposition of seven (7) hours on the record.

Clawback Agreement: The parties agree that production of otherwise privileged documents and/or data, or documents or data otherwise not subject to discovery, is not a waiver of such privilege or protection so long as the responding party identifies the documents and/or data mistakenly produced. The parties agree that documents and/or data shall be returned

14

under those circumstances.

Privilege logs:

- The parties agree that privilege logs will be provided for all documents and correspondence created prior to the filing of this lawsuit and withheld from production on the basis of the work product doctrine, attorney-client privilege, common interest/joint defense privilege, or other applicable privilege or immunity, unless such documents or correspondence were created solely by or exchanged solely between attorneys.  Plaintiff submits that the parties should not need to log post-suit documents and/or communications.

Service: The Parties consent and agree, pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), that service may be made by electronic mail, with copies sent to all attorneys of record for the party served.

**(b)**   Is any party seeking discovery of electronically stored information?

_____X_____ Yes   _____ No

If "yes,"

(1)   The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

15

Absent a showing of good cause, the following sources need not be searched for documents and information responsive to the Parties' discovery requests: automated disaster recovery backup systems and/or disaster recovery backup tapes; RAM or temporary files; temporary internet files, history, cache, cookies, and other on-line access data; data in metadata fields that are updated automatically such as last-opened dates; data remaining from systems no longer in use that is unintelligible on the systems in use; residual, fragmented, damaged, permanently deleted, and unallocated data; legacy computer systems; audio files; video files; server systems; network logs; personal digital assistants; mobile devices; cell phones; voicemails; USB flash drives, or the like; portable disks; voicemail systems; and instant messaging conversations (*e.g.*, Skype, Slack, gChat, Teams, etc.).

Further, the parties submit the following proposals on e-mail discovery:

- **Plaintiff:** Given that ETI had notice of the Asserted Patents and its infringement of the same prior to Plaintiff filing this lawsuit, Plaintiff believes that email discovery will be probative of its claims for willful and induced infringement in this case. Plaintiff believes that reasonable limits on email discovery should be imposed to ensure that the discovery is proportional to the needs of the case, but, given that Defendant has not yet produced any documents or other information,

it is not possible to determine the appropriate scope of email discovery at this time. Plaintiff submits that the parties should be directed to meet and confer on this issue after the parties have produced non-email documents and should seek guidance from the Court if an agreement cannot be reach at that time.

- **Defendant:** Given that: (1) Signify and Cooper allegedly had at least constructive notice and potential actual knowledge of ETI's Asserted Patents and its infringement of the same prior to ETI filing its counterclaims and (2) Signify's personnel allegedly knew about prior art (including its own prior art) material to the '588 patent but did not disclose it to the USPTO that would have prevented that patent from issuing, email discovery will be probative of its claims for inequitable conduct, patent infringement, damages, and willful infringement. ETI also believes that reasonable limits on email discovery should be imposed to ensure that the discovery is proportional to the needs of the case, but, given that Signify and Cooper have not yet produced any documents or other information (despite admitting that it has been in discussions with ETI for a decade), it is not possible to determine the appropriate scope of email discovery at this time. ETI agrees that the parties should meet and confer on this issue after the parties have

17

produced non-email documents and should seek guidance from the

Court if an agreement cannot be reach at that time.

(2)    The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

See Exhibit A

In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

## 12.    Other Orders:

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

The parties believe that a protective order is necessary for the protection of

confidential documents and information sought in discovery.  Pursuant to Patent

L.R. 2.2, the parties will meet and confer regarding the preparation of a stipulated

protective order to govern the production of commercially or technologically

sensitive information in this case.

## 13.    Settlement Potential:

**(a)**    Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on August 8th, 2025.  The parties previously participated in an in-person meeting to discuss the possibility of settlement.  The persons who participated in one or more of the settlement discussions are listed according to party.

For plaintiff: Lead counsel (signature): */s/ Adam Swain*

18

Other participants:  Joshua Weeks, Mher Hartoonian, Daniel Gaudet

For defendant: Lead counsel (signature): */s/ David Cupar*

Other participants:  Coby Nixon.

**(b)**    All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

(\_\_\_X\_\_) A possibility of settlement before discovery.
(\_\_\_\_\_) A possibility of settlement after discovery.
(\_\_\_\_\_) A possibility of settlement, but a conference with the judge is needed.
(\_\_\_\_\_) No possibility of settlement.

**(c)**    Counsel (\_\_X\_\_) do or (\_\_\_\_) do not intend to hold additional settlement conferences among themselves prior to the close of discovery. The proposed date of the next settlement conference is TBD.

**(d)**    The following specific problems have created a hindrance to settlement of this case.

The parties are not aware of any such issues at this time.

## 14.    Trial by Magistrate Judge:

Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.

**(a)**    The parties (\_\_\_\_) do consent to having this case tried before a magistrate judge of this Court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this _____ _____ day, of 20\_\_\_.

**(b)**    The parties (\_\_X\_\_) do not consent to having this case tried before a magistrate judge of this Court.

Respectfully submitted, this 22nd day of August, 2025.

**SIGNIFY HOLDING B.V., SIGNIFY NORTH AMERICAN CORPORATION, and COOPER LIGHTING, LLC**

/s/ Joshua M. Weeks
Joshua Weeks
Georgia Bar No. 545063
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree St., Suite 4900
Atlanta, GA 30309-3424
Phone: 404.881.7000
Joshua.Weeks@alston.com

Adam D. Swain (*admitted pro hac vice*)
ALSTON & BIRD LLP
The Atlantic Building
950 F Street, NW
Washington, DC 20004-1404
Phone: 202-239-3300
Adam.swain@alston.com

**ETI SOLID STATE LIGHTING, INC.**

/s/ Coby S. Nixon
Coby S. Nixon
Georgia Bar No. 545005
Seth K. Trimble
Georgia Bar No. 851055
Cory Mull
Georgia Bar No. 595376
**BUCHALTER APC**
3475 Piedmont Road NE, Suite 1100
Atlanta, Georgia 30305
Telephone: (404) 832-7530

20

Email: cnixon@buchalter.com
        strimble@buchalter.com
        cmull@buchalter.com

David B. Cupar (*pro have vice*)
**MCDONALD HOPKINS LLC**
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114
Telephone: (216) 348-5400
Email: dcupar@mcdonaldhopkins.com

*Counsel for Defendant and Counterclaim-Plaintiff ETI Solid State Lighting, Inc.*

21

# Exhibit A
(Joint Proposed ESI Provisions)

The following parameters shall apply to Electronically Stored Information ("ESI") production:

(a)    The general document image format of each electronic document produced shall be single-page TIFF Group IV images, black and white, at 300 x 300 dpi resolution with a standard delimited concordance format (DAT file) and either IPRO (LFP file) or Opticon (OPT file) format, including document breaks and page counts. The producing Party may, at any time, reproduce any document in color in JPG format or at a higher resolution. Documents reproduced in color or at a higher resolution shall bear the same production number(s) as the originally produced document where practicable. A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF image filename.

(b)    Images shall be produced using a unique file name that will be the production number of that page (e.g., ABC000001.TIF). The production number shall appear on the face of the image.

(c)    Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g., comma-separated value (.csv) files and tab-separated value (.tsv) files shall be produced in either their native file format or MS Excel. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files,

1

other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not be unreasonably denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields. A TIFF placeholder indicating that the document was provided in native format should accompany the database records. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

(d)     In addition, when possible native files shall be produced using a name that bears the production number, for example: ABC000002.xls. The DAT file shall also include a path to the native file.

(e)     Parent-child relationships (association between an attachment and its parent document) shall be preserved to the extent such relationships are maintained in the normal course of business in the source repository. The attachment(s) shall be produced adjacent to the parent document in terms of production numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment. Any parent-child relationship will be reflected in the DAT file.

2

(f)     Productions that contain foreign-language documents shall be Unicode compliant.

(g)     To the extent possible, the unitization of a produced electronically stored document and any attachments or affixed notes shall be maintained as it existed in the original file or computer. Scanned/paper documents should be logically unitized (*i.e.*, to preserve page breaks between documents and otherwise allow separate documents to be identified).

(h)     If unitization cannot be maintained, the original unitization shall be documented in the associated load file or otherwise electronically tracked if possible.

(i)     A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard-copy documents written in English or other Latin-character language. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

(j)     The Parties will use their best efforts to filter out common system files and application executable files and scan document productions

3

for viruses. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. To the extent source code is otherwise responsive to a discovery request it shall be produced only upon (i) a showing by the requesting party of a particularized need for the source code that cannot reasonably be met via other means and (ii) the entry of an appropriate protective order that includes provisions for the production/review of source code.

(k)    The Parties are required to produce only a single copy of a responsive document and the Parties may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians, provided all custodians from whose files the document was collected are identified in the ALL CUSTODIAN field (see below).

(l)    The Parties are not required to preserve metadata fields that are frequently updated in the ordinary course of business, such as last-opened dates.

(m)    The Parties shall not be required to create any metadata for production (e.g., hash value or other metadata not associated with ESI in the ordinary course of business) except that the Parties will create a field to indicate whether or not a document has been marked confidential pursuant to the protective order (see below list of metadata fields). Any document produced with a confidentiality designation on the produced image is to be afforded confidential

4

treatment under the Protective Order regardless of whether there is an entry in this field.

(n)    The following metadata fields shall be included in the production of all ESI if such fields exist and are reasonably available to the producing Party:

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Number stamped on first image page of document |
| ENDBATES | Number stamped on last image page of document |
| BEGATTACH | Number stamped on first image page of attachment(s) |
| ENDATTACH | Number stamped on last image page of attachment(s) |
| ALL CUSTODIAN | Where applicable and available, identifies the individual (custodian) from whom the document originated (naming convention: last name, first name) and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| AUTHOR | Document author |
| TITLE | Document title |
| DATECREATED | Document create date |
| TIMECREATED | Document create time |
| DATELASTMOD | Document last modified date |
| TIMELASTMOD | Document last modified time |
| FILENAME | File name of an electronic document or attachment |
| FILEPATH | File path of an electronic document or attachment |
| FILESIZE | File size of an electronic document or attachment |
| FILE_EXTENSION | File extension of an electronic document or attachment |
| MD5HASH | Fingerprint signature of an electronic document or attachment |
| NATIVEFILELINK | For documents produced as native file, link to that file |
| TEXTFILELINK | Link to text file produced with document or attachment |

All documents shall be produced in their original language. Where a document responsive to a discovery request exists in a foreign language and an

5

English-language version of that document exists in the producing Party's possession, custody, or control, the producing Party shall produce both the original document and all pre-existing English-language versions.

Bates numbering and confidentiality designations shall not obscure any text or image in a document.

The Parties also shall, upon reasonable request, produce a higher-resolution or color image of a document. The producing Party shall have the option of producing the native-file version of the documents in response to such requests.

If a Party prints (whether in hard copy or to a .pdf or other electronic image) documents, or portions thereof, that are produced in native format, the Party shall mark any such printout with a footer containing (1) the document's Bates number, and (2) any confidentiality designation assigned by the producing Party to the document.

The Parties may use encryption software, such as Accellion, kiteworks, WinZip, or PointSec, to protect any documents or materials produced on physical media.