# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | | |
|---|---|---|
| Signify North America Corp. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:25-CV-00121-RWS |
| | ) | |
| vs. | ) | Judge Richard W. Story |
| | ) | |
| ETI Solid State Lighting, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## ETI'S RESPONSE TO SIGNIFY'S CLAIM CONSTRUCTION BRIEF

37522659.8

**TABLE OF CONTENTS**

**Page(s)**

Table of Authorities ...................................................................................................iii-v

I.    Introduction ................................................................................................ 1

II.    Terms *not* in dispute ................................................................................. 2

III.    Terms in dispute between ETI and Signify ............................................... 2

IV.    ETI's U.S. Patent No. 10,352,510 (the "'510 patent") ........................... 3

    A. "Each of said LED light engines" is definite ........................................ 3

    B. The Court should not import limitations into "linking device" ........................ 6

    V.    U.S. Patent Nos. 9,709,253 & 8,789,978 (the "'253 and '978 patents") ........... 8

    A. "Housing" and "Heat Sink" are two distinct claimed components ................... 8

    1. The claims support two separate components ....................................... 9

    2. The Summary of the Invention supports two components. ............................ 10

    3. The Specification repeatedly identifies two distinct components .................... 11

    4. Signify and its expert ignore their own intrinsic evidence ............................. 12

    B. Housing being coupled to the heat sink ............................................... 14

    C. Reflector housing coupled to the lower surface of the heat sink .................... 14

    D. Heat sink and the housing are integrally formed .................................... 15

    E. Heat sink includes an inner surface ................................................... 16

    F. Edison screw-in plug or connector .................................................... 17

    G. Downlight module ...................................................................... 18

    VI.    U.S. Patent No. 7,654,703 (the "'703 patent") ............................................ 19

    A. First internal compartment thermally separated from the second internal
    compartment .............................................................................. 19

    B. The base cover configured as a heat sink ............................................ 20

    VII.    U.S. Patent No. 11,408,588 (the "'588 patent") ......................................... 22

    A. At least one switch disposed on the housing .......................................... 22

VIII.   CONCLUSION .................................................................................. 23

37522659.8

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3Shape A/S v. Carestream Dental, LLC*,
2023 WL 4048461 (N.D. Ga. May 8, 2023) ......................................................3

*Akamai Techs., Inc. v. MediaPointe, Inc.*,
159 F.4th 1370 (Fed. Cir. 2025) ........................................................................5

*Al-Site Corp. v. VSI Int'l, Inc.*,
174 F.3d 1308 (Fed. Cir. 1999) .........................................................................5

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
672 F.3d 1335 (Fed. Cir. 2012) ...................................................................21, 22

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
616 F.3d 1249 (Fed. Cir. 2010) .................................................................9, 10, 16

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) ...........................................................................21

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
388 F.3d 858 (Fed. Cir. 2004) ...........................................................................10

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,
224 F.3d 1308 (Fed. Cir. 2000) .........................................................................10

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002) ...........................................................................19

*CBT Flint Partners, LLC v. Return Path, Inc.*,
566 F. Supp. 2d 1363 (N.D. Ga. 2008) ...............................................................9

*Control Res., Inc. v. Delta Elecs., Inc.*,
133 F. Supp. 2d 121 (D. Mass. 2001)........................................................16, 17, 22

*Cutsforth, Inc. v. Motivepower, Inc.*,
643 F. App'x 1008 (Fed. Cir. 2016) .............................................................14, 15

37522659.8

*In re Fought*,
    941 F.3d 1175 (Fed. Cir. 2019) ..................................................................................18

*Genuine Enabling Tech. LLC v. Nintendo Co.*,
    29 F.4th 1365 (Fed. Cir. 2022) ....................................................................................6

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
    527 F.3d 1379 (Fed. Cir. 2008) ...................................................................................8

*KCJ Corp. v. Kinetic Concepts, Inc.*,
    223 F.3d 1351 (Fed. Cir. 2000) ...................................................................................5

*Laitram Corp. v. Rexnord, Inc.*,
    939 F.2d 1533 (Fed. Cir. 1991) ...................................................................................9

*Lecat's Ventriloscope v. MT Tool & Mfg.*,
    351 F. Supp. 3d 1100 (N.D. Ill. 2018)..........................................................................4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) ......................................................................................................4

*Ossur HF v. iWalk, Inc.*,
    2013 WL 4046709 (D. Mass. Aug. 8, 2013).................................................................4

*Phil-Insul Corp. v. Reward Wall Sys., Inc.*,
    2012 WL 2958233 (D. Neb. July 19, 2012)..........................................................16, 23

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*).................................................................8

*Serrano v. Telular Corp.*,
    111 F.3d 1578 (Fed. Cir. 1997) ...................................................................................8

*Southwall Techs., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) ...................................................................................18

*Thales Visionix, Inc. v. United States*,
    150 Fed. Cl. 486 (2020)............................................................................................6, 8

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ...................................................................................13

v

**Statutes**

35 U.S.C. § 282.................................................................................................5

**Other Authorities**

Local Rule 5.1..................................................................................................25

Local Rule 7.1(D) ............................................................................................25

37522659.8

## I.    Introduction

As to ETI's '510 patent, Signify's brief (ECF 78) asks the Court to: (1) take the extraordinary step of invalidating a claim for indefiniteness based on its purported inability to reconcile singular and plural nouns; and (2) improperly narrow "linking device" to require a "separate device." Both arguments fail. Signify bears the burden of proving invalidity by clear and convincing evidence yet offers no expert or other evidence and ignores the well-established rule that a singular claim term encompasses "one or more." Its attempt to further limit "linking device" likewise finds no support in the intrinsic evidence. The Court should therefore adopt ETI's constructions for the '510 patent.

As to Signify's patents, the claims require _both_ a "housing" and a "heat sink." Because none of ETI's lights include a heat sink, this is a straightforward case of non-infringement. Faced with that reality, Signify asks the Court to construe "heat sink" so Signify need not identify one in the accused products. Under that theory, a light with only a housing would still infringe because the housing can dissipate heat. But the intrinsic evidence forecloses that position: the claims and specification repeatedly require a heat sink because the housing alone does not dissipate sufficient heat. That is precisely why the claims recite both elements. The Federal Circuit has rejected such attempts to collapse distinct claim terms into one, warning against treating claim language as a "nose of wax." Because Signify represented to the USPTO that its claims

1

37522659.8

require both a housing and a heat sink to secure allowance, it must be held to that position.

## II.     Terms *not* in dispute

Signify's brief addresses several terms that are not in dispute: (1) "Hanger clips"; (2) "The circuit board coupled to the inner surface of the housing…"; (3) "two mounting devices are disposed on opposite side surfaces…"; (4) "LED light source mechanically coupled to the inner surface"; (5) "A sealing panel within the second cavity"; (6) "sealing surface within the outer perimeter of the cover box"; (7) "housing defining a first internal compartment"; and (8) "color control module." *See* ECF 78 at 5, 6, 13, 16–19, 21. ETI agrees that those terms should carry their plain and ordinary meaning, allowing the Court to focus on the remaining contested issues.

## III.    Terms in dispute between ETI and Signify

To help the Court, below is a table identifying the terms that are in dispute:

| Proposing Party | Disputed Claim Term |
|---|---|
| Signify | The linkable LED lighting fixture according to claim 3… |
| Signify | linking device |
| ETI | heat sink |
| ETI | housing being coupled to the heat sink |
| ETI | reflector housing coupled to the lower surface of the heat sink |
| ETI | heat sink and the housing are integrally formed |
| ETI | heat sink includes an inner surface |
| ETI | Edison screw-in plug |
| ETI | downlight module |
| ETI | first internal compartment thermally separated… |
| ETI | the base cover configured as a heat sink |

2

37522659.8

| Proposing Party | Disputed Claim Term |
|---|---|
| ETI | At least one switch disposed on the housing |

## IV.    ETI's U.S. Patent No. 10,352,510 (the "'510 patent")

Signify raises two arguments out of ETI's '510 patent in the last three pages of its brief: (1) invalidating the claimed term "each of said LED light engines" without evidence; and (2) importing a "separate device…" limitation into "linking device," even though the evidence imposes no such requirement. ECF 78 at 23–25. The Court should reject both arguments.

### A. "Each of said LED light engines" is definite

Signify's indefiniteness challenge fails as a matter of law because Signify has presented no evidence to satisfy its burden of proof. ECF 78 at 25. In the last argument of its brief, Signify argues for one page – with no evidence cited – that the Court should take the extraordinary act of invalidating claim 5 because Signify believes it is "indefinite." *Id.* (citing to no evidence).

The fatal problems for Signify are that: (1) it has the burden of proof, (2) by clear and convincing evidence, but (3) has not presented any evidence. *3Shape A/S v. Carestream Dental, LLC*, 2023 WL 4048461, at *5 (N.D. Ga. May 8, 2023) ("indefiniteness must be shown by clear and convincing evidence"). The Court should reject Signify's bald argument as a matter of law on this first basis.

Signify also presents no intrinsic evidence to prove indefiniteness to support its

3

37522659.8

bald position. ECF 78 at 25. A patent claim is only indefinite if, when "*read in light of the specification delineating the patent*, and the prosecution history, [the claim] fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 898-99 (2014) (emphasis added). Signify did not cite to or analyze the "specification" to show where a POSITA would be uncertain of the claim scope for the claim terms "linkable LED lighting fixture" and "LED light engine." ECF 78 at 25 (citing to no evidence). The Court should reject Signify's argument on this second basis.

While Signify and its related company, Cooper, rely on two experts in its briefing, *neither* expert opined on the indefiniteness of claim 5. *Id.* at 25 (citing to no evidence). Without any POSITA testimony, Signify cannot carry its burden of establishing that the terms "each of said LED light engines" and "linkable LED lighting fixtures" are indefinite. *Lecat's Ventriloscope v. MT Tool & Mfg.*, 351 F. Supp. 3d 1100, 1113–14 (N.D. Ill. 2018) ("[w]ithout any affirmative expert testimony, Defendant will be unable to offer the perspective of a POSITA."); *Ossur HF v. iWalk, Inc.,* 2013 WL 4046709, at *25 (D. Mass. Aug. 8, 2013) (having offered no expert testimony, accused infringer "has not met its burden of proving that the term 'gait pattern(s) or event(s)' is indefinite"). The Court should reject Signify's argument on this third, independent basis.

Signify incorrectly contends that claim 5 is indefinite because it identifies plural

4

37522659.8

nouns ("said LED light engines" and "said respective linkable LED lighting fixtures") but claim 3 refers to singular nouns ("*a* linkable LED lighting fixture" and "*an* LED light engine"). ECF 78 at 25 (emphasis added).

Controlling Federal Court precedent belies Signify's incorrect argument, because the article "a" or "an" in claim 3 carries the customary meaning of "***one or more***." *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) ("article 'a' or 'an' in patent parlance carries the meaning of 'one or more'") (emphasis added). Because the use of "a" or "an" in claim 3 encompasses one *or more* fixtures and engines, *i.e.,* singular *or* plural, the plural references in claim 5 are entirely consistent with claim 3. Therefore, claim 3 provides a clear, definite antecedent basis to claim 5 as a matter of law.

Signify merely cites to one easily distinguishable case, *Akamai Techs., Inc. v. MediaPointe, Inc.*, 159 F.4th 1370, 1378 (Fed. Cir. 2025). In *Akamai,* the claim terms "optimal" and "best" were at issue – which has nothing to do with singular or plural terms. *Id.* In contrast, the terms "linkable LED lighting fixtures" and "LED light engines" are *not* terms of degree as those in *Akamai*, and are therefore definite.

The USPTO examiner also examined this application before it issued as the '510 patent, found no indefiniteness issue, and issued the patent with claims 3 and 5 as written. *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999) ("The presumption of validity under 35 U.S.C. § 282 carries with it a presumption that the

37522659.8

Examiner did his duty and knew what claims he was allowing."). The Court should therefore reject Signify's indefiniteness argument.

### B. The Court should not import limitations into "linking device"

Signify asks the Court to import a limitation into "linking device" namely "***a separate device*** from the LED lighting fixture….", even though the claims impose no such limitation. ECF 78 at 23–24. Signify argues that ETI "disclaimed" the ordinary meaning in lieu of the lengthy and limiting wording Signify proposes. *Id.*

Because the default in claim construction is ordinary meaning, Signify bears the burden of proving a disclaimer with "clear and unmistakable" evidence. *Genuine Enabling Tech. LLC v. Nintendo Co.,* 29 F.4th 1365, 1374 (Fed. Cir. 2022) ("For a statement during prosecution to qualify as a disavowal of claim scope, it must be 'so clear as to show reasonable clarity and deliberateness,' and 'so unmistakable as to be unambiguous evidence of disclaimer.'").

If the accused infringer's proposed construction uses wording *not* found in the prosecution history language it cites, then Courts reject any disclaimer because it fails to meet the "clear and unmistakable" burden. *Genuine Enabling Tech.,* 29 F.4th at 1374–75 (prosecution history did not "clearly and unmistakably demonstrate" disclaimer or "justify further narrowing of claim scope[.]"); *Thales Visionix, Inc. v. United States*, 150 Fed. Cl. 486, 511 (2020) (rejecting "disclaimer argument" because evidence lacked "'clear and unmistakable' disavowal.").

6

Signify's entire argument rests on its Exhibit 15, which is two incomplete pages of prosecution history. ECF 78 at 23–24; ECF 78, Ex. 15. From those two partial pages, Signify extracts two sentences to claim they constitute a "clear and unmistakable" disavowal. *Id.* To show how far afield Signify's proposed construction departs from the language in those two sentences, the table below compares Signify's proposed construction (left) with the cited sentences from Ex. 15 (right):

| Signify's Proposal | Signify's only citation is different than its proposal |
|---|---|
| *a separate device from the LED lighting fixture* with electrical conducting protrusions capable of linking two LED lighting fixtures together ECF 78 at 23. | Claim 4 also recites that the LED light engine electrical contacting structures each comprise an access "with internal receptacles for reception of said *electrical conducting protrusions* of said linking device" to perform the linking operation. This limitation to claim 4 is *distinguishable* from Wang because the *protrusions are on the linking device*, whereas in Wang, the protrusions are on the lamp assembly and the internal receptacles are in connector 10. ECF 78, Ex. 15 at 1-2. |

Far from a "clear and unmistakable" disavowal, the table shows numerous discrepancies. Out of the gate, the cited prosecution language says *nothing* about the linking device being "***a separate device*** from the LED lighting fixture" as proposed by Signify's counsel. *Id.* at 15–17. Thus, the Court should reject Signify's proposal on this first basis.

Further, Signify ignores a different and more plausible interpretation of the cited prosecution language than the harsh one it proposes: the statement simply distinguishes *where* the protrusions are located in comparison to prior art CN201973532U; it does

not suggest that the linking device must be "***a separate device*** from the LED lighting fixture" as Signify proposes. *See id.* at 15–17; CN201973532U, Figs. 3, 4 (issued Sept. 14, 2011). Because there are multiple ways to interpret the two sentences Signify cites, that prosecution history does not support a disclaimer. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (*en banc*) ("the ambiguity of the prosecution history made it 'unhelpful as an interpretive resource' for claim construction") (citations omitted).

Neither of Signify's two experts opined on this disclaimer issue. *See* ECF 78, Exs. 10, 11. Because of the major differences between Signify's proposal and the two sentences it cites, no "clear and unmistakable" disavowal exists to narrow the language. *See Thales*, 150 Fed. Cl. at 511. The Court should reject Signify's argument. *Serrano v. Telular Corp.*, 111 F.3d 1578, 1584 (Fed. Cir. 1997).

## V.      U.S. Patent Nos. 9,709,253 & 8,789,978 (the "'253 and '978 patents")

### A. "Housing" and "Heat Sink" are two distinct claimed components

The claims of Signify's '253 and '978 patents require ***both*** a "housing" ***and*** "heat sink." Indeed, dependent claim 16 of the '253 patent goes so far as to require the "housing coupled to the heat sink." Because the claims require both of those limitations, two bedrock principles apply. First, housing and heat sink mean two different things in the claims. *See Helmsderfer v. Bobrick Washroom Equip., Inc.,* 527 F.3d 1379, 1382 (Fed. Cir. 2008) ("different claim terms are presumed to have different

8

meanings."). Second, where a claim recites two limitations, they are distinct components. *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a claim lists elements separately, the clear implication is that those elements are distinct components of the patented invention.").

There is an important reason "heat sink" needs to be construed: not one of ETI's lights includes a heat sink. ECF 77 at 2–3. This is because ETI's LEDs do not dissipate so much heat that its lights require a heat sink. *Id.* ETI saves a lot of money by not having to put heat sinks into its lights. *Id.* Because the claims require a "heat sink," but none of ETI's lights include a heat sink, ETI does not infringe. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991) ("failure to meet a single limitation is sufficient to negate infringement of the claim.").

Signify's '253 and '978 patents solve a very different problem absent from ETI's lights: Signify's LEDs created a lot of heat, which required adding a "heat sink" in addition to the housing to dissipate all of that heat from the LEDs.

### 1. The claims support two separate components

Courts first look to the intrinsic evidence claim language. *CBT Flint Partners, LLC v. Return Path, Inc.*, 566 F. Supp. 2d 1363, 1366 (N.D. Ga. 2008). Independent claims 1 and 16 of the '253 patent and claims 1 and 9 of the '978 patent each require both a "housing" and a "heat sink." '253 patent at 14:45, 14:47, 14:50, 15:44–46, 15:51; '978 patent at 14:12, 14:14, 14:16, 14:19, 14:28, 14:58, 14:61–63, 15:4.

9

Where a claim lists elements separately, "the clear implication" is that they are "distinct component[s]" of the invention. *Becton*, 616 F.3d at 1254. Because the claims require both a housing and heat sink, those terms denote distinct components. This alone defeats Signify's argument that a housing can also be the heat sink.

The dependent claims confirm the same point. Claims 18 and 11 of the '253 and '978 patents state that "the heat sink is a first heat sink and the housing is a second heat sink." '253 patent at 16:1–2; '978 patent at 15:13–14. Thus, the independent claims already require a heat sink separate from the housing; the dependent claims merely add that the housing also functions as an additional, "second" heat sink. In other words, while the housing in the independent claims need not be a heat sink, the dependent claims require it to act as one in addition to the already-recited heat sink. This confirms that the claimed "heat sink" cannot be the housing. *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("use of these different terms in the claims connotes different meanings.").

### 2. The Summary of the Invention supports two components.

The Summary of the Invention carries significant interpretive weight because it describes the invention as a whole, not merely preferred embodiments. *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004) ("Statements that describe the invention as a whole . . . are more likely to support a limiting definition of a claim term," and are "more likely to be found in certain sections of the specification, such as

10

37522659.8

the Summary of the Invention.").

Consistent with the claims, the Summary identifies the "housing" as a separate component—"the *light fixture includes a housing or 'can'* within which an LED module is mounted"—and further explains that a "*reflector housing can be coupled to the heat sink and/or the can [housing]*." '253 patent at 2:18–19, 2:51–52; '978 patent at 2:9–10, 2:41–42 (emphasis added). If the housing were itself the heat sink, there would be no need to describe the reflector housing as being "coupled to the heat sink and/or the … housing" as separate items. These disclosures confirm that the housing and heat sink are distinct components.

### 3. The Specification repeatedly identifies two distinct components.

The specification also treats housing and the heat sink as separate structures:

- Figures 2 and 3 of the '253 and '978 patents show distinct components for the housing or can **115**, the heat sink **310**, and the reflector housing **320**:



- "[T]he housing being coupled to the heat sink." '253 patent at 15:55–56; '978 patent at 16:20.

- "[T]he reflector housing coupled to the lower surface of the heat sink." '253

11

patent at 17:4–5; '978 patent at 14:62–63.

- Defines housing as "a can-shaped receptacle for housing a light source (a 'can') **115**." '253 patent at 4:59–60; '978 patent at 4:42–43.

- "In certain exemplary embodiments, a reflector housing **320** is coupled to the bottom surface **310a** of the heat sink **310**." '253 patent at 8:20–21; '978 patent at 7:65–66.

- "The LED module **300** includes an LED package **305** mounted to a heat sink **310**." '253 patent at 5:54–59; '978 patent at 5:33–36.

Dispositively, there is _no language_ in the specification that identifies the housing to be the heat sink without a separate heat sink.

### 4. Signify and its expert ignore their own intrinsic evidence

Signify's brief ignores the foregoing intrinsic evidence, which repeatedly contradicts its position. ECF 78 at 7–11. Instead, it relies on extrinsic materials—an expert declaration (ECF 78, Ex. 10), an unauthenticated FAQ (Ex. 11), and a dictionary (Ex. 12). But extrinsic evidence "is less significant than the intrinsic record" and cannot override it. *Phillips*, 415 F.3d at 1317.

In any event, Signify's extrinsic evidence lacks merit. Mr. Gershowitz's declaration is conclusory and fails to engage with the intrinsic evidence discussed above. His own citations confirm ETI's position. He first relies on the statement that an "LED package can be thermally coupled to a heat sink," which necessarily treats the heat sink as a separate structure. ECF 78, Ex. 10 ¶ 44. He also asserts that the specification states a reflector housing "can be a heat sink," but that mischaracterizes

12

the disclosure. The specification explains only that the reflector housing may "serve as a secondary heat sink," which presupposes a separate, primary heat sink. '253 patent at 2:52–54; '978 patent at 2:42–44. Consistent with that, the dependent claims require both: "the heat sink is a first heat sink and the housing is a second heat sink." '253 patent at 16:1–2. Because Gershowitz's extrinsic report is both subordinate to—and inconsistent with—the intrinsic record, it carries no weight. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

An *en banc* Federal Circuit expressly rejected elevating dictionary definitions over the intrinsic record, cautioning that such reliance risks divorcing claim terms from the context of the patent. *Phillips*, 415 F.3d at 1319–21. Signify's reliance on extrinsic sources here suffers from precisely that flaw. Signify's citation to the "Lighting Answers" FAQ is misplaced. ECF 78, Ex. 11. The FAQ defines heat sinking as "*adding* a material, usually metal, adjacent to an object" and describes heat sinks as devices attached to LED systems. Id. at 11, 22. It also explains that LED components include flat areas "*suitable for attachment to heat sinks*," confirming that heat sinks are separate components. Id. at 11. This FAQ supports the fact that the heat sink is a different, additional structure.

The same is true of the Modern Dictionary of Electronics. Although Signify cites it, the dictionary defines a heat sink as something "added to a device," "mounted on or under a circuit component," or a "separate heat sink on which one or more

13

packages are mounted." ECF 78, Ex. 12. These definitions likewise describe a heat sink as a distinct physical component attached to another device. The extrinsic evidence does not support Signify's position but rather confirms that a heat sink is separate from, not identical to, a housing.

### B. Housing being coupled to the heat sink

Claim 16 of the '253 patent further requires not only the existence of a heat sink and housing, but also that the housing "coupled to" a heat sink. '253 patent at 15:55–56; '978 patent at 16:20. This language necessarily requires two separate components—a structure cannot be "coupled to" itself. Signify's contrary position would read this requirement out of the claim. *See* ECF 78 at 9.

The Federal Circuit has applied this same principle, holding that a "brush catch coupled to the beam" requires the brush catch to be a structure "separate from, and not a sub-component of," the beam. *Cutsforth, Inc. v. Motivepower, Inc.*, 643 F. App'x 1008, 1012 (Fed. Cir. 2016) (emphasis added). By the same logic, "housing being coupled to the heat sink" requires the housing to be separate from the heat sink.

The intrinsic evidence identified in Section V.A.1-3 above likewise confirms that the housing and heat sink are distinct components. Accordingly, this limitation requires separate components that are coupled together.

### C. Reflector housing coupled to the lower surface of the heat sink

ETI incorporates the intrinsic evidence identified in Section V.A.1-3 above

14

37522659.8

establishing that the "housing" and "heat sink" are separate components. The claims and specification further recite a housing "coupled to" a heat sink. '253 patent at 2:51–54, 8:20–22, 8:36–37, 17:1–3; '978 patent at 2:41–44, 7:65–66, 16:19–21. Because a structure cannot be "coupled to" itself, the "reflector housing" and "heat sink" must be separate components. *See Cutsforth*, 643 F. App'x at 1012.

### D. Heat sink and the housing are integrally formed

ETI again incorporates the intrinsic evidence cited in Section V.A.1-3 above establishing that the "heat sink" and the "housing" are separate components. The remaining question is whether the phrase "integrally formed" means the heat sink and the housing are the same object as Signify wrongly argues. It does not.

The ordinary meaning of "integrally formed" confirms this. The phrase identifies two components that are joined together into a single unit—not that they become the same object. For example, a bolt welded to sheet metal makes the bolt integrally formed with the sheet metal, but the bolt and the sheet remain two distinct components. Likewise, describing the housing as integrally formed with the heat sink necessarily requires both components to exist and be permanently joined together— not a single structure serving as both.

The claims reflect this understanding. Claim 17 of the '253 patent and claim 10 of the '978 patent recite the "heat sink" and the "housing" as separate elements, and nothing in the claim language suggests that the term "integrally formed" collapses

15

37522659.8

them into one. '253 patent at 15:66–67; '978 patent at 15:11–12.

The specification confirms the same point. It explains that the reflector housing is "formed integrally with the heat sink" or "secured to the heat sink" by adhesive. '253 patent at 8:42–45; '978 patent at 8:20–23. These are alternative ways of joining two components—not redefining them as one. Accordingly, "integrally formed" means the heat sink and housing are permanently joined together as a unit, while remaining distinct components. *See Becton*, 616 F.3d at 1257.

### E. Heat sink includes an inner surface

Signify asserts that "inner surface" requires no construction because it consists of "everyday terms." ECF 78 at 8. That position avoids the real issue—what spatial limitation "inner" imposes on the heat sink.

Courts construe spatial terms to give them operative effect and avoid rendering claim language superfluous. *See Phil-Insul Corp. v. Reward Wall Sys., Inc.*, 2012 WL 2958233, at *7 (D. Neb. July 19, 2012) (construing "adjacent" to have spatial meaning to give effect to claim terms). And claim construction must produce language that can be understood and applied by a jury. *Control Res., Inc. v. Delta Elecs., Inc.*, 133 F. Supp. 2d 121, 127 (D. Mass. 2001) ("[C]laim construction must result in a phraseology that can be taught to a jury of lay people.").

Leaving "inner surface" unconstrued provides no guidance as to which surfaces of the heat sink qualify as "inner." *Id.; see* '253 patent at 14:47–48. To give "inner"

16

operative meaning, the term should be construed as "a surface located within the interior region of the heat sink."

### F. Edison screw-in plug or connector

Question - do the following depictions show an Edison screw-in plug or connector:



| U.S. Patent No. 6,905,227, Fig. 7 | '253, '978, '321 patents, Figs. 16. |

ETI's answer is yes – both depictions show an Edison screw-in plug (40 and 1520b) that thread into a socket to establish the electrical connection for the light to operate. *See* '227 patent, Fig. 7; '253, '978, '321 patents, Figs. 16. Such connectors have long been known in the prior art. *See* '227 patent, Fig. 7.

Signify disagrees, arguing that under its purported "plain and ordinary meaning," the prior art depiction in the '227 patent is not an Edison plug, while the nearly identical depiction in its own patents is. ECF 78 at 12–13. That position is untenable. Claim terms cannot be construed one way to avoid prior art and another to capture infringement—the Federal Circuit has rejected such "nose of wax" arguments. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995).

This dispute confirms that construction is required. Under *O2 Micro*, the Court

17

cannot simply apply a "plain and ordinary meaning" where the parties fundamentally disagree on the scope of that meaning. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).

ETI's construction—"a threaded electrical connector that secures into a mating socket"—captures the ordinary meaning reflected in both the prior art and the patents' intrinsic evidence. See ECF 78 at 12; '253, '978, '321 patents, Figs. 16. The specifications do not define "Edison" to require anything more. Nor does Signify explain how ETI's construction fails to encompass its own embodiments.

**G. Downlight module**

Signify argues that the preamble "downlight module" is not limiting. ECF 78 at 14. That is incorrect for at least two independent reasons. First, a preamble is limiting when the "claim(s) depend on it for antecedent basis." *In re Fought*, 941 F.3d 1175, 1178 (Fed. Cir. 2019). Here, all asserted claims except claims 16 and 30 of the '253 patent and claim 16 of the '978 patent refer to "the downlight module" in the body, which depends on the preamble's "a downlight module." '253 patent, claims 1–15, 17–29, 31–41; '978 patent, claims 1–15, 17–20. That alone renders the preamble limiting. *In re Fought*, 941 F.3d at 1178.

Second, a preamble limits claim scope where it is "essential to understand limitations or terms in the claim body." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). That standard is met here. The claims

37522659.8

repeatedly reference the "downlight module" to define spatial and structural relationships—e.g., components "located on a perimeter of the downlight module" or on "opposite side surfaces of the downlight module." '253 patent, claims 2, 15, 29, 40, 41; '978 patent, claim 1. Without the preamble, those limitations lack context and meaning. Because the preamble provides both antecedent basis and essential structural context, it is limiting.

## VI.  U.S. Patent No. 7,654,703 (the "'703 patent")

### A. First internal compartment thermally separated from the second internal compartment

The reason for construction is based on the following issue: where, in ETI's products, are the compartments "thermally separated":

| VersaPak Adjustable Wall Pack | Versa Area Light |
| --- | --- |
|  | |

Signify contends that "air" itself satisfies this limitation. ECF 78 at 20. It does not. Air transfers heat through convection and conduction; it is not a thermal separator. If air alone were sufficient, then every component in every light fixture would be "thermally separated" from every other component—rendering the limitation

19

meaningless. That result is impermissible. *Bicon, Inc. v. Straumann Co.,* 441 F.3d 945, 951 (Fed. Cir. 2006).

ETI's construction properly requires a physical thermal barrier between compartments. See ECF 77 at 22. That is the only interpretation consistent with the patent's description of "thermal isolation" preventing heat transfer between compartments—not merely the presence of air. '703 patent at 4:32–38.

**B. The base cover configured as a heat sink**

For this claimed term, Signify's infringement contentions identify a "base cover"—but notably fail to identify any "heat sink" for ETI's only two products:



| ETI's VersaPak Adjustable Wall Pack | ETI's Versa Area Light |
| --- | --- |

ECF 35. That omission is telling: neither product has a "base cover configured as a heat sink."

Signify argues that "configured as a heat sink" is effectively meaningless because the base cover need not be designed to dissipate heat. ECF 78 at 21. That is incorrect. Claim terms must be given effect, and "configured as" requires more than

37522659.8

incidental or inherent heat transfer—it requires intentional structural design. *Bicon*, 441 F.3d at 950 ("claims are interpreted with an eye toward giving effect to all terms in the claim."). A base cover "configured as a heat sink" therefore requires more than incidental or inherent heat transfer; it requires intentional structural design. *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012) ("configured to" carries a "narrower definition" requiring the structure to be designed "to accomplish the specified objective, not simply . . . made to serve that purpose," and interpreted based on intrinsic evidence). The intrinsic evidence confirms this understanding: the base cover can include a "heat sink" engineered with heat-dissipating features, such as fins. *See* '703 patent, Fig. 4.

Signify's assertion that "base" does not mean "bottom" fares no better. ECF 78 at 21. Figures 2 and 3 of the '703 Patent show base **30** is the bottom cover of the fixture having the heat sink fins that are also claimed:



FIGURE 3

Accordingly, "base cover configured as a heat sink" requires a bottom cover intentionally designed to dissipate heat—not merely a component that happens to

21

transfer heat. This construction provides the clarity required for a jury and gives effect to all claim language. *See Control Res., Inc. v. Delta Elecs., Inc.*, 133 F. Supp. 2d 121, 127 (D. Mass. 2001) ("claim construction must result in a phraseology that can be taught to a jury of lay people."); *see also Aspex*, 672 F.3d at 1349.

## VII.   U.S. Patent No. 11,408,588 (the "'588 patent")

### A. At least one switch disposed on the housing

The claims require "at least one switch disposed on the housing," making the location of the switch—on the housing itself—a structural limitation. The switch must be on the housing, not merely somewhere within the device.

In ETI's lights, however, the switches are not disposed on the housing but instead on an internal circuit board that the housing encloses and protects. Signify nevertheless attempts to argue that a switch disposed on a circuit board but not the housing means "disposed on the housing", which wrongly broadens this term. ECF 78 at 4. Thus, ETI's switches are not "disposed on the housing."

Signify's reading contradicts the patent's structural disclosure of the housing as an exterior casing and the switch as disposed or mounted on it. '588 patent at 5:11–13, 5:21–23, 9:16–19, 9:49, 10:13, Figs. 1A–B, 1F–K. Fig. 1I shows switch **131** is mounted directly on the exterior surface of the housing **105**. *Id*. at Fig. 1I.

Signify attempts to broaden "disposed on" to include switches buried inside the unit on a circuit board. ECF 78 at 4. This ignores the structural requirement of the

22

housing as a casing. *See* '588 patent at 5:11–13; 5:21–23; 9:16–19; 9:49; 10:13, Figs. 1A, 1B, 1F–K. *See id.* at Fig. 1I. ETI's construction "located on or mounted to the surface" is the only one consistent with the patent's structural requirements. *See id.* at 5:11–13; 5:21–23; 9:16–19; 9:49; 10:13, Figs. 1A, 1B, 1F–K.

Signify's position would read the word "on" out of the claim and replace it with the term "near", such that if a switch is not disposed on the housing (despite the claim requiring "on") but disposed near it, that's close enough. *See* ECF 78 at 4. That is not the law. Courts construe spatial modifiers to give them operative effect and to avoid rendering claim language superfluous. *Phil-Insul Corp.*, 2012 WL 2958233 at *7. If "disposed on" encompassed components merely located somewhere near or inside the housing, the spatial limitation imposed by "on" would have no meaning. *See* '588 patent at 5:11–13; 5:21–23; 9:16–19; 9:49; 10:13, Figs. 1A, 1B, 1F–K. Accordingly, "disposed on" should be construed as "located on or mounted to the surface," consistent with the intrinsic evidence and the claim language.

## VIII. CONCLUSION

For the foregoing reasons, ETI respectfully requests that the Court adopt ETI's proposed constructions for each of the disputed claim terms.

Dated: April 2, 2026                                   Respectfully submitted,

                                                       */s/ Coby S. Nixon*

23

37522659.8

Coby S. Nixon
Georgia Bar No. 545005
Seth K. Trimble
Georgia Bar No. 851055
Cory Mull
Georgia Bar No. 595376
**BUCHALTER LLP**
3475 Piedmont Road NE, Suite 1100
Atlanta, Georgia 30305
Telephone: (404) 832-7530
Email: cnixon@buchalter.com
strimble@buchalter.com

David B. Cupar (*pro hac vice*)
**MCDONALD HOPKINS LLC**
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114
Telephone: (216) 348-5400
Email: dcupar@mcdonaldhopkins.com

*Counsel for Defendant and
Counterclaim-Plaintiff ETI Solid State
Lighting, Inc.*

## LOCAL RULE 7.1(D) CERTIFICATION

The undersigned hereby certifies that the foregoing was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1.

Dated: April 2, 2026                    */s/ Coby S. Nixon*
                                        Coby S. Nixon

24

37522659.8