**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V.,<br><br>Plaintiffs,<br><br>v.<br><br>ETI SOLID STATE LIGHTING, INC.<br><br>Defendant. | C.A. No. 2:25-cv-00121-RWS |

**DEFENDANT ETI'S BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE <u>TO FILE A SECOND AMENDED ANSWER AND COUNTERCLAIMS</u>**

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 15(a)(2), ETI Solid State Lighting Inc. ("ETI") requests leave to file its Second Amended Answer and Counterclaims, attached as Exhibit A in redline format. ETI seeks to add a defense and counterclaim for patent misuse based on newly discovered evidence obtained after the amendment deadline and, consistent with the Court's may 27, 2026, Order (ECF 97), to remove the inequitable conduct counterclaims previously dismissed by the Court.

Good cause exists under Rule 16(b)(4), and leave should be freely granted under Rule 15(a)(2). This case remains in the early stages of discovery, and the

factual basis for ETI's patent misuse counterclaim did not become available until well after the amendment deadline. On December 15, 2025—nearly three months after that deadline—Signify produced [redacted] license and settlement agreements comprising thousands of pages of documents that were exclusively within its possession. ETI was required to review and analyze those agreements over the following months while simultaneously briefing claim construction, addressing discovery disputes, and responding to Signify's evolving infringement contentions, which the Court ordered Signify to amend. Only through that process did the scope and structure of Signify's Licensing Program become clear.

ETI also learned critical new facts in March 2026 filings in *Signify North America Corp. v. Lepro Innovation Inc.*, No. 2:22-cv-02095 (D. Nev.), which Signify did not produce to ETI in discovery in this case. Those filings further support ETI's patent misuse allegations. Signify demanded that Lepro pay "royalties" on broad categories of products—including products not accused of infringement and not covered by any asserted Signify patent. Lepro refused. Signify's own expert later identified compensatory damages of only approximately $400,000—far below what Signify had demanded under its Licensing Program. Based on that analysis, Lepro offered to resolve the case by paying that full amount, together with a running royalty on accused products consistent with Signify's expert report.

Signify rejected Lepro's offer and instead chose to continue litigating for months, incurring substantial additional attorneys' fees and costs and forcing the parties and the Court to proceed to trial on an amount Lepro had already agreed to pay to resolve the dispute. Signify ultimately obtained a $410,544 verdict—an amount Lepro had offered to pay months earlier—but thereafter sought more than $4.3 million in attorneys' fees and costs, more than ten times the damages award. These facts support the inference that Signify's Licensing Program seeks payments beyond the value of the asserted patents and leverages the threat and cost of prolonged litigation to pressure manufacturers into accepting broader, revenue-based licensing terms untethered to patent coverage.

These developments, together with the terms reflected in Signify's licensing agreements, demonstrate that Signify's Licensing Program: (i) imposes royalties beyond the scope of the asserted patents, [redacted], and (iii) leverages the cost of litigation to pressure manufacturers into accepting those terms. ETI could not have pleaded this counterclaim earlier because these facts were not publicly available and were uniquely within Signify's control.

The procedural posture further confirms good cause. The Court has ordered Signify to amend its infringement contentions to identify the specific accused products and the basis for those allegations, and ETI continues to pursue deficiencies

in Signify's document production. Written discovery remains ongoing, no depositions have been taken, and the claim construction hearing has not yet occurred. The parties are still developing the core factual record.

In these circumstances, ETI acted diligently in seeking amendment once the factual basis for its patent misuse claim became clear. Because the amendment is based on newly discovered evidence, arises early in the case, does not require any amendment to the Scheduling Order, and does not prejudice Signify, the Court should grant leave to amend.

## PROCEDURAL HISTORY

On July 23, 2025, ETI filed its Answer. (ECF 16.) On August 22, 2025, the Court entered the Joint Preliminary Report and Discovery Plan, which set September 21, 2025, as the deadline to amend pleadings. (ECF 22 at 9-10.) On August 27, 2025, ETI filed its First Amended Answer and Counterclaims as a matter of course pursuant to Rule 15(a)(1)(B). (ECF 24.)Fact discovery thereafter proceeded on multiple fronts, including infringement contentions, claim construction, and written discovery concerning Signify's licensing practices and damages theories. On September 26, 2025, shortly after the amendment deadline passed, ETI served Requests for Production ("RFPs"), including RFP No. 21 seeking "[a]ll Documents relating to any patent licenses, settlements, or covenants not to sue that You contend

are comparable to a license that would have been negotiated between Signify and ETI." Ex. B.

Signify objected to producing those agreements absent a protective order. Following motion practice, the Court entered a protective order permitting production. (ECF 67.) On December 15, 2025—nearly three months after the amendment deadline—Signify produced [redacted] license and settlement agreements comprising thousands of pages of documents that had previously been exclusively within Signify's possession and control.

At the same time ETI was reviewing and analyzing those agreements, the parties were actively engaged in claim construction proceedings and ongoing discovery disputes regarding document and information production. ETI filed its Opening Claim Construction Brief on February 9, 2026 (ECF 78), and subsequently filed responses to Signify's and Cooper's claim construction briefs on April 2, 2026. (ECF 91; ECF 92.) The parties were also litigating disputes concerning the adequacy of Signify's infringement contentions and document production, including deficiencies identified by ETI regarding missing documents and information that Signify still has not fully produced.

The Court further ordered Signify to amend its infringement contentions to identify the specific accused products and the bases for those infringement allegations. (ECF 96 at 12.) While that Order also identified Signify's deficient

discovery and the fact that the parties should seek to resolve those deficiencies, Signify has done nothing to produce the deficient documents or information that ETI seeks. (*See id.* at 15.) As a result, ETI's evaluation of Signify's incomplete infringement theories and related discovery remains ongoing. Written discovery likewise remains ongoing, no depositions have been taken, and the claim construction hearing has not yet occurred.

Only after ETI completed substantial review and analysis of Signify's [redacted] agreements, together with subsequent developments in *Signify North America Corp. v. Lepro Innovation Inc.*, No. 2:22-cv-02095 (D. Nev.), did the factual basis for ETI's patent misuse counterclaim become clear. On May 27, 2026, the Court also expressly authorized ETI to file an amended answer and counterclaims consistent with its Rule 12 rulings. (ECF 97 at 30.)

On May 27, 2026, the Court entered an Order granting in part and denying in part Signify's Motion to Dismiss. (ECF 97.) The Court dismissed ETI's inequitable conduct counterclaims but permitted ETI's willful infringement allegations to proceed. *Id.* The Court ordered that "ETI may file an Amended Answer & Counterclaim consistent with the Court's Rule 12 rulings… within 14 days." *Id.* at 30.

## ARGUMENT

Because the deadline to amend pleadings set forth in the Joint Preliminary Report and Discovery Plan (ECF 22) expired on September 21, 2025, ETI's motion is governed by Rules 16(b)(4) and 15(a)(2).

### I. Legal Standard

Rule 16(b)(4) permits modification of a scheduling order "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause exists where a party learns the basis for a claim through discovery after the amendment deadline. *See Advanced Polymer Tech. Corp. v. Textile Mgmt. Assocs., Inc.*, No. 4:08-CV-0018-HLM, 2009 WL 10669092, at *6 (N.D. Ga. May 21, 2009); *see also D.H. Pace Co. v. AOD Grp., LLC*, No. 1:12-CV-3854-WSD, 2014 WL 2574545, at *2 (N.D. Ga. June 9, 2014) ("The good cause standard is met when, in the exercise of due diligence, the party seeking amendment does not discover the facts justifying the amendment until after the amendment deadline.").

If good cause exists under Rule 16(b)(4), Rule 15(a)(2) provides that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave shall be granted unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *New Generation Christian Church v.*

*Rockdale Cty., Ga.*, No. 1:12-CV-2138-JEC, 2014 WL 1304911, at *2 (N.D. Ga. Mar. 27, 2014) (citation modified). Where a party establishes good cause under Rule 16, "in most instances leave to amend would also be warranted under Rule 15(a)." *Intelligent Inv. Int'l LLC v. Fu*, No. 1:17-CV-05296-RWS, 2020 WL 11191447, at *2 (N.D. Ga. Oct. 19, 2020). Consistent with Rule 15's liberal amendment policy, motions for leave to amend are generally granted absent substantial prejudice or futility.

## II. The Court Should Grant ETI's Motion for Leave to Amend

ETI seeks leave to add a patent misuse counterclaim under Rules 16(b)(4) and 15(a)(2) based on new information obtained during discovery after the amendment deadline passed. Specifically, ETI discovered evidence that Signify's Licensing Program: [redacted].

### A. ETI has met its burden under Rule 16(b)(4)

Despite acting diligently in discovery, ETI could not have pleaded patent misuse before the amendment deadline because the underlying facts were exclusively within Signify's possession until after that deadline passed. *See D.H. Pace*, 2014 WL 2574545, at *2.

The deadline to make an amendment to the pleadings passed on September 21, 2025. *See* ECF 22 at 9-10. On September 26, 2025, ETI served Signify with RFPs, including RFP No. 21, which requested "[a]ll Documents relating to any patent licenses, settlements, or covenants not to sue that You contend are comparable to a license that would have been negotiated between Signify and ETI." Ex. B.

On December 15, 2025, Signify produced [redacted] licensing and settlement agreements comprising tens of thousands of pages after the Court entered a protective order permitting that production. *See* ECF 67. ETI reviewed and analyzed those agreements while simultaneously briefing claim construction, addressing discovery disputes, and responding to evolving infringement allegations that the Court required Signify to amend. *See, e.g.*, ECF 96; Opening Claim Construction Brief (ECF 78) filed Feb. 9, 2026; Response to Signify's Claim Construction Brief (ECF 91) filed Apr. 2, 2026; Response to Cooper's Claim Construction Brief (ECF 92) filed Apr. 2, 2026. ETI also continued pursuing deficiencies in Signify's document production, including missing documents and information that Signify still has not fully produced. Only after substantial review and analysis of those agreements, together with developments in the Lepro litigation discussed below, did the factual basis for ETI's patent misuse counterclaim become clear.

Separately, post-trial developments in *Signify North America Corp. v. Lepro Innovation Inc.*, No. 2:22-cv-02095 (D. Nev.) further support good cause. In

February 2026, a jury awarded Signify $410,544. *See* Ex. A, Counterclaims ¶ 157. According to court filings, Lepro offered before trial to pay that amount in full, plus ongoing royalties on the accused products. *See* Ex. A, Counterclaims ¶ 154. Signify rejected the offer and instead continued pursuing broader portfolio-based licensing terms extending beyond the accused products while pursuing more than $4.326 million in attorneys' fees. *See* Ex. A, Counterclaims ¶ 159.

Those post-trial filings are consistent with the same pattern reflected in Signify's licensing agreements[redacted]. *See* Ex. A, Counterclaims ¶¶ 146–162. Although the Lepro litigation predated the amendment deadline, the post-trial filings revealing how Signify litigated and valued the case were not available until February 2026. Those developments independently support good cause.

The procedural posture further supports good cause because written discovery remains ongoing, no depositions have been taken, and the claim construction hearing has not yet occurred. *See Advanced Polymer,* 2009 WL 10669092, at *3.

**B. ETI has met its burden under Rule 15(a)(2)**

As an initial matter, because ETI has established good cause under Rule 16(b)(4), leave to amend is strongly favored under Rule 15(a)(2). *See Intelligent*, 2020 WL 11191447, at *2.

Leave should therefore be denied only upon a showing of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice, or futility. *New Generation*, 2014 WL 1304911, at *2 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Intelligent*, 2020 WL 11191447, at *2.

First, there has been no undue delay. Despite acting diligently throughout discovery, the factual basis for ETI's patent misuse counterclaim became clear only after ETI completed substantial review of Signify's [redacted] licensing and settlement agreements together with the post-trial developments in Signify v. Lepro. ETI had no earlier means to discover the conduct underlying the proposed counterclaim because the relevant agreements and related information were exclusively within Signify's possession and control. ETI moved promptly once those facts became clear.

Nor is there undue prejudice. Under Eleventh Circuit precedent, prejudice from undue delay arises only where "the opposing party does not have the ability to conduct discovery or meaningfully respond to the amended pleading." *Nelson v. TruGolf, Inc.*, No. 1:20-CV-01882-ELR, 2021 WL 9349179, at *3 (N.D. Ga. Nov. 5, 2021). That is not the case here. Written discovery remains ongoing, no depositions have been taken, and the claim construction hearing has not occurred. *See Collins v. GKD Mgmt., LP*, No. 3:19-CV-121-TCB, 2022 WL 17420791, at *3 (N.D. Ga. Aug. 31, 2022) (there is nothing "to warrant denial of a motion to amend" where "no

dispositive motions have been filed, and discovery is on-going"). Signify's infringement contentions also remain in flux following the Court's order requiring amendment. The proposed amendment also requires no modification to the Scheduling Order; any additional discovery can be completed within the existing discovery period.

Further, the proposed counterclaim concerns the enforceability of the asserted patents and Signify's licensing practices and damages positions—issues already at the heart of this case. *See Cline v. Advanced Neuromodulation Sys., Inc.*, 921 F. Supp. 2d 1374, 1377 n.3 (N.D. Ga. 2012). Adding a counterclaim for patent misuse therefore does not unduly prejudice Signify. Conversely, denying leave would prevent ETI from asserting a counterclaim grounded in newly discovered evidence directly relevant to the enforceability of the asserted patents.

Finally, the amendment is neither futile nor brought in bad faith. Signify bears the burden of showing that ETI "cannot prove a set of facts which would entitle [it] to relief." *D.H. Pace Co., Inc. v. OGD Equip. Co., LLC*, 515 F. Supp. 3d 1316, 1323 (N.D. Ga. 2021). ETI's proposed counterclaim clears that bar. As the Court recently recognized in denying dismissal of ETI's willful infringement allegations, the Rule 12 inquiry asks only whether ETI plausibly alleges facts entitling it to relief, not whether ETI will ultimately prevail. (ECF 97 at 6-7.) For example, based on Signify's own licensing agreements, ETI alleges that Signify's licensing program

[redacted] *See* Ex. A, Counterclaims ¶¶ 101–144. [redacted] *See* Ex. A, Counterclaims ¶¶ 145–148. ETI's counterclaim is grounded in documentary evidence from [redacted] agreements and asserted for legitimate litigation purposes. *See* Ex. A, Counterclaims ¶¶ 101–148. ETI's allegations plausibly state a claim for patent misuse and therefore are neither futile nor brought in bad faith.

Accordingly, ETI has satisfied Rule 15(a)(2), and leave to amend should be freely granted.

## CONCLUSION

For the foregoing reasons, ETI respectfully requests that the Court grant its Motion for Leave to File Second Amended Answer and Counterclaims.

Dated: May 28, 2026

Respectfully submitted,

*/s/ Coby S. Nixon*

Coby S. Nixon
Georgia Bar No. 545005
Seth K. Trimble
Georgia Bar No. 851055
Cory Mull

Georgia Bar No. 595376
**BUCHALTER LLP**
3475 Piedmont Road NE, Suite 1100
Atlanta, Georgia 30305
Telephone: (404) 832-7530
Email: cnixon@buchalter.com
strimble@buchalter.com

David B. Cupar (*pro hac vice*)
**MCDONALD HOPKINS LLC**
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114
Telephone: (216) 348-5400
Email: dcupar@mcdonaldhopkins.com

*Counsel for Defendant ETI Solid State Lighting, Inc.*