# Exhibit A

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA GAINESVILLE DIVISION

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V., <br><br> Plaintiffs, Plaintiffs, <br><br> v. v. <br><br> ETI SOLID STATE LIGHTING, INC. INC., <br><br> Defendant. Defendant. | C.A. No. 2:25-cv-00121-RWS <br><br> JURY TRIAL DEMANDED |
| ETI SOLID STATE LIGHTING INC., <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> SIGNIFY NORTH AMERICA CORPORATION, SIGNIFY HOLDING B.V., and COOPER LIGHTING, LLC, <br><br> Counterclaim-Defendants. | |

C.A. No. 2:25-cv-00121-RWS

# ~~FIRST~~SECOND AMENDED ANSWER AND COUNTERCLAIMS ~~OF~~ OF ETI SOLID STATE LIGHTING, INC.

## ANSWER

ETI Solid State Lighting, Inc. ("ETI" or "Defendant"), by and through its undersigned counsel, hereby answers the Complaint for Patent Infringement filed by Signify North America Corporation and Signify Holding B.V. (collectively, "Signify" or "Plaintiffs") as follows. The numbered paragraphs below correspond to the numbered paragraphs in the Complaint. Unless expressly admitted, all allegations are denied.

## NATURE OF THE ACTION

1. ETI admits that Plaintiffs purport to bring an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 et seq., but denies any liability or infringement of any valid and enforceable claim of any asserted patent.

## THE PARTIES

2. ETI lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the corporate status and principal place of business of Signify North America Corporation and therefore denies the same.

3. ETI lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the corporate status and registered office of Signify Holding B.V. and therefore denies the same.

4. ETI denies it is a limited liability company, but admits it is organized under the laws of Ohio with a principal place of business at 4873 Thurmon Tanner Pkwy, Flowery Branch, GA 30542. ETI admits it is registered to do business in Georgia and has designated David A. Gilinsky, CPA, as its registered agent.

## JURISDICTION AND VENUE

5. ETI admits that Plaintiffs purport to bring this action under the patent laws of the United States and that this Court has subject matter jurisdiction over such actions. ETI denies that Plaintiffs have standing necessary for subject matter jurisdiction or that ETI has committed any acts of infringement.

6. ETI admits that this Court has personal jurisdiction over ETI. ETI admits that it has a principal place of business in Georgia and conducts business in Georgia. ETI denies all other allegations in this paragraph.

7. ETI admits that it relocated its headquarters to Flowery Branch, Georgia, and that the facility houses both office space and warehousing. ETI denies all remaining allegations in this paragraph.

8. ETI admits it sells products in Georgia and provided a "Where to Buy" page on its website, but denies any acts of infringement or that such sales constitute infringement of any valid and enforceable patent.

9. ETI admits it imports LED products into the United States, but denies that any such products infringe any valid and enforceable patent.

10. ETI admits its products are sold in Georgia, but denies that such sales constitute infringement.

11. ETI denies that it is a limited liability company, but admits it is organized under the laws of Ohio and that it has designated David A. Gilinsky, CPA as its registered agent for service of process in this District. ETI admits that it conducts business in this District and that its principal place of business is in this District.

**THE PATENTS-IN-SUIT**
(Paragraphs 12–26)

12. ETI lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Signify's status as a global market leader or its expertise and therefore denies the same.

13. ETI lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Signify's reputation, awards, or lighting installations, and therefore denies the same.

14. ETI lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Cooper Lighting's headquarters or its lighting projects and therefore denies the same.

15. ETI lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Signify's products being used at Sanford Stadium and therefore denies the same.

16. ETI lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Signify Foundation and therefore denies the same.

17. ETI lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Signify Foundation’s activities and therefore denies the same.

18. ETI admits that U.S. Patent No. 8,789,978 (the “‘’978 Patent”) lists an issuance date of July 29, 2014, and is titled “Light Emitting Diode Recessed Light Fixture.” ETI further admits that the face of the ‘’978 Patent identifies Signify Holding B.V., formerly known as Philips Lighting Holding B.V., as the assignee. ETI denies that the ‘’978 Patent was duly and legally issued or is otherwise valid. ETI further denies any remaining allegations in this paragraph.

19. ETI admits that U.S. Patent No. 9,709,253 appears to have been issued by the United States Patent and Trademark Office on July 18, 2017, and is titled “Light Emitting Diode Recessed Light Fixture.” ETI further admits that the face of the ‘’253 Patent lists Signify Holding B.V., formerly known as Philips Lighting Holding B.V., as the assignee. ETI denies that any ETI product infringes any valid and enforceable claim of the ‘’253 Patent and denies any remaining allegations in this paragraph.

20. ETI admits that U.S. Patent No. 10,634,321 appears to have been issued by the United States Patent and Trademark Office on April 28, 2020, and is titled “Light Emitting Diode Recessed Light Fixture.” ETI further admits that the face of the ‘’321 Patent lists Signify Holding B.V., formerly known as Philips Lighting Holding B.V., as the assignee. ETI denies that any ETI product infringes

any valid and enforceable claim of the '‘’321 Patent and denies any remaining allegations in this paragraph.

21. ETI admits that U.S. Patent No. 10,506,682 appears to have been issued by the United States Patent and Trademark Office on December 10, 2019, and is titled “Configurable Lighting System.” ETI further admits that the face of the '‘’682 Patent lists Signify Holding B.V., formerly known as Philips Lighting Holding B.V., as the assignee. ETI denies that any ETI product infringes any valid and enforceable claim of the '‘’682 Patent and denies any remaining allegations in this paragraph.

22. ETI admits that U.S. Patent No. 11,408,588 appears to have been issued by the United States Patent and Trademark Office on August 9, 2022, and is titled “Configurable Lighting System.” ETI further admits that the face of the '‘’588 Patent lists Signify Holding B.V., formerly known as Philips Lighting Holding B.V., as the assignee. ETI denies that any ETI product infringes any valid and enforceable claim of the '‘’588 Patent and denies any remaining allegations in this paragraph.

23. ETI admits that U.S. Patent No. 10,473,280 appears to have been issued by the United States Patent and Trademark Office on November 12, 2019, and is titled “Wall Pack Light Fixture.” ETI further admits that the face of the '‘’280 Patent lists Signify Holding B.V., formerly known as Philips Lighting Holding B.V., as the assignee. ETI denies that any ETI product infringes any valid

and enforceable claim of the ‘’280 Patent and denies any remaining allegations in this paragraph.

24. ETI admits that U.S. Patent No. 9,677,727 appears to have been issued by the United States Patent and Trademark Office on June 13, 2017, and is titled “Wall Pack Light Fixture.” ETI further admits that the face of the ‘’727 Patent lists Signify Holding B.V., formerly known as Philips Lighting Holding B.V., as the assignee. ETI denies that any ETI product infringes any valid and enforceable claim of the ‘’727 Patent and denies any remaining allegations in this paragraph.

25. ETI admits that U.S. Patent No. 7,654,703 appears to have been issued by the United States Patent and Trademark Office on February 2, 2010, and is titled “Directly Viewable Luminaire.” ETI further admits that the face of the ‘’703 Patent lists Signify Holding B.V., formerly known as Philips Lighting Holding B.V., as the assignee. ETI denies that any ETI product infringes any valid and enforceable claim of the ‘’703 Patent and denies any remaining allegations in this paragraph.

26. ETI admits that U.S. Patent No. 7,511,437 appears to have been issued by the United States Patent and Trademark Office on March 31, 2009, and is titled “Methods and Apparatus for High Power Factor Controlled Power Delivery Using a Single Switching Stage per Load.” ETI further admits that the face of the ‘’437 Patent lists Signify North America Corporation as the assignee.

ETI denies that any ETI product infringes any valid and enforceable claim of the ‘’437 Patent and denies any remaining allegations in this paragraph.

**FACTUAL BACKGROUND**
(Paragraphs 27–38)

27. ETI admits it offers for sale, sells, and distributes lighting products, including LED products, in the United States, including Georgia.

28. Denied.

29. Denied.

30. ETI admits it sells a product with model number DL-6-67-907-SV-D, but denies the remaining allegations, including that this or any other product infringes any valid and enforceable claim of the ‘’978, ‘’253, ‘’321, ‘’588, or ‘’682 Patents.

31. Denied

32. Denied.

33. ETI admits it sells a product with model number VPK-1-LB3-CP3-MV-LVD, but denies the remaining allegations, including that this or any other product infringes any valid and enforceable claim of the ‘’280, ‘’727, or ‘’703 Patents.

34. ETI admits it sells a product with model number GL-18IN-500LM-8-CP3-SV-TD, but denies the remaining allegations, including that this or any other product infringes any valid and enforceable claim of the ‘’703 or ‘’588 Patents.

35. Denied.

36. Denied.

37. Denied.

38. Denied.

**GENERAL ALLEGATIONS**
(Paragraphs 39–44)

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

**COUNTS ONE THROUGH NINE (INFRINGEMENT OF THE ASSERTED PATENTS)**
(Paragraphs 45–224)

**Count One: U.S. Patent No. 8,789,978**

45. Admitted or denied as set forth above.

46. Denied.

47. ETI denies that any product it makes, uses, offers to sell, sells, or imports infringes the ‘’978 Patent or that Signify is entitled to name additional accused products beyond those identified in its complaint.

48. ETI admits that claim 1 of U.S. Patent No. 8,789,978 appears to contain the language quoted, but denies any allegations or characterizations inconsistent with the language of the patent.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. ETI denies that it has infringed, either directly or indirectly, any valid and enforceable claim of the ‘’978 Patent. ETI further denies that it has made, used, sold, offered to sell, or imported any product that infringes the ‘’978 Patent, including any product not specifically identified in the Complaint. ETI denies any allegation that it will in the future make or sell any infringing product. ETI denies the remaining allegations in this paragraph, including any implication that Signify is entitled to expand or revise its infringement allegations or that Signify is entitled to any relief.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

**Count Two: U.S. Patent No. 9,709,253**

65. Admitted or denied as set forth above.

66. Denied.

67. ETI denies that the identified product infringes any valid and enforceable claim of the '253 Patent. ETI further denies that Signify has provided proper notice of any alleged infringement. ETI denies that there are or will be any additional products that infringe the '253 Patent and denies that Signify is entitled to expand the definition of the accused products. ETI denies the remaining allegations in this paragraph.

68. ETI states that Claim 1 of U.S. Patent No. 9,709,253 appears to contain the language quoted but denies any allegations or characterizations inconsistent with the language of the patent.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. ETI denies that it has infringed, either directly or indirectly, any valid and enforceable claim of the '‘’253 Patent. ETI further denies that it has made, used, sold, offered to sell, or imported any product, whether identified by a different name or part number, that infringes the '‘’253 Patent. ETI denies the remaining allegations in this paragraph, including any implication that Signify is entitled to expand or revise its infringement allegations or the accused products.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. Denied.

**Count Three: U.S. Patent No. 10,634,321**

82. Admitted or denied as set forth above.

83. Denied.

84. ETI denies that the identified product infringes any valid and enforceable claim of the '‘’321 Patent. ETI further denies that Signify has provided proper notice of any alleged infringement. ETI denies that there are or will be any additional products that infringe the '‘’321 Patent and denies that Signify is entitled to expand the definition of the accused products. ETI denies the remaining allegations in this paragraph.

85. ETI admits that U.S. Patent No. 10,849,321 appears to contain the language quoted, but denies any allegations or characterizations inconsistent with the language of the patent.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. ETI denies that it has infringed, either directly or indirectly, any valid and enforceable claim of the ‘’321 Patent. ETI further denies that it has made, used, sold, offered to sell, or imported any product, whether identified by a different name or part number, that infringes the ‘’321 Patent. ETI denies that there are or will be any additional products that infringe the ‘’321 Patent and denies that Signify is entitled to expand the definition of the accused products. ETI denies the remaining allegations in this paragraph.

91. Denied.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

**Count Four: U.S. Patent No. 10,506,682**

98. Admitted or denied as set forth above.

99. Denied.

100. ETI denies that any product it makes, uses, offers to sell, sells, or imports infringes the ‘682 Patent or that Signify is entitled to name additional infringing products.

101. ETI admits that U.S. Patent No. 10,859,682 appears to contain the language quoted, but denies any allegations or characterizations inconsistent with the language of the patent.

102. Denied.

103. ETI denies that the LED Spin Light satisfies this or any other alleged limitation of claim 1 of the ‘’682 Patent. ETI is without knowledge or information sufficient to form a belief as to the origin or authenticity of the image shown in Paragraph 104, which is identified as Exhibit RL, and therefore denies the allegations concerning that image. ETI denies the remaining allegations in this paragraph.

104. ETI admits that Paragraph 104 includes an image labeled “SWITCH PCB.” ETI is without knowledge or information sufficient to form a belief as to the origin or authenticity of the image, which is identified as Exhibit RL, and therefore denies the allegations in this paragraph.

105. ETI is without knowledge or information sufficient to form a belief as to the origin, authenticity, or relevance of the image identified as Exhibit RL, and therefore denies the allegations in this paragraph.

106. ETI is without knowledge or information sufficient to form a belief as to the origin, authenticity, or relevance of Exhibit ~~R~~L, and therefore denies the remaining allegations in this paragraph.

107. Denied.

108. Denied.

109. Denied.

110. ETI denies that it has infringed, either directly or indirectly, any valid and enforceable claim of the ~~‘~~’682 Patent. ETI further denies that it has made, used, sold, offered to sell, or imported any product, whether identified by a different name or part number, that infringes the ~~‘~~’682 Patent. ETI denies that there are or will be any additional products that infringe the ~~‘~~’682 Patent and denies that Signify is entitled to expand the definition of the accused products. ETI denies the remaining allegations in this paragraph.

111. ETI admits that it became aware of the ~~‘~~’682 Patent through the filing and service of the Complaint in this action. ETI denies that it has infringed any valid and enforceable claim of the ~~‘~~’682 Patent and denies the remaining allegations in this paragraph.

112. Denied.

113. Denied.

114. Denied.

115. Denied.

116. Denied.

117. Denied.

## Count Five: U.S. Patent No. 11,408,588

118. Admitted or denied as set forth above.

119. Denied.

120. ETI denies the allegations in Paragraph 120 of the Complaint. ETI specifically denies that any of its products infringe the ‘’588 Patent and denies that Signify has provided notice of any infringing acts. ETI further denies that there is any basis for expanding the definition of the so-called “‘’588 Accused Products.”

121. ETI admits that Paragraph 121 of the Complaint appears to quote claim 21 of U.S. Patent No. 11,408,588, but denies any allegations or characterizations inconsistent with the language of the patent, including any implication that ETI infringes any claim of the ‘’588 Patent.

122. ETI admits that the pictured product is a lighting device. ETI denies that any product identified as or equivalent to the LED Spin Light infringes any claim of the ‘’588 Patent, including any limitation of claim 21.

123. Denied.

124. Denied.

125. Denied.

126. Denied.

127. ETI denies the allegations in Paragraph 127 of the Complaint. ETI specifically denies that it has made, used, sold, offered for sale, or imported any

product that infringes the ‘’588 Patent in any manner. ETI further denies that Signify has provided any notice of alleged infringement or any basis for asserting infringement of additional products or claims.

128. Denied.

129. Denied.

130. Denied.

131. Denied.

132. Denied.

133. Denied.

**Count Six: U.S. Patent No. 10,473,280**

134. Admitted or denied as set forth above.

135. Denied.

136. ETI denies the allegations in Paragraph 136 of the Complaint. ETI specifically denies that any of its products infringe the ‘’280 Patent and denies that Signify has provided notice of any infringing acts. ETI further denies that there is any basis for expanding the definition of the so-called "‘’280 Accused Products."

137. ETI admits that Paragraph 137 of the Complaint appears to quote claim 1 of U.S. Patent No. 10,272,280, which speaks for itself. ETI denies any allegations or implications inconsistent with the language of the patent, including any implication that ETI infringes any claim of the ‘’280 Patent.

138. ETI admits that the pictured product is a light fixture but denies that any product identified as or equivalent to the LED Spin Light infringes any claim of the ‘’280 Patent, including any limitation of claim 1.

139. Denied.

140. Denied.

141. Denied.

142. Denied.

143. Denied.

144. Denied.

145. Denied.

146. Denied.

147. Denied.

148. Denied.

149. ETI denies the allegations in Paragraph 149 of the Complaint. ETI specifically denies that it has made, used, sold, offered for sale, or imported any product that infringes the ‘’280 Patent in any manner. ETI further denies that Signify has provided any notice of alleged infringement or any basis for asserting infringement of additional products or claims.

150. Denied.

151. Denied.

152. Denied.

153. Denied.

154. Denied.

155. Denied.

156. Denied.

**Count Seven: U.S. Patent No. 9,677,727**

157. Admitted or denied as set forth above.

158. Denied.

159. ETI denies the allegations in Paragraph 159 of the Complaint. ETI specifically denies that any of its products infringe the ‘’727 Patent and denies that Signify has provided notice of infringing acts. ETI further denies that there is any basis for expanding the definition of the so-called “‘’727 Accused Products.”

160. ETI admits that Paragraph 160 of the Complaint appears to quote claim 9 of U.S. Patent No. 9,677,727, but denies any allegations or characterizations inconsistent with the language of the patent, including any implication that ETI infringes any claim of the ‘’727 Patent.

161. ETI admits that the pictured product is a light fixture but denies that any product identified as or equivalent to the Versapack Wall Pack infringes any claim of the ‘’727 Patent.

162. Denied.

163. Denied.

164. Denied.

165. Denied.

166. Denied.

167. Denied.

168. Denied.

169. Denied.

170. ETI denies the allegations in Paragraph 170 of the Complaint. ETI specifically denies that it has made, used, sold, offered for sale, or imported any product that infringes the ‘’727 Patent in any manner. ETI further denies that Signify has provided any notice of alleged infringement or any basis for asserting infringement of additional products or claims.

171. ETI admits that it received the Complaint in this action, which references the ‘’727 Patent. ETI denies the remaining allegations in Paragraph 171 of the Complaint.

172. Denied.

173. Denied.

174. Denied.

175. Denied.

176. Denied.

177. Denied.

**Count Eight: U.S. Patent No. 7,654,703**

178. Admitted or denied as set forth above.

179. Denied.

180. ETI denies that any product it makes, uses, offers to sell, sells, or imports infringes the ‘’703 Patent or that Signify is entitled to name additional infringing products.

181. ETI admits that Paragraph 181 of the Complaint appears to quote claim 17 of U.S. Patent No. 7,654,703, but denies any allegations or characterizations inconsistent with the language of the patent, including any implication that ETI infringes any claim of the ‘’703 Patent.

182. Denied.

183. Denied.

184. Denied.

185. Denied.

186. Denied.

187. Denied.

188. Denied.

189. Denied.

190. ETI denies the allegations in Paragraph 190 of the Complaint. ETI specifically denies that it has made, used, sold, offered for sale, or imported any product that infringes the ‘’703 Patent in any manner. ETI further denies that Signify has provided any notice of alleged infringement or any basis for asserting infringement of additional products or claims.

191. Denied.

192. Denied.

193. Denied.

194. Denied.

195. Denied.

196. Denied.

**Count Nine: U.S. Patent No. 7,511,437**

197. Admitted or denied as set forth above.

198. Denied.

199. ETI denies the allegations in Paragraph 199 of the Complaint. ETI specifically denies that any of its products infringe the ‘’437 Patent and denies that Signify has provided notice of any infringing acts. ETI further denies that there is any basis for expanding the definition of the so-called “‘’437 Accused Products.”

200. ETI admits that Paragraph 200 of the Complaint appears to quote claim 1 of U.S. Patent No. 7,511,437 but denies any allegations or characterizations inconsistent with the language of the patent, including any implication that ETI infringes any claim of the ‘’437 Patent.

201. Denied.

202. Denied.

203. Denied.

204. Denied.

205. Denied.

206. Denied.

207. Denied.

208. Denied.

209. Denied.

210. Denied.

211. Denied.

212. Denied.

213. Denied.

214. Denied.

215. Denied.

216. Denied.

217. ETI denies the allegations in Paragraph 217 of the Complaint. ETI specifically denies that it has made, used, sold, offered for sale, or imported any product that infringes the ‘’437 Patent in any manner. ETI further denies that Signify has provided any notice of alleged infringement or any basis for asserting infringement of additional products or claims.

218. Denied.

219. Denied.

220. Denied.

221. Denied.

222. Denied.

223. Denied.

224. Denied.

## ANSWER TO PRAYER FOR RELIEF

ETI denies that Signify is entitled to any relief whatsoever, including the relief requested in Signify's Prayer for Relief.

## AFFIRMATIVE DEFENSES

## FIRST DEFENSE

1. Signify's Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

2. ETI has not infringed and does not infringe, either directly, indirectly, contributorily, or by inducement, any valid and enforceable claim of the asserted patents.

## THIRD DEFENSE

3. The asserted patents are invalid, in whole or in part, for failure to comply with one or more of the requirements of the patent laws of the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

## FOURTH DEFENSE

4. Signify's claims are barred, in whole or in part, by the doctrines of laches, estoppel, and/or waiver, including but not limited to prosecution history estoppel and equitable estoppel.

## FIFTH DEFENSE

5. Signify is barred by 35 U.S.C. § 288 from recovering any costs associated with this suit.

**SIXTH DEFENSE**

6. Signify's claims are barred or otherwise limited by the doctrines of patent exhaustion, the first-sale doctrine, express and implied license, and the prohibition against double recovery.

**SEVENTH DEFENSE**

7. Signify's claims for infringement of the asserted patents, in whole or in part, is precluded by operation of the reverse doctrine of equivalents.

**EIGHTH DEFENSE**

8. Signify's claims are barred in whole or in part to the extent that they seek damages for actions occurring after the expiration of any of the asserted patents.

**NINTH DEFENSE**

9. Signify's claims are barred in whole or in part by the doctrine of unclean hands.

**TENTH DEFENSE**

10. Signify is barred from asserting the claims of the '978 Patent, the '253 Patent, the '321 Patent, the '682 Patent, the '588 Patent, the '280 Patent, the '727 Patent, the '703 Patent, and the '437 Patent against ETI by the equitable doctrine of patent misuse.

**ELEVENTH DEFENSE**

11. ~~10.~~ Signify and its licensees have failed to mark products with the patents Signify has asserted in this suit in accordance with 35 U.S.C. § 287.

## RESERVATION OF DEFENSES

12. ~~11.~~ ETI reserves the right to assert additional defenses as may become apparent during discovery.

## COUNTERCLAIMS

1. The counterclaims asserted below in no way constitute waiver of any defense asserted by ETI. Thus, subject to and without waiving any of the foregoing defenses, Counterclaimant ETI hereby states its counterclaims:

## PARTIES

2. ETI Solid State Lighting Inc. is a corporation organized under the laws of Ohio with its principal place of business at 4873 Thurmon Tanner Pkwy, Flowery Branch, GA 30542.

3. On information and belief, Signify North America Corporation is a corporation organized under the laws of Delaware with its principal place of business at 400 Crossing Blvd, Suite 600, Bridgewater, NJ 08807.

4. On information and belief, Signify Holding B.V. is a corporation organized under the laws of the Netherlands with its registered office at High Tech Campus 48, 5656 AE Eindhoven, The Netherlands.

5. For purposes of these Counterclaims, “Signify” refers collectively to Signify North America Corporation and Signify Holding B.V., including their officers, agents, employees, and all persons acting in concert or participation with them unless otherwise specifically indicated.

6. “Signify North America” refers to Signify North America Corporation, a corporation organized under the laws of Delaware with its principal place of business at 400 Crossing Blvd, Suite 600, Bridgewater, NJ 08807.

7. “Signify Holding” refers to Signify Holding B.V., a corporation organized under the laws of the Netherlands with its registered office at High Tech Campus 48, 5656 AE Eindhoven, The Netherlands.

~~8. Cooper Lighting, LLC (“Cooper Lighting”) is a limited liability company organized under the laws of Delaware, with its principal office located at 1121 Highway 74 South, Peachtree City, Georgia 30269.~~

**JURISDICTION AND VENUE**

8. ~~9.~~ On May 2, 2025, Signify filed its Complaint alleging that ETI infringes U.S. Patent Nos. 8,789,978 (“the ~~‘~~’978 Patent”), 9,709,253 (“the ~~‘~~’253 Patent”), 10,634,321 (“the ~~‘~~’321 Patent”), 10,506,682 (“the ~~‘~~’682 Patent”), 11,408,588 (“the ~~‘~~’588 Patent”), 10,473,280 (“the ~~‘~~’280 Patent”), 9,677,727 (“the ~~‘~~’727 Patent”), 7,654,703 (“the ~~‘~~’703 Patent”), and 7,511,437 (“the ~~‘~~’437 Patent”).

9. ~~10.~~ These counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

10. ~~11.~~ By filing its Complaint, Signify has consented to the personal jurisdiction of this Court.

~~12. The Court has personal jurisdiction over Cooper Lighting based on Signify’s own allegation in its complaint that Cooper Lighting “is headquartered in the Northern District of GA, in Peachtree City” and that within “the Northern~~

District Cooper Lighting's LED products have been used to light numerous local landmarks and public facilities" in Georgia. (Doc. 1, ¶ 14.)

11. 13. Venue is proper as to Signify and Cooper Lighting under 28 U.S.C. §§ 1391(b) and 1400(b).

14. The Court has venue over Cooper Lighting based on Signify's own allegation in its complaint that Cooper Lighting "is headquartered in the Northern District of GA, in Peachtree City" and that within "the Northern District Cooper Lighting's LED products have been used to light numerous local landmarks and public facilities" in Georgia. (Doc. 1, ¶ 14.) Further, there is no independent venue requirement for ETI's counterclaims against Cooper Lighting.

12. 15. Signify, by its Complaint, asserts that ETI has infringed the '978, '253, '321, '682, '588, '280, '727, '703, and '437 patents. ETI, by its Answer, asserts that it does not infringe the claims of the '978, '253, '321, '682, '588, '280, '727, '703, and '437 patents, and that the claims of each of those patents are invalid. Thus, an actual and justiciable controversy exists between ETI and Signify concerning the infringement and validity of the claims of the '978, '253, '321, '682, '588, '280, '727, '703, and '437 patents.

16. Cooper Lighting, LLC ("Cooper Lighting") was intimately involved with the prosecution of six of the nine patents asserted by Plaintiffs in this action, specifically U.S. Patent Nos. 8,789,978 B2 (see Exhibit A), 9,709,253 B2 (see Exhibit B), 10,634,321 B2 (see Exhibit C), 10,506,682 B2 (see Exhibit D),

10,473,280 B2 (see Exhibit E), and 9,677,727 B2 (see Exhibit F) (collectively, the "Cooper Patents").

17. Cooper Lighting possesses unique, direct knowledge relevant to key issues in this litigation, including but not limited to infringement, damages, standing, and invalidity.

18. The Complaint relies on patents prosecuted by Cooper Lighting and pleads facts regarding Cooper Lighting's business activities and products, further demonstrating Cooper Lighting's direct involvement in the subject matter of this litigation.

19. The inclusion of Cooper Lighting as a party is necessary to afford complete relief among existing parties and to avoid duplicative or inconsistent adjudications regarding the patents in suit and the accused products.

20. Cooper Lighting's close corporate relationship with Plaintiffs further supports its direct and substantial connection to the claims and defenses at issue in this litigation.

**FIRST COUNTERCLAIM**
**(Declaration of Noninfringement of the ''978 Patent)**

13. 21. ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

14. 22. ETI does not, and has not, infringed any valid claim of U.S. Patent No. 8,789,978 ("the ''978 Patent")—literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents. By way of example, the

product Signify has accused of infringing claim 9 of the ~~‘~~’978 Patent does not infringe at least because they lack the following limitation: “a housing defining a cavity therein, the housing being coupled to the lower surface of the heat sink.”

15. ~~23.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that it does not, and has not, infringed the ~~‘~~’978 Patent.

**SECOND COUNTERCLAIM**
**(Declaration of Invalidity of the ~~‘~~’978 Patent)**

16. ~~24.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

17. ~~25.~~ One or more claims of the ~~‘~~’978 Patent (including the only asserted claim, claim 9) are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112. By way of example, one or more claims of the ~~‘~~’978 Patent are anticipated or rendered obvious in view of at least Project 2.3 Low-profile LED Luminaires, PIER Lighting Research Program, California Energy Commission, prepared by Lighting Research Center (Nadarajah Narendran, Project Lead), managed by Architectural Energy Corporation (Judie Porter), Jan. 1, 2005 (hereinafter, “Project 2.3”), attached to these counterclaims as Exhibit ~~G~~A.

18. ~~26.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that one or more claims of the ~~‘~~’978 Patent are invalid.

**THIRD COUNTERCLAIM**
**(Declaration of Noninfringement of the ~~‘~~’253 Patent)**

19. ~~27.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

20. ~~28.~~ ETI does not, and has not, infringed any valid claim of U.S. Patent No. 9,709,253 (~~"~~“the ~~‘~~’253 Patent~~"~~”)—literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents. By way of example, the product Signify has accused of infringing claim 1 of the ~~‘~~’253 Patent does not infringe at least because they lack the following limitation: “a heat sink, wherein the heat sink includes an inner surface.”

21. ~~29.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that it does not, and has not, infringed the ~~‘~~’253 Patent.

**FOURTH COUNTERCLAIM**
**(Declaration of Invalidity of the ~~‘~~’253 Patent)**

22. ~~30.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

23. ~~31.~~ One or more claims of the ~~‘~~’253 Patent (including the only asserted claim, claim 1) are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code,

including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112. By way of example, one or more claims of the ~~'~~’253 Patent are anticipated or rendered obvious in view of at least Project 2.3.

24. ~~32.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that one or more claims of the ~~'~~’253 Patent are invalid.

**FIFTH COUNTERCLAIM**
**(Declaration of Noninfringement of the ~~'~~’321 Patent)**

25. ~~33.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

26. ~~34.~~ ETI does not, and has not, infringed any valid claim of U.S. Patent No. 10,634,321 (~~"~~“the ~~'~~’321 Patent~~"~~”)—literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents. By way of example, the product Signify has accused of infringing claim 8 of the ~~'~~’321 Patent does not infringe at least because they lack the following limitation: “a light emitting diode (LED) light source mechanically coupled to the inner surface of the downlight module.”

27. ~~35.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that it does not, and has not, infringed the ~~'~~’321 Patent.

**SIXTH COUNTERCLAIM**
**(Declaration of Invalidity of the ~~'~~’321 Patent)**

28. ~~36.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

29. ~~37.~~ One or more claims of the ~~‘~~’321 Patent (including the only asserted claim, claim 8) are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112. By way of example, one or more claims of the ~~‘~~’321 Patent are anticipated or rendered obvious in view of at least Project 2.3.

30. ~~38.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that one or more claims of the ~~‘~~’321 Patent are invalid.

**SEVENTH COUNTERCLAIM**
**(Declaration of Noninfringement of the ~~‘~~’682 Patent)**

31. ~~39.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

32. ~~40.~~ ETI does not, and has not, infringed any valid claim of U.S. Patent No. 10,506,682 (~~"~~“the ~~‘~~’682 Patent~~"~~”)—literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents. By way of example, the product Signify has accused of infringing claim 1 of the ~~‘~~’682 Patent does not infringe at least because they lack the following limitation: “wherein the light source illuminates when the power flows through the control module to the light source, regardless of the position of the at least one first switch.”

33. ~~41.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that it does not, and has not, infringed the ~~‘~~’682 Patent.

**EIGHTH COUNTERCLAIM**
**(Declaration of Invalidity of the ~~‘~~’682 Patent)**

34. ~~42.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

35. ~~43.~~ One or more claims of the ~~‘~~’682 Patent (including the only asserted claim, claim 1) are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112. By way of example, one or more claims of the ~~‘~~’682 Patent are anticipated or rendered obvious in view of at least Kurita et al. (JP 2012079965), attached to ~~this complaint~~these counterclaims as Exhibit ~~H~~B.

36. ~~44.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that one or more claims of the ~~‘~~’682 Patent are invalid.

**NINTH COUNTERCLAIM**
**(Declaration of Noninfringement of the ~~‘~~’588 Patent)**

37. ~~45.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

38. ~~46.~~ ETI does not, and has not, infringed any valid claim of U.S. Patent No. 11,408,588 (~~"~~“the ~~‘~~’588 Patent~~"~~”)—literally, directly, contributorily,

by way of inducement, or under the doctrine of equivalents. By way of example, the product Signify has accused of infringing claim 21 of the '’588 Patent does not infringe at least because they lack the following limitation: “a first configuration associated with a third color temperature different from the first and second color temperatures and in between the first and second color temperatures.”

39. 47. Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that it does not, and has not, infringed the '’588 Patent.

**TENTH COUNTERCLAIM**
**(Declaration of Invalidity of the '’588 Patent)**

40. 48. ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

41. 49. One or more claims of the '’588 Patent (including the only asserted claim, claim 21) are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112. By way of example, one or more claims of the '’588 Patent are anticipated or rendered obvious in view of at least in view of at least Chou (US 2014/0042920), attached to this complaintthese counterclaims as Exhibit IC.

42. ~~50.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that one or more claims of the ~~‘~~’588 Patent are invalid.

**ELEVENTH COUNTERCLAIM**
**(Declaration of Noninfringement of the ~~‘~~’280 Patent)**

43. ~~51.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

44. ~~52.~~ ETI does not, and has not, infringed any valid claim of U.S. Patent No. 10,473,280 (~~"~~“the ~~‘~~’280 Patent~~"~~”)—literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents. By way of example, the product Signify has accused of infringing claim 1 of the ~~‘~~’280 Patent does not infringe at least because they lack the following limitation: “a cover box that fastens to the mounting box, the cover box forming a second cavity, the cover box comprising a first side that faces the mounting box when the cover box is fastened to the mounting box.”

45. ~~53.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that it does not, and has not, infringed the ~~‘~~’280 Patent.

**TWELFTH COUNTERCLAIM**
**(Declaration of Invalidity of the ~~‘~~’280 Patent)**

46. ~~54.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

47. ~~55.~~ One or more claims of the ~~‘~~’280 Patent (including the only asserted claim, claim 1) are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112. By way of example, one or more claims of the ~~‘~~’280 Patent are anticipated or rendered obvious in view of at least Publication No. US 2010/0265064 A1, attached to ~~this complaint~~these counterclaims as Exhibit ~~J~~D.

48. ~~56.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that one or more claims of the ~~‘~~’280 Patent are invalid.

**THIRTEENTH COUNTERCLAIM**
**(Declaration of Noninfringement of the ~~‘~~’727 Patent)**

49. ~~57.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

50. ~~58.~~ ETI does not, and has not, infringed any valid claim of U.S. Patent No. 9,677,727 (~~"~~“the ~~‘~~’727 Patent~~"~~”)—literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents. By way of example, the product Signify has accused of infringing claim 9 of the ~~‘~~’727 Patent does not infringe at least because they lack the following limitation: “a second cavity that faces the mounting box when the cover box is fastened to the mounting box.”

51. ~~59.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that it does not, and has not, infringed the ~~‘~~’727 Patent.

**FOURTEENTH COUNTERCLAIM**
**(Declaration of Invalidity of the ~~‘~~’727 Patent)**

52. ~~60.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

53. ~~61.~~ One or more claims of the ~~‘~~’727 Patent (including the only asserted claim, claim 9) are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112. By way of example, one or more claims of the ~~‘~~’727 Patent are anticipated or rendered obvious in view of at least Publication No. US 2010/0265064 A1.

54. ~~62.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that one or more claims of the ~~‘~~’727 Patent are invalid.

**FIFTEENTH COUNTERCLAIM**
**(Declaration of Noninfringement of the ~~‘~~’703 Patent)**

55. ~~63.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

56. ~~64.~~ ETI does not, and has not, infringed any valid claim of U.S. Patent No. 7,654,703 (~~"~~“the ~~‘~~’703 Patent~~"~~”)—literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents. By way of example, the

product Signify has accused of infringing claim 17 of the ‘’703 Patent does not infringe at least because they lack the following limitation: “said first internal compartment thermally separated from the second internal compartment, each of said first internal compartment and said second internal compartment configured to dissipate heat.”

57. 65. Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that it does not, and has not, infringed the ‘’703 Patent.

**SIXTEENTH COUNTERCLAIM**
**(Declaration of Invalidity of the ‘’703 Patent)**

58. 66. ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

59. 67. One or more claims of the ‘’703 Patent (including the only asserted claim, claim 17) are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112. By way of example, one or more claims of the ‘’703 Patent are anticipated or rendered obvious in view of at least Japanese Patent Application Publication No. JP 2004-55800 A, attached to this complaintthese counterclaims as Exhibit KE.

60. 68. Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that one or more claims of the ‘’703 Patent are invalid.

**SEVENTEENTH COUNTERCLAIM**
**(Declaration of Noninfringement of the ~~‘~~’437 Patent)**

61. ~~69.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

62. ~~70.~~ ETI does not, and has not, infringed any valid claim of U.S. Patent No. 7,511,437 (~~"~~“the ~~‘~~’437 Patent~~"~~”)—literally, directly, contributorily, by way of inducement, or under the doctrine of equivalents. By way of example, the product Signify has accused of infringing claim 1 of the ~~‘~~’437 Patent does not infringe at least because they lack the following limitation “wherein the switching power supply further is configured to control the first single switching stage to provide the first load power without monitoring or regulating a first load current or a first load voltage associated with the first load.”

63. ~~71.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that it does not, and has not, infringed the ~~‘~~’437 Patent.

**EIGHTEENTH COUNTERCLAIM**
**(Declaration of Invalidity of the ~~‘~~’437 Patent)**

64. ~~72.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

65. ~~73.~~ One or more claims of the ~~‘~~’437 Patent (including the only asserted claim, claim 1) are invalid for failure to comply with one or more of the conditions of patentability set forth in Part II of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112. By way of

example, one or more claims of the ‘’437 Patent are anticipated or rendered obvious in view of at least Japanese Patent Application Publication No. JP 2005-142137 A, attached to ~~this complaint~~these counterclaims as Exhibit ~~L~~F.

66. ~~74.~~ Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202, ETI is entitled to a declaratory judgment that one or more claims of the ‘’437 Patent are invalid.

## NINETEENTH COUNTERCLAIM

~~**(Inequitable Conduct – U.S. Patent No. 11,408,588)**~~

~~75. ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.~~

~~76. This is a counterclaim for inequitable conduct arising from the prosecution of U.S. Patent No. 11,408,588 (“the ’588 Patent”), during which material prior art was intentionally withheld from the USPTO. As a result of this misconduct, the ’588 Patent is unenforceable.~~

~~77. U.S. Patent No. 8,390,207 (“the ’207 Patent”), attached as Exhibit M, issued on March 5, 2013 from U.S. Application No. 12/681,950, filed on October 8, 2008. The ’207 Patent was assigned to Koninklijke Philips Electronics N.V., located in Eindhoven, Netherlands, which at the time owned and controlled the Philips Lighting division that would later become Signify Holding B.V.~~

~~78. As shown in Exhibit N, Koninklijke Philips Electronics N.V., the original assignee of the ’207 Patent, operated Philips Lighting as a business division until 2016. That year, Philips Lighting was formally separated from Royal Philips and became an independent legal entity, Philips Lighting B.V.~~

79. In 2018, Philips Lighting B.V. rebranded as Signify, and in 2019 officially adopted the name Signify Holding B.V. *See* Ex. N.

80. Patent attorney Daniel Piotrowski, a lawyer employed by Signify Holding B.V., is listed as the correspondent and signatory for the September 13, 2016, assignment of Application No. 12/681,950 – the application that issued as U.S. Patent No. 8,390,207 – from Koninklijke Philips N.V. to Signify Holding. *See* Exhibit O at 17, 56.

81. Mr. Piotrowski's direct involvement in the assignment of this application confirms his personal knowledge of the '207 Patent.

82. At the time the application for the '588 Patent was filed on June 28, 2021, the '207 Patent had already issued on March 5, 2013, and was owned by Signify Holding B.V., the renamed successor to Philips Lighting.

83. Accordingly, at the time of the '588 Patent's prosecution, the '207 Patent was not only publicly available and material to the claims of the '588 Patent, but it was also within the possession, custody, and control of the same corporate entity, Signify, responsible for prosecuting the '588 Patent and, in particular, to Mr. Piotrowski, who oversaw and verified by signature its assignment to Signify Holding.

84. The '207 Patent is material because it discloses subject matter that, if it were considered by the Examiner in addition to at least reference US 2013/0200814, would have resulted in the rejection of at least claim 21 of

~~Application No. 16/412,215 by rendering it anticipated or obvious in light of those references.~~

~~85. The '207 Patent discloses the following limitation from Claim 21 of the '588 Patent.~~

| ~~Claim 21 of '588 Patent~~ | ~~'207 Patent~~ |
|---|---|
| ~~*"wherein the at least one switch includes a first configuration associated with a third color temperature different from the first and second color temperatures and in between the first and second color temperatures, wherein the third color temperature is produced by mixing light emitted by at least a portion of the first set of LED light sources and light emitted by at least a portion of the second set of LED light sources."*~~ | ~~For example, the '207 discloses: "[t]he apparatus employs at least one first LED for generating first radiation having a first spectrum, and at least one second LED for generating second radiation having a second spectrum different from the first spectrum, wherein essentially white light generated by the apparatus includes a mixture of the first radiation and the second radiation." Ex. M, col. 3, ll. 5–11; *see also* Ex. M, Fig. 5:~~<br><br>~~LED lights of a first and second color temperature~~<br><br><br>200 FIG. 5 |

86. During prosecution, the Examiner considered the reference US 2013/0200814, attached as Exhibit P. This teaches every limitation of the '588 patent except the limitation taught by the '207 Patent. Specifically, the '814 reference teaches:

| Claim 21 of the '588 Patent | Publication '814 |
|---|---|
| 21. A lighting device comprising: | "The present invention relates to a lighting apparatus . . . ." ¶ [0002]. |
| a first set of LED light sources each having a first color temperature and a second set of LED light sources each having a second color temperature; | "The first lighting unit 201 and the second lighting unit 202 are both implemented by the LEDs. The differences are that the first lighting unit 201 and the second lighting unit 202 use the lighting units emitting different color temperatures." ¶ [0040]. |
| at least one switch; wherein at least one of the first set of LED light sources and the second set of LED light sources is controlled by the at least one switch; | "When the power switch is turned on, the detection unit gradually adjusts a current flowing through the lighting unit . . . ." ¶ [0011]. |
| "wherein the at least one switch includes a first configuration associated with a third color temperature different from the first and second color temperatures and in between the first and second color temperatures, wherein the third color temperature is produced by mixing light emitted by at least a portion of the first set of LED light sources and light emitted by at least a portion of the second set of LED light sources." | "According to a preferred exemplary embodiment of the present invention, when the power switch is turned off within a predetermined time interval after being turned on, the detection unit stores the color temperature value, and adjusts the light mixing ratio between the first and second lighting units according to the color temperature value to have the LED lighting apparatus generate corresponding color temperature." ¶ [0013] |

87. Thus, the Examiner would have rejected and not granted the '588 Patent because a person having ordinary skill in the art would have been motivated to

~~combine the '814 reference with the '207 patent to achieve the apparatus of claim 21 of the '588 patent.~~

~~88. A review of the Information Disclosure Statement submitted by Signify during prosecution of the '588 Patent, attached as Exhibit Q, confirms that neither U.S. Patent No. 8,390,207 nor its underlying application, U.S. Application No. 12/681,950, was cited, listed, or otherwise disclosed to the USPTO.~~

~~89. The omission of this material prior art occurred despite Signify Holding and Mr. Piotrowski's knowledge of the '207 Patent and its materiality to at least Claim 21 of the '588 Patent.~~

~~90. The '207 Patent is not cumulative of prior art disclosed in the prosecution of the '588 Patent. A review of the Information Disclosure Statement, attached as Exhibit Q, confirms that the references cited to the USPTO do not disclose a switching configuration that produces a third, intermediate color temperature through the mixing of light emitted by two different sets of LED light sources. The '207 Patent teaches this limitation and Mr. Piotrowski and Signify should have disclosed it to the USPTO but did not do so.~~

~~91. Under 37 C.F.R. § 1.56, the duty to disclose information material to patentability applies not only to each inventor and prosecuting attorney or agent, but also to "every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application."~~

~~92. As further shown in the USPTO Patent Center record attached as Exhibit R, Mr. Piotrowski is listed as an attorney working for Signify Holding who is involved with the prosecution of the '588 Patent.~~

~~93. His appearance on the official Attorney/Agent Information confirms that he was substantively involved in the preparation and prosecution of the application. Accordingly, under 37 C.F.R. § 1.56(c)(2) and (c)(3), he had a direct duty to disclose material prior art known to him, including the '207 Patent, during prosecution of the '588 Patent.~~

~~94. As a prosecuting attorney of the '588 patent, employed by Signify Holding, Mr. Piotrowski knew what patents and patent applications were in Signify's portfolio and which of those were material to the '588 Patent he was prosecuting, including the '207 Patent.~~

~~95. Nonetheless, Mr. Piotrowski prosecuted the '588 patent as though it was novel and not taught by prior art owned by Signify Holding, such as the '207 Patent.~~

~~96. The '207 Patent was material to patentability, not cumulative of art before the Examiner, and qualifies as prior art under at least 35 U.S.C. § 102(b) or § 103.~~

~~97. Despite knowledge of the '207 Patent, Signify Holding and its attorneys, including at least Daniel Piotrowski, intentionally withheld the '207 Patent from the USPTO with the specific intent to deceive the Examiner and secure issuance of the '588 Patent.~~

~~98. This intentional failure to disclose the '207 Patent, despite knowledge of it and the duty to do so, constitutes inequitable conduct. The '588 Patent is therefore unenforceable.~~

**~~TWENTIETH COUNTERCLAIM~~**
**~~(Inequitable Conduct – U.S. Patent No. 11,408,588)~~**

~~99. ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.~~

~~100. This is a counterclaim for inequitable conduct arising from the prosecution of U.S. Patent No. 11,408,588 ("the '588 Patent"), during which material prior art was intentionally withheld from the USPTO. As a result of this misconduct, the '588 Patent is unenforceable.~~

~~101. U.S. Patent No. 10,634,321 ("the '321 Patent"), issued on May 5, 2020 from U.S. Application No. 15/646,384. The '321 Patent was assigned to Signify Holding B.V. by Eaton Corporation on March 2, 2020, in a Deed of Assignment, attached as Exhibit S, that also transferred Application No. 16/412,215, which is the parent application to the '588 Patent.~~

~~102. This assignment was executed by patent attorney Petronella Danielle Verweij, authorized signatory and, upon information and belief, an attorney for Signify Holding. *See* Ex. S.~~

~~103. The '321 Patent is material to the patentability of the '588 Patent because it discloses subject matter that, if it were considered by the examiner in addition to at least reference US 2013/0200814, would have resulted in the~~

~~rejection of at least claim 21 of Application No. 16/412,215 by rendering it anticipated or obvious in light of those references.~~

~~104. The '321 Patent is not cumulative of prior art disclosed in the prosecution of the '588 Patent. A review of the Information Disclosure Statement, attached as Exhibit Q, confirms that the references cited to the USPTO do not disclose the following limitation from Claim 21 of the '588 Patent, while the '321 patent does:~~

| ~~Limitation from Claim 21 of '588 Patent~~ | ~~'321 Patent Signify Didn't Disclose to USPTO Discloses This Limitation~~ |
|---|---|
| ~~"*wherein the at least one switch includes a first configuration associated with a third color temperature different from the first and second color temperatures and in between the first and second color temperatures, wherein the third color temperature is produced by mixing light emitted by at least a portion of the first set of LED light sources and light emitted by at least a portion of the second set of LED light sources*."~~ | ~~For example, the '321 discloses "the LED light source comprising a first LED that emits a first light of a first color temperature and a second LED that emits a second light of a second color temperature such that the LED light source provides a combined output light having a color temperature between 2500 and 5000 Kelvin" U.S. Patent No. 10,634,321, col. 14, ll. 53–58.~~ |

~~105. During prosecution, the Examiner considered the reference US 2013/0200814 attached as Exhibit P. This teaches every limitation of the '588 patent except the limitation taught by the '321 Patent. Specifically, the '814 reference teaches:~~

| ~~Claim 21 of the '588 Patent~~ | ~~Publication '814~~ |
|---|---|
| ~~21. A lighting device comprising:~~ | ~~"The present invention relates to a lighting apparatus . . . ." ¶ [0002].~~ |

| | |
|---|---|
| ~~a first set of LED light sources each having a first color temperature and a second set of LED light sources each having a second color temperature;~~ | ~~"The first lighting unit 201 and the second lighting unit 202 are both implemented by the LEDs. The differences are that the first lighting unit 201 and the second lighting unit 202 use the lighting units emitting different color temperatures." ¶ [0040].~~ |
| ~~at least one switch; wherein at least one of the first set of LED light sources and the second set of LED light sources is controlled by the at least one switch;~~ | ~~"When the power switch is turned on, the detection unit gradually adjusts a current flowing through the lighting unit . . . ." ¶ [0011].~~ |
| ~~"wherein the at least one switch includes a first configuration associated with a third color temperature different from the first and second color temperatures and in between the first and second color temperatures, wherein the third color temperature is produced by mixing light emitted by at least a portion of the first set of LED light sources and light emitted by at least a portion of the second set of LED light sources."~~ | ~~"According to a preferred exemplary embodiment of the present invention, when the power switch is turned off within a predetermined time interval after being turned on, the detection unit stores the color temperature value, and adjusts the light mixing ratio between the first and second lighting units according to the color temperature value to have the LED lighting apparatus generate corresponding color temperature." ¶ [0013]~~ |

~~106. Thus, a reasonable examiner would have rejected and not granted the '588 Patent because a person having ordinary skill in the art would have been motivated to combine the '814 reference with the '321 patent to achieve the apparatus of claim 21 of the '588 patent.~~

~~107. Patent attorney Petronella Danielle Verweij, working for Signify Holding, had personal knowledge of the '321 Patent.~~

~~108. Ms. Verweij was directly involved in the prosecution of the '588 Patent and as a prosecuting attorney, Ms. Verweij also knew what patents and~~

~~patent applications were in Signify's portfolio and which of those were material to the '588 Patent she was prosecuting, including the '321 Patent.~~

~~109. Nonetheless, Ms. Verweij prosecuted the '588 patent as though it was novel and not taught by prior art owned by Signify Holding, such as the '321 Patent.~~

~~110. Furthermore, Ms. Verweij executed the March 2, 2020 assignment transferring both the '321 Patent and the parent of the '588 Patent, and later signed the Power of Attorney in the prosecution of the '588 Patent on May 7, 2021. *See* Ex. T. Her involvement confirms her personal knowledge of the '321 Patent and direct participation in the prosecution of the '588 Patent.~~

~~111. In addition to signing the Power of Attorney during prosecution of the '588 Patent, Ms. Verweij also signed the statement under 37 C.F.R. § 3.73(c), attached as Exhibit U, submitted to the USPTO to establish Signify Holding's ownership of the '588 Patent's parent application.~~

~~112. In doing so, she referenced and certified the recordation of the assignment at Reel 054162, Frame 0391 (see Ex. S), which conveyed both Application No. 16/412,215 – the parent of the '588 Patent – and U.S. Patent No. 10,634,321 (the "'321 Patent") to Signify Holding. *See* Ex. T.~~

~~113. By signing the § 3.73(c) statement and referencing that specific assignment, Ms. Verweij avowed her knowledge of Signify Holding's ownership of both the '321 Patent and the application that issued as the '588 Patent.~~

~~114. Despite this knowledge and despite her role in certifying and recording that assignment, neither she nor Signify Holding disclosed the ’321 Patent to the USPTO in the Information Disclosure Statement submitted during prosecution of the ’588 Patent. *See* Ex. Q.~~

~~115. Under 37 C.F.R. § 1.56, the duty to disclose material information applies to “each inventor, each attorney or agent who prepares or prosecutes the application, and every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application.”~~

~~116. Ms. Verweij was directly involved in the prosecution of the ’588 Patent for assignee Signify Holding. As such, she had a direct duty to disclose material information, including the ’321 Patent.~~

~~117. Despite knowledge of the ’321 Patent, Signify Holding and its attorneys, including Petronella Danielle Verweij, intentionally withheld the ’321 Patent from the USPTO with the specific intent to deceive the Examiner and secure issuance of the ’588 Patent.~~

~~118. This intentional failure to disclose the ’321 Patent, despite knowledge of it and the duty to do so, constitutes inequitable conduct. The ’588 Patent is therefore unenforceable.~~

**~~TWENTY FIRST COUNTERCLAIM~~**
**~~(Patent Infringement by Cooper Lighting of ETI’S U.S. Patent No. 10,462,871)~~**

~~119. ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.~~

~~120. ETI is the assignee and owner of all rights, title, and interest in and to U.S. Patent No. 10,462,871 ("the '871 Patent"), attached as Exhibit V, entitled "*Manually Controllable LED Correlated Color Temperature Light Fixture*" which was duly and legally issued by the USPTO on October 29, 2019.~~

~~121. The '871 Patent has a priority date of January 13, 2017, when provisional application No. 62/445,824 was filed, from which the '871 Patent is a continuation.~~

~~122. Cooper Lighting, directly and/or through its subsidiaries, affiliates, agents, or other related entities, has made, used, offered for sale, sold, and/or imported into the United States products that infringe one or more claims of the '871 Patent, including at least claim 9, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a). The Cooper Accused Products include, without limitation, LED fixtures and retrofit kits featuring manually selectable correlated color temperature (CCT) switches, including products such as Cooper Lighting's "HALO Recessed – RL Selectable" line of fixtures, which includes at least the products sold under the model number RL56069FSD2W1EWH.~~

~~123. Claim 9 for the '871 Patent recites:~~

> ~~9. An LED light fixture comprising:~~
>
> > ~~a set of at least two LED light sources,~~

~~said set of at least two LED light sources being respectively connected in at least three electric circuits,~~

~~each of said at least three electric circuits effecting the generation of illumination having a correlated color temperature different from the correlated color temperature emitted by the LED light sources in each of the others of said at least three electric circuits; and~~

~~a controllable correlated color temperature switching assembly comprising a manually controllable correlated color temperature switch for selectively connecting one of said at least two LED light sources in a separate one of said at least three electric circuits,~~

~~each of said at least three electric circuits having a correlated color temperature different from the correlated color temperature of the others of said at least three electric circuits,~~

~~and another of said at least two LED light sources in a separate one of said at least three electric circuits having a second correlated color temperature different from the correlated color temperature of each of the others of said at least two LED light sources in any of said at least three electric circuits,~~

~~and a combination of said at least two LED light sources in a separate one of said at least three electric circuits having a third correlated color temperature different from the correlated color temperature of each of the others of said LED light sources in any of the other at least three electric circuits;~~

~~said manually controllable correlated color temperature switch being concealed when said LED light fixture is mounted for operation.~~

~~124. The Cooper Accused Products are LED light fixtures. The following example demonstrates the presence of this limitation:~~




~~125. The Cooper Accused Products comprise a set of at least two LED light sources. The following example, taken from the product identified in paragraphs 122 and 124, demonstrates the presence of this limitation:~~



~~126. The Cooper Accused Products comprise a set of at least two LED light sources being respectively connected in at least three electric circuits, each of said at least three electric circuits effecting the generation of illumination having a correlated color temperature different from the correlated color temperature emitted by the LED light sources in each of the others of said at least three electric circuits. The following examples, taken from the product identified in paragraphs 122 and 124, demonstrate the presence of this limitation:~~

~~When the switch is set to produce 3000K color temperature, the LEDs in a first circuit illuminate, including LEDs from the at least two LED light sources.~~

(Deleted graphics)




(Deleted)



(Deleted)





38322536.2


(Deleted graphics)
HALO
COOPER
T24
~~When the switch is set to produce 3500K color temperature, the LEDs in a second circuit illuminate, including LEDs from the at least two LED light sources.~~
(Deleted graphics)
(Deleted)



38322536.2

~~When the switch is set to produce 4000K color temperature, the LEDs in a third circuit illuminate, including LEDs from the at least two LED light sources.~~

(Deleted graphics)




(Deleted graphics)



(Deleted)



~~127. The Cooper Accused Products comprise a controllable correlated color temperature switching assembly comprising a manually controllable correlated color temperature switch for selectively connecting one of said at least two LED light sources in a separate one of said at least three electric circuits, each of said~~

~~at least three electric circuits having a correlated color temperature different from the correlated color temperature of the others of said at least three electric circuits, and another of said at least two LED light sources in a separate one of said at least three electric circuits having a second correlated color temperature different from the correlated color temperature of each of the others of said at least two LED light sources in any of said at least three electric circuits, and a combination of said at least two LED light sources in a separate one of said at least three electric circuit having a third correlated color temperature different from the correlated color temperature of each of the others of said LED light sources in any of the other at least three electric circuits. The following example, taken from the product identified in paragraphs 122 and 124 demonstrates the presence of this limitation:~~

(Deleted graphics)






38322536.2

(Deleted graphics)






~~128. On information and belief, the Cooper Accused Products comprise a manually controllable correlated color temperature switch that is concealed when the LED light fixture is mounted for operation. The following example, taken from the product identified in paragraphs 122 and 124, demonstrates the presence of this limitation:~~

~~Manually controllable correlated color temperature switch is concealed when the fixture is mounted for operation~~

(Deleted graphics)




~~129. Cooper Lighting has made, used, sold, offered for sale, and/or imported the Cooper Accused Products and their components in a manner that constitutes contributory infringement of at least one claim of the '871 Patent under 35 U.S.C. § 271(c). These products and components are specially made or~~

~~especially adapted for use in an infringing manner and are not staple articles of commerce. They have no substantial non-infringing uses, and Cooper Lighting is aware that their intended use by customers and end users results in direct infringement of the '871 Patent.~~

~~130. Cooper Lighting is a wholly owned subsidiary of Signify Holding B.V., as alleged in Signify's complaint at paragraph 14. Signify further alleges in paragraph 38 of its complaint that it began investigating ETI's products and intellectual property as early as 2015 and has continued to monitor ETI's commercial activities. Based on these allegations and the corporate relationship between Signify Holding B.V. and Cooper Lighting, knowledge of ETI's patent portfolio and of the '871 Patent is properly imputed to Cooper Lighting. Cooper Lighting's continued manufacture, use, sale, offer for sale, and importation of the Cooper Accused Products despite this knowledge constitutes willful infringement of the '871 Patent and justifies enhanced damages under 35 U.S.C. § 284.~~

~~131. Cooper and/or parties under its supervision or control have tracked ETI's business, products, and intellectual property rights and have modeled products after those of ETI. Cooper and/or parties under its supervision or control have manufactured and/or sold a number of products intended to replicate ETI's Color Preference Recessed Downlight, including the Cooper Accused Products.~~

~~132. As described above, the Accused Products infringe one or more claims of the '871 Patent.~~

133. A key feature of the '871 patent is a selectable color temperature with a hidden manual switch.

134. A true and correct image of ETI's Color Preference Recessed Downlight product is reproduced below:




135. A true and correct image of Cooper's Recessed R-L Selectable light, among the Cooper Accused Products, is shown below:



~~136. The ETI product has a manually controllable color temperature switch, allowing the selection of the five color temperatures 2700K, 3000K, 3500K, 4000K, and 5000K that is hidden when the product is mounted in the ceiling:~~



(Deleted)




(Deleted)




~~137. The Cooper product has a manually controllable color temperature switch, allowing the selection of the five color temperatures 2700K, 3000K, 3500K, 4000K, and 5000K that is hidden when the product is mounted in the ceiling:~~







~~138. Cooper and ETI are direct competitors.~~

~~139. Cooper, along with parties acting under its supervision and control, deliberately monitored ETI's patents and products.~~

~~140. In the course of that monitoring, Cooper observed that ETI marks its products with U.S. Patent No. 10,462,871, including recessed downlights with~~

selectable color temperature, thereby providing clear notice of ETI's patent rights.

141. By virtue of ETI's patent marking, Cooper and those acting under its direction had actual knowledge of U.S. Patent No. 10,462,871 prior to and throughout their manufacture, marketing, and sale of the Cooper Accused Products.

142. Despite this actual knowledge, Cooper has continued to make, use, sell, offer to sell, and/or import the Cooper Accused Products in conscious disregard of ETI's patent rights.

143. Cooper has known of, should have known of, or has been willfully blind to, the '871 Patent.

144. Cooper has known of, should have known of, or has been willfully blind to, the fact that the behavior complained of herein infringes the '871 Patent.

145. Cooper's foregoing actions constitute willful infringement of the '871 Patent.

146. ETI has been damaged as a result of Cooper Lighting's infringing conduct and is entitled to damages adequate to compensate for the infringement, together with interest and costs as fixed by the Court.

147. ETI is entitled to injunctive relief pursuant to 35 U.S.C. § 283 to prevent further infringement of the '871 Patent.

**TWENTY SECOND COUNTERCLAIM**

**(Patent Infringement by Cooper Lighting of ETI'S U.S. Patent No. 10,492,262)**

148. ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

149. ETI is the assignee and owner of all rights, title, and interest in and to U.S. Patent No. 10,492,262 ("the '262 Patent"), attached as Exhibit W, titled "*Manually Controllable LED Correlated Color Temperature Light Fixture*" which was duly and legally issued by the United States Patent and Trademark Office on November 26, 2019.

150. Cooper Lighting, directly and/or through its subsidiaries, affiliates, agents, or other related entities, has made, used, offered for sale, sold, and/or imported into the United States products that infringe one or more claims of the '262 Patent, including at least claim 1, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a). The Cooper Accused Products include, without limitation, LED fixtures and retrofit kits featuring manually selectable correlated color temperature (CCT) switches, including products such as Cooper Lighting's "HALO Recessed — RL Selectable" line of fixtures, such as the products sold under the model number RL56069FSD2W1EWH.

151. Claim 1 for the '262 Patent recites:

> 1. An LED light fixture comprising:
> electrical circuitry for receiving electricity from a source of electricity, said electrical circuitry including:
> an electrical transmitter for transmitting electricity from said source of electricity;

at least two groups of LED light sources, each of said at least two groups of LED light sources emitting illumination in response to receiving electricity of certain electrical characteristics, said illumination of said respective at least two groups of LED light sources having a correlated color temperature different from the correlated color temperature of each of the other of said at least two groups of LED light sources;

at least three subcircuits, each of said at least three subcircuits including a different one of said at least two groups of LED light sources and at least one selected combination of said at least two groups of LEDs; and

actuable electrical switching components for connecting to said electrical transmitter a selected one of said at least three subcircuits, said electrical switching components being actuated for connecting a selected one of said at least three subcircuits to connect a selected one of the group consisting of one of said at least two groups of LED light sources and at least one selected combination of said at least two groups of LED light sources to said electrical transmitter; and

a manually controllable correlated color temperature switch assembly for actuating said electrical switching components to connect said selected one of the groups consisting of said at least three subcircuits to connect a selected one of said at least two groups of LED light sources and a selected combination of said at least two groups of LED light sources to said electrical transmitter to receive transmitted electricity of said certain electrical characteristics to effect the LED light source emission of illumination of the correlated color temperature of a finally selected one of said at least two groups of LED light sources and the selected combination of said at least two LED light sources.

152. The Cooper Accused Products are LED light fixtures. The following example demonstrates the presence of this limitation:

(Deleted)




~~153. The Cooper Accused Products comprise electrical circuitry for receiving electricity from a source of electricity, said electrical circuitry including: an electrical transmitter for transmitting electricity from said source of electricity. The following example, taken from the product identified in paragraphs 150 and 152, demonstrates the presence of this limitation:~~

~~Electrical circuitry for receiving electricity from a source of electricity~~




~~Electrical transmitter for transmitting electricity~~




~~154. The Cooper Accused Products comprise at least two groups of LED light sources, each of said at least two groups of LED light sources emitting illumination in response to receiving electricity of certain electrical characteristics, said illumination of said respective at least two groups of LED light sources having a correlated color temperature different from the correlated~~

~~color temperature of each of the other said at least two groups of LED light sources. The following examples, taken from the product identified in paragraphs 150 and 152, demonstrate the presence of this limitation:~~

(Deleted graphics)




~~155. The Cooper Accused Products comprise at least three subcircuits, each of said at least three subcircuits including a different one of said at least two groups of LED light sources and at least one selected combination of said at least~~

~~two groups of LEDs. The following example, product identified in paragraphs 150 and 152, demonstrates the presence of this limitation:~~

(Deleted)




(Deleted)
D2W
2700 K
3000 K
3500 K
4000 K
5000 K
HALO
When the switch is set to produce 3500K color temperature, the LEDs in a second subcircuit illuminate, including LEDs from the at least two LED light sources.


(Deleted)
2700 K
3000 K
3500 K
4000 K
5000 K
HALO
When the switch is set to produce 4000K color temperature, the LEDs in a third subcircuit illuminate, including LEDs from the at least two LED light sources.

~~156. The Cooper Accused Products comprise actuable electrical switching components for connecting to said electrical transmitter a selected one of said at least three subcircuits, said electrical switching components being actuated for connecting a selected one of said at least three subcircuits to connect a selected one of the group consisting of one of said at least two groups of LED light sources and at least one selected combination of said at least two groups of LED light sources to said electrical transmitter. The above examples demonstrate that the Cooper Accused Products can switch between at least three subcircuits and a selected one of the at least two groups of LED light sources or at least one selected combination of at least two groups.~~

~~157. The Cooper Accused Products comprise a manually controllable correlated color temperature switch assembly for actuating said electrical switching components to connect said selected one of the groups consisting of said at least three subcircuits to connect a selected one of said at least two groups of LED light sources and a selected combination of said at least two groups of LED light sources to said electrical transmitter to receive transmitted electricity of said certain electrical characteristics to effect the LED light source emission of illumination of the correlated color temperature of a finally selected one of said at least two groups of LED light sources and the selected combination of said at least two LED light sources. The following example, taken from the product identified in paragraphs 150 and 152, demonstrates the presence of this limitation.~~

(Deleted)




A manually controllable correlated color temperature switch assembly that actuates the electrical switching components to connect at least three subcircuits and a group comprising the at least two groups of LED light sources and a selected combination of the at least two groups.

~~158. Cooper Lighting has made, used, sold, offered for sale, and/or imported the Cooper Accused Products and their components in a manner that constitutes contributory infringement of at least one claim of the '262 Patent under 35 U.S.C. § 271(c). These products and components are specially made or especially adapted for use in an infringing manner and are not staple articles of commerce. They have no substantial non-infringing uses, and Cooper Lighting is aware that their intended use by customers and end users results in direct infringement of the '262 Patent.~~

~~159. Cooper Lighting is a wholly owned subsidiary of Signify Holding B.V., as alleged in Signify's complaint at paragraph 14. Signify further alleges in paragraph 38 of its complaint that it began investigating ETI's products and intellectual property as early as 2015 and has continued to monitor ETI's commercial activities. Based on these allegations and the corporate relationship between Signify Holding B.V. and Cooper Lighting, knowledge of ETI's patent~~

portfolio and of the '262 Patent is properly imputed to Cooper Lighting. Cooper Lighting's continued manufacture, use, sale, offer for sale, and importation of the Cooper Accused Products despite this knowledge constitutes willful infringement of the '262 Patent and justifies enhanced damages under 35 U.S.C. § 284.

160. Cooper and/or parties under its supervision or control have tracked ETI's business, products, and intellectual property rights. Cooper and/or parties under its supervision or control have manufactured and/or sold a number of products intended to replicate ETI's Color Preference Recessed Downlight, including the Cooper Accused Products.

161. As described above, the Accused Products infringe one or more claims of the '262 Patent.

162. A key feature of the '262 patent is a selectable color temperature with a manual switch.

163. A true and correct image of ETI's Color Preference Recessed Downlight product is reproduced below:

(Deleted)



~~164. A true and correct image of Cooper's Recessed R-L Selectable light, among the Cooper Accused Products, is shown below:~~




~~165. The ETI product has a manually controllable color temperature switch, allowing the selection of the five color temperatures 2700K, 3000K, 3500K, 4000K, and 5000K:~~


(Deleted)
Product Series Number
5024VP-1
5000K
4000K
3500K
3000K
2700K


(Deleted)
$1.27
NightLightR
White


(Deleted)
Preference®
Selectable Color Temperature Switch
2700K
3000K
3500K
4000K
5000K

~~166. The Cooper product has a manually controllable color temperature switch, allowing the selection of the five color temperatures 2700K, 3000K, 3500K, 4000K, and 5000K:~~










~~167. Cooper and ETI are direct competitors.~~

~~168. Cooper, along with parties acting under its supervision and control, deliberately monitored ETI's patents and products.~~

169. In the course of that monitoring, Cooper observed that ETI marks its products with U.S. Patent No. 10,492,262, including recessed downlights with selectable color temperature, thereby providing clear notice of ETI's patent rights.

170. By virtue of ETI's patent marking, Cooper and those acting under its direction had actual knowledge of U.S. Patent No. 10,492,262 prior to and throughout their manufacture, marketing, and sale of the Cooper Accused Products.

171. Despite this actual knowledge, Cooper has continued to make, use, sell, offer to sell, and/or import the Cooper Accused Products in conscious disregard of ETI's patent rights.

172. Cooper has known of, should have known of, or has been willfully blind to, the '262 Patent.

173. Cooper has known of, should have known of, or has been willfully blind to, the fact that the behavior complained of herein infringes the '262 Patent.

174. Cooper's foregoing actions constitute willful infringement of the '262 Patent.

175. ETI has been damaged as a result of Cooper Lighting's infringing conduct and is entitled to damages adequate to compensate for the infringement, together with interest and costs as fixed by the Court.

176. ETI is entitled to injunctive relief pursuant to 35 U.S.C. § 283 to prevent further infringement of the '262 Patent.

**TWENTY THIRD COUNTERCLAIM**
**(Patent Infringement by Cooper Lighting of ETI'S U.S. Patent No. RE49,030)**

177. ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

178. ETI is the assignee and owner of all rights, title, and interest in and to U.S. Patent No. RE49,030 ("the '030 Patent"), attached as Exhibit X, titled "*Manually Controllable LED Correlated Color Temperature Light Fixture*" which was duly and legally issued by the United States Patent and Trademark Office on April 12, 2022.

179. Cooper Lighting, directly and/or through its subsidiaries, affiliates, agents, or other related entities, has made, used, offered for sale, sold, and/or imported into the United States products that infringe one or more claims of the '030 Patent, including at least claim 1, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a). The Cooper Accused Products include, without limitation, LED fixtures and retrofit kits featuring manually selectable correlated color temperature (CCT) switches, including products such as Cooper Lighting's "HALO Recessed — RL Selectable" line of fixtures, such as the products sold under the model number RL56069FSD2W1EWH.

180. Claim 26 for the '030 Patent recites:

> 1. An LED light fixture comprising:
>
> a housing assembly;

> at least one printed circuit board operatively attached to said housing assembly;
>
> at least two sets of LED light sources mounted on said at least one printed circuit board, each of at least two said sets of LED light sources having a correlated color temperature different from the correlated color temperature of every other of said sets of LED light sources;
>
> an electric circuit operable to supply electricity to said at least two sets of LED light sources wherein said electric circuit comprises at least two subcircuits, each of said at least two subcircuits including one of said sets of LED light sources, said subcircuits being mounted on said at least one printed circuit board;
>
> a manually controllable correlated color temperature switch selectively connectable to one or a combination of said subcircuits to actuate the selected one of the group consisting of said set of LED light sources ins aid selected subcircuit and the selected set of LED light sources in said combination of said subcircuits; and
>
> a digitally operable actuating member for making a selective connection of said manually controllable correlated color temperature switch.

181. The Cooper Accused Products are LED light fixtures. The following example demonstrates the presence of this limitation.

(Deleted)




~~182. The Cooper Accused Products comprise a housing assembly. The following example, taken from the product identified in paragraphs 179 and 181, demonstrates the presence of this limitation:~~

(Deleted)



~~183. The Cooper Accused Products comprise at least one printed circuit board operatively attached to said housing assembly. The following example,~~

~~taken from the product identified in paragraphs 179 and 181, demonstrates the presence of this limitation:~~




~~184. The Cooper Accused Products comprise at least two sets of LED light sources mounted on said at least one printed circuit board, each of at least two said sets of LED light sources having a correlated color temperature different from the correlated color temperature of every other of said sets of LED light sources. The following examples, taken from the product identified in paragraphs 179 and 181, demonstrate the presence of this limitation:~~

(Deleted graphics)




~~185. The Cooper Accused Products comprise an electric circuit operable to supply electricity to said at least two sets of LED light sources wherein said electric circuit comprises at least two subcircuits, each of said at least two subcircuits including one of said sets of LED light sources, said subcircuits being mounted on said at least one printed circuit board. The following example, taken from the product identified in paragraphs 179 and 181, demonstrates the presence of this limitation.~~

(Deleted)




When the switch is set to produce 3000K color temperature, the LEDs in a first subcircuit illuminate, including LEDs from the at least two LED light sources.




~~186. The Cooper Accused Products comprise a manually controllable correlated color temperature (CCT) switch selectively connectable to one or a combination of said subcircuits to actuate the selected one of the group consisting of said set of LED light sources in said selected subcircuit and the selected set of LED light sources. The following example, taken from the product identified in paragraphs 179 and 181, demonstrates the presence of this limitation.~~

~~Manually controllable CCT switch for selectively connecting to one or more subcircuits to actuate a selected set of LED light sources~~

(Deleted graphics)



~~187. The Cooper Accused Products comprise a digitally operable actuating member for making a selective connection of said manually controllable correlated color temperature switch. The following example, taken from the product identified in paragraphs 179 and 181, demonstrates the presence of this limitation.~~

~~Digitally operable actuator for selectively operating the CCT switch~~

(Deleted graphics)




~~188. Cooper Lighting has made, used, sold, offered for sale, and/or imported the Cooper Accused Products and their components in a manner that constitutes contributory infringement of at least one claim of the '030 Patent~~

~~under 35 U.S.C. § 271(c). These products and components are specially made or especially adapted for use in an infringing manner and are not staple articles of commerce. They have no substantial non-infringing uses, and Cooper Lighting is aware that their intended use by customers and end-users results in direct infringement of the '030 Patent.~~

~~189. Cooper Lighting is a wholly owned subsidiary of Signify Holding B.V., as alleged in Signify's complaint at paragraph 14. Signify further alleges in paragraph 38 of its complaint that it began investigating ETI's products and intellectual property as early as 2015 and has continued to monitor ETI's commercial activities. Based on these allegations and the corporate relationship between Signify Holding B.V. and Cooper Lighting, knowledge of ETI's patent portfolio and of the '030 Patent is properly imputed to Cooper Lighting. Cooper Lighting's continued manufacture, use, sale, offer for sale, and importation of the Cooper Accused Products despite this knowledge constitutes willful infringement of the '030 Patent and justifies enhanced damages under 35 U.S.C. § 284.~~

~~190. Cooper and/or parties under its supervision or control have tracked ETI's business, products, and intellectual property rights and have modeled products after those of ETI. Cooper and/or parties under its supervision or control have manufactured and/or sold a number of products intended to replicate ETI's Color Preference Recessed Downlight, including the Cooper Accused Products.~~

~~191. As described above, the Accused Products infringe one or more claims of the '030 Patent.~~

~~192. A key feature of the '030 patent is a selectable color temperature with a manual switch.~~

~~193. A true and correct image of ETI's Color Preference Recessed Downlight product is reproduced below:~~




~~194. A true and correct image of Cooper's Recessed R-L Selectable light, among the Cooper Accused Products, is shown below:~~



~~195. The ETI product has a manually controllable color temperature switch, allowing the selection of the five color temperatures 2700K, 3000K, 3500K, 4000K, and 5000K:~~

(Deleted)






38322536.2

(Deleted)




(Deleted)




196. The Cooper product has a manually controllable color temperature switch, allowing the selection of the five color temperatures 2700K, 3000K, 3500K, 4000K, and 5000K:







~~197. Cooper and ETI are direct competitors.~~

~~198. Cooper, along with parties acting under its supervision and control, deliberately monitored ETI's patents and products.~~

~~199. Cooper has known of, should have known of, or has been willfully blind to the '030 Patent.~~

~~200. Cooper has known of, should have known of, or has been willfully blind to, the fact that the behavior complained of herein infringes the '030 Patent.~~

~~201. Cooper's foregoing actions constitute willful infringement of the '030 Patent.~~

~~202. ETI has been damaged as a result of Cooper Lighting's infringing conduct and is entitled to damages adequate to compensate for the infringement, together with interest and costs as fixed by the Court.~~

~~203. ETI is entitled to injunctive relief pursuant to 35 U.S.C. § 283 to prevent further infringement of the '262 Patent.~~

**~~TWENTY FOURTH COUNTERCLAIM~~**

(Patent Infringement by Signify Holding B.V. of ETI's U.S. Patent No. 10,352,510)

67. ~~204.~~ ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

68. ~~205.~~ ETI is the assignee and owner of all right, title, and interest in and to U.S. Patent No. 10,352,510 (the "'510 Patent"), attached as Exhibit ~~Y~~P, entitled "*Linkable Lighting Fixture*", which was duly and legally issued by the United States Patent and Trademark Office on July 16, 2019.

69. ~~206.~~ The ~~'~~'510 patent has a priority date of December 28, 2015, as a continuation-in-part of patent application No. 14/981,346.

70. ~~207.~~ Signify Holding, directly and/or through its subsidiaries, affiliates, agents, or other related entities, has made, used, offered for sale, sold, and/or imported into the United States products that infringe at least claim 3 of

the ’510 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a). The infringing products (the “Signify Accused Products”) include, without limitation, the ~~Phillips~~Philips GreenPower LED interlighting products, such as those sold under model number 12NC: 9299002100154.

71. ~~208.~~ Claim 3 of the ’510 Patent recites:

> 3. A linkable LED lighting fixture for use with a linking device, the linking device comprising electricity transmitting plugs, said electricity transmitting plugs comprising a set of electrically insulated tubes having electrical conducting sleeves
>
> said linkable LED lighting fixture comprising:
>
> an LED light engine including:
>
> an LED module comprising:
>
> a printed circuit board;
>
> an array of electrically connected LEDs attached to said printed circuit board; and
>
> a driver for transmitting electric current to said module in a form usable by said LED module;
>
> LED light engine electrical contacting structures electrically connected to said LED module, said LED light engine electrical contacting structures each comprising an access for reception of an electricity transmitting plug;
>
> wherein said LED light engine electrical contacting structures each comprise a set of insulating cylinders having internal axial electrical conductor tubes for each receiving an electrically insulated tube for making electrical contact with the electrical conducting sleeve to enable transmission of electrical current between the conducting tube and said electrically conducting sleeve;

wherein two of said linkable LED lighting fixtures are electrically linkable together in response to the reception of electricity transmitting plugs from the linking device in said respective accesses.

72. ~~209.~~ The Signify Accused Products satisfy every limitation of claim 3 of the '510 Patent.

73. ~~210.~~ The Signify Accused Products are linkable LED lighting fixtures, as demonstrated from the following example, taken from the product identified in paragraph 207 of these counterclaims:




74. ~~211.~~ The Signify Accused Products are for use with a linking device, the linking device comprising electricity transmitting plugs, said electricity transmitting plugs comprising a set of electrically insulated tubes having electrical conducting sleeves, as demonstrated from the following example, taken

from the Quick Installation Guide (attached to these Counterclaims as Exhibit ~~Z~~Q) for the product identified in paragraph 207 of these counterclaims:




75. ~~212.~~ The Signify Accused Products comprise an LED light engine including an LED module comprising a printed circuit board with an array of electrically connected LEDs attached to said printed circuit board, as demonstrated from the following example, taken from the product identified in paragraph 207 of these counterclaims:




76. ~~213.~~ The Signify Accused Products comprise a driver for transmitting electric current to said module in a form usable by said LED module, as demonstrated from the following example, taken from the product identified in paragraph 207 of these counterclaims:




77. ~~214.~~ The Signify Accused Products comprise electrical contacting structures electrically connected to said LED module, said LED light engine electrical contacting structures each comprising an access for reception of an electricity transmitting plug, as demonstrated from the following example, taken from the product identified in paragraph 207 of these counterclaims:



Electrical contacting structures comprising an access for reception of an electricity transmitting plug






78. ~~215.~~ The Signify Accused Products comprise LED light engine electrical contacting structures each comprise a set of insulating cylinders having internal axial electrical conductor tubes for each receiving an electrically insulated tube for making electrical contact with the electrical conducting sleeve to enable transmission of electrical current between the conducting tube and said electrically conducting sleeve, as demonstrated from the following example, taken from the product identified in paragraph 207 of these counterclaims:



Insulating cylinders

Internal axial electrical conductor tubes






79. ~~216.~~ The Signify Accused Products allows two of said linkable LED lighting fixtures to be electrically linkable together in response to the reception of electricity transmitting plugs, as demonstrated from the following example, taken from the product identified in paragraph 207 of these counterclaims:




80. ~~217.~~ On information and belief, Signify Holding has made, used, sold, offered for sale, and/or imported the Signify Accused Products and their components in a manner that constitutes contributory infringement of claim 3 of the ’510 Patent under 35 U.S.C. § 271(c). The relevant components are specially made or especially adapted for use in an infringing manner, are not staple articles of commerce, and have no substantial non-infringing uses. Signify Holding knows that use of these components by its customers results in direct infringement of the ’510 Patent.

81. 218. Signify further alleges in paragraph 38 of its complaint that it began investigating ETI's products and intellectual property as early as 2015 and has continued to monitor ETI's commercial and intellectual property related activities. Based on these allegations, Signify Holding knew or should have known about the ‘’510 Patent since at least as early as 20152019. Signify Holding's continued manufacture, use, sale, offer for sale, and importation of the Accused Products despite this knowledge constitutes willful infringement of the ‘’510 Patent and justifies enhanced damages under 35 U.S.C. § 284.

82. 219. Signify and/or parties under its supervision or control have tracked ETI's business, products, and intellectual property rights and have modeled products after those of ETI.

83. 220. As described above, the Signify Accused Products infringe the claims of the Patents-in-Suit.

84. 221. Key features of the ‘’510 patentPatent include the ability to interlink the lighting fixtures with linking axial tubes in a linking device to enable transmission of electrical current through electrically conducting sleeves.

85. 222. True and correct images of ETI's Grow Elite product are reproduced below:


Grow Elite lighting fixture


Interlinking device with plugs


Electrical conducting sleeves

86. ~~223.~~ Signify and ETI are direct competitors.

87. ~~224.~~ Signify, along with parties acting under its supervision and control, deliberately monitored ETI's patents and products.

88. ~~225.~~ In the course of that monitoring, Signify observed that ETI consistently marks its products with U.S. Patent No. 10,352,510.

89. ~~226.~~ By virtue of ETI's patent marking, Signify and those acting under its direction had actual knowledge of the ~~‘~~’510 Patent prior to and throughout their manufacture, marketing, and sale of the Signify Accused Products.

90. ~~227.~~ Despite this actual knowledge, Signify has continued to make, use, sell, offer to sell, and/or import the Signify Accused Products in conscious disregard of ETI's patent rights.

91. ~~228.~~ Signify has known of, should have known of, or has been willfully blind to the ~~‘~~’510 Patent.

92. ~~229.~~ Signify's foregoing actions constitute willful infringement of the ~~‘~~’510 Patent.

93. ~~230.~~ ETI has been damaged as a direct and proximate result of Signify Holding's infringing conduct and is entitled to recover damages adequate to compensate for the infringement, together with prejudgment interest and costs, under 35 U.S.C. § 284.

94. ~~231.~~ This case is exceptional within the meaning of 35 U.S.C. § 285. Signify Holding's objectively unreasonable positions, its pre-suit and post-suit

knowledge of ETI's patent rights, and its continued willful infringement warrant an award of ETI's reasonable attorneys' fees and expenses.

95. ~~232.~~ ETI is entitled to injunctive relief pursuant to 35 U.S.C. § 283 to prevent further infringement of the '510 Patent.

**TWENTIETH COUNTERCLAIM**
**(Patent Misuse – Asserted Patents Unenforceable)**

96. ETI incorporates by reference every allegation contained in the preceding paragraphs of its Counterclaims as though fully set forth herein.

## I. THE PARTIES AND RELEVANT MARKET

97. Signify is the world's largest LED lighting producer, with reported global sales of approximately $6.4 billion in 2024 and approximately $2.2 billion in U.S. revenue, its largest national market.

98. Signify promotes its licensing operation as the "number one patent licensing program in the global lighting industry" (the "Licensing Program"). Exhibit R.

99. The relevant market is LED cove and concealed lighting luminaires, sold for general, architectural, theatrical, and entertainment illumination in the United States (the "Relevant Market").

100. Signify holds market power in the Relevant Market based on, among other reasons: (a) a 44.6% dollar share of the U.S. cove and concealed lighting segment as of June 2023 (*see* Exhibit S); (b) approximately $2.2 billion in annual U.S. revenue; (c) over 5,000 granted patents; and (d) Cooper Lighting Solutions,

a wholly-owned subsidiary reported by industry sources as a separate competitor, systematically understating Signify's true market position (*see* Exhibit T).

## II. THE STANDARDIZED LICENSING PROGRAM

101. Signify has executed at least [redacted] license or settlement agreements (the "Agreements") through the Licensing Program. [redacted]

102. [redacted]

103. [redacted]

104. [redacted]

[redacted]

105. [redacted]

106. [redacted]

107. [redacted]

3.6.

108. [redacted]

## III. ROYALTY OVERBREADTH

109. [redacted]

110. First, geographic overbreadth [redacted]

111. Second, product overbreadth [redacted]

112. [redacted]

113. [redacted]

[redacted]

## IV. SIGNIFY MODIFIES LICENSING TERMS UNDER PRESSURE

114. [redacted]

115. [redacted]

116. [redacted]

117. [redacted]

118. [redacted]

119. [redacted]

[redacted]

120. [redacted]

121. [redacted]

[redacted]

122. [redacted]

123. [redacted]

124. [redacted]

125. [redacted]

[redacted]

126. [redacted]

## V. STATISTICAL PATTERN OF THE LICENSING PROGRAM

127. [redacted]

128. [redacted]

129. [redacted]

130. [redacted]

131. [redacted]

132. [redacted]

133. [redacted]

## VI. CONFIDENTIALITY PROVISIONS

134. [redacted]

135. [redacted]

136. [redacted]

## VII. THE QUALIFIED SUPPLIER TYING STRUCTURE

137. [redacted]

138. [redacted]

139. [redacted]

140. [redacted]

141. [redacted]

[redacted]

142. [redacted]

143. [redacted]

144. Because Signify possesses market power in the Relevant Market, the safe harbor of 35 U.S.C. § 271(d)(5) does ***not*** apply.

**VIII.** [redacted]

145. [redacted]

146. [redacted]

147. [redacted]

148. [redacted]

## IX. SIGNIFY'S CONDUCT IN THE LEPRO LITIGATION

149. Signify's litigation history further supports the inference that its Licensing Program is enforced through the threat and cost of litigation.

150. Many lawsuits against smaller light manufacturers settled before trial. *See, e.g.*, *Signify North America Corp. v. Delta Light (USA) LLC*, No. 1:19-cv-02877 (S.D.N.Y.); *Signify North America Corp. v. Robe Lighting Inc.*, No. 0:20-cv-62302 (S.D. Fla.); *Signify North America Corp. v. Satco Products, Inc.*, No. 2:19-cv-06125 (E.D.N.Y.); *Philips Lighting North America Corp. v. GVA Lighting, Inc.*, No. 1:16-cv-11640 (D. Mass.); *Koninklijke Philips N.V. v. Troy-CSL Lighting, Inc.*, No. 15-cv-11053 (D. Mass.); *Koninklijke Philips N.V. v. Iguzzini Lighting USA, Ltd.*, No. 15-cv-3979 (S.D.N.Y.).

151. In *Signify N. Am. Corp. v. Lepro Innovation Inc.*, No. 2:22-CV-02095 (D. Nev.), Signify asserted six patents against Lepro Innovation Inc. ("Lepro").

152. Upon information and belief, Signify sought to resolve that dispute through a license requiring payments based on Lepro's broader product revenues, rather than being limited to products accused of infringement. Lepro did not accept those proposed terms and the parties instead litigated the case.

153. In that litigation, Signify's financial expert identified that Lepro's compensatory damages for patent infringement was approximately $400,000-450,000. Upon information and belief, that was less than the amount Signify sought in settlement as part of its Licensing Program.

154. After Signify's financial expert's report issued, Lepro offered in writing as a settlement to pay the full amount of compensatory damages identified by Signify's expert, together with a running royalty on accused products consistent with that expert's analysis. Exhibit Z.

155. Signify rejected Lepro's offer. Exhibit Z at 4. Instead, and upon information and belief, Signify continued to litigate, incurring attorney's fees and costs greater than the amount of compensatory damages identified by Signify's expert.

156. Upon information and belief, Signify rejected Lepro's proposal because Signify continued to seek payments based on revenues from products not accused of infringement and not part of the litigation.

157. In February 2026, a jury awarded Signify $410,544—an amount consistent with the damages range identified by Signify's expert and the amount Lepro had offered to pay months earlier.

158. Upon information and belief, as Lepro proposed, Signify would have saved even more in attorneys' fees and costs had it agreed to settle based on the very amounts proposed by its expert months earlier.

159. Based on the $410,544 verdict, Signify then moved the Court seeking $4.326 million in attorneys' fees—more than *ten times* the verdict. Exhibit Z at 1, 3. Included in Signify's motion are the fees and costs Signify chose to incur after rejecting Lepro's settlement proposal.

160. Upon information and belief, a substantial portion of the attorneys' fees Signify now seeks in its motion consists of fees it unilaterally elected to incur after declining to resolve the case for the same compensatory amount later awarded by the jury. *See* Exhibit AA.

161. Upon information and belief, Signify's request for attorneys' fees reflects an effort by Signify to shift to Lepro the costs of litigation that Signify chose to incur after rejecting a settlement tied to the value of the asserted patents that Signify's own expert identified, and instead pursuing broader, revenue-based payments beyond the scope of the claims at issue.

162. Further discovery, including sealed filings in *Signify v. Lepro*, is expected to provide additional evidence regarding Signify's use of litigation costs and patent assertions in connection with its Licensing Program.

## X. ANTICOMPETITIVE EFFECTS

163. Upon information and belief, Signify targets luminaire manufacturers because royalties based on luminaire revenues produce larger payments than royalties tied to specific patented components, and because many such manufacturers lack the resources to sustain prolonged litigation.

164. The Licensing Program has caused anticompetitive effects in the Relevant Market, including (without limitation) using patents to raise competitors' prices on products that are not covered by Signify's patents.

165. [redacted]

166. [redacted]

167. Manufacturers with fewer resources are more likely to accept standardized Licensing Program terms, while better-resourced manufacturers are more able to negotiate alternative terms. [redacted]

168. These effects distort competition and result in royalties that are not tied to the scope of the asserted patents.

## XI. SIGNIFY'S USE OF THE LICENSING PROGRAM AGAINST ETI

169. [redacted] Signify asserted U.S. Patent Nos. 8,789,978; 9,709,253; 10,634,321; 10,506,682; 11,408,588; 10,473,280; 9,677,727; 7,654,703; and 7,511,437 (the "Asserted Patents"), along with related patents. [redacted]

170. [redacted]

171. [redacted]

172. ETI denies infringement and validity of the Asserted Patents and related patents.

173. ETI manufactures and sells luminaires that do not practice any claim of the Asserted Patents or related patents. [redacted]

174. Upon information and belief, Signify uses the Asserted Patents, including patents subject to validity challenges, to support its Licensing Program demands through the threat or use of costly litigation.

175. Upon information and belief, Signify has relied on asserted patents or related patents even after related claims have been challenged or invalidated in other proceedings. *See* Exhibit BB.

176. Signify used and continues to use the Asserted Patents to demand royalties on products regardless of whether they practice any asserted claim and that do not infringe the Asserted Patents, impermissibly expanding the physical scope of the patent grant.

## XII. LEGAL BASIS FOR PATENT MISUSE

177. The conduct alleged above supports a finding of patent misuse based on royalty overbreadth, including: [redacted]

178. The conduct also supports a finding of patent misuse based on coercive tying, [redacted] § 271(d)(5) does not apply because Signify has market power.

179. [redacted]

180. ETI has suffered competitive harm, including exposure to royalties not tied to patent coverage and increased costs affecting its ability to compete.

181. The conduct alleged constitutes patent misuse that impermissibly broadens the scope of the Asserted Patents with anticompetitive effect, rendering those patents unenforceable until the misuse is purged.

182. ETI seeks a declaratory judgment that the Asserted Patents are unenforceable due to patent misuse and cannot be enforced against ETI unless and until the misuse is fully purged.

## PRAYER FOR RELIEF ON COUNTERCLAIMS

WHEREFORE, ETI respectfully requests that this Court enter judgment in its favor and against Signify and Cooper Lighting, and that the Court grant the following relief:

183. 233. A judgment declaring that ETI has not infringed, and does not infringe, any valid claim of U.S. Patent Nos. 8,789,978; 9,709,253; 10,634,321; 10,506,682; 11,408,588; 10,473,280; 9,677,727; 7,654,703; and 7,511,437;

184. 234. A judgment declaring that each of U.S. Patent Nos. 8,789,978; 9,709,253; 10,634,321; 10,506,682; 11,408,588; 10,473,280; 9,677,727;

7,654,703; and 7,511,437 is invalid under one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112;

185. 235. A judgment declaring that each of U.S. Patent No.Nos. 8,789,978; 9,709,253; 10,634,321; 10,506,682; 11,408,588 is; 10,473,280; 9,677,727; 7,654,703; and 7,511,437 are unenforceable due to inequitable conduct;patent misuse unless and until such misuse has been purged.

186. 236. An award to ETI of its attorneys' fees and costs under 35 U.S.C. § 285 or any other applicable statute or rule;

237. A declaration that Cooper Lighting has infringed one or more valid and enforceable claims of U.S. Patent Nos. 10,462,871, 10,492,262 and RE49,030;

238. A judgment awarding ETI damages adequate to compensate for Cooper Lighting's infringement of the '871, '262 and '030 Patents, together with pre- and post-judgment interest and costs, as fixed by the Court pursuant to 35 U.S.C. § 284;

239. A judgment that Cooper Lighting's infringement of the '871, '262 and '030 Patents has been willful, and an award of enhanced damages pursuant to 35 U.S.C. § 284;

240. A permanent injunction enjoining Cooper Lighting, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from further acts of infringement, contributory

~~infringement, or inducement of infringement of the '871, '262 and '030 Patents pursuant to 35 U.S.C. § 283;~~

~~241. An order requiring Cooper Lighting to account for and disgorge to ETI all profits derived from its acts of infringement, to the extent permitted by law;~~

~~242. An order requiring Cooper Lighting to deliver up for destruction all infringing products;~~

187. ~~243.~~ A declaration that Signify has infringed one or more valid and enforceable claims of U.S. Patent Nos. 10,352,510 ~~and 10,731,803~~;

188. ~~244.~~ A judgment awarding ETI damages adequate to compensate for Signify Holding's infringement of the '510 Patent, together with pre- and post-judgment interest and costs, as fixed by the Court pursuant to 35 U.S.C. § 284;

189. ~~245.~~ A judgment that Signify's infringement of the '510 Patent has been willful, and an award of enhanced damages pursuant to 35 U.S.C. § 284;

190. ~~246.~~ A permanent injunction enjoining Signify, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from further acts of infringement, contributory infringement, or inducement of infringement of the '510 Patent pursuant to 35 U.S.C. § 283;

191. ~~247.~~ An order requiring Signify to account for and disgorge to ETI all profits derived from its acts of infringement to the extent permitted by law;

192. ~~248.~~ An order requiring Signify to deliver up for destruction all infringing products and materials.

193. ~~249.~~ Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

ETI demands a trial by jury on all issues so triable.

Dated: May 28, 2026~~.~~

Respectfully submitted,

*/s/ Coby S. Nixon*

Coby S. Nixon
Georgia Bar No. 545005
Seth K. Trimble
Georgia Bar No. 851055
Cory Mull
Georgia Bar No. 595376
**BUCHALTER ~~APC~~LLP**
3475 Piedmont Road NE, Suite 1100
Atlanta, Georgia 30305
Telephone: (404) 832-7530
Email: cnixon@buchalter.com
strimble@buchalter.com
cmull@buchalter.com

David B. Cupar (*pro ~~have~~hac vice*)
**MCDONALD HOPKINS LLC**
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114
Telephone: (216) 348-5400
Email: dcupar@mcdonaldhopkins.com

*Counsel for Defendant ~~and Counterclaim Plaintiff~~ ETI Solid State Lighting, Inc.*

| **Summary report: Litera Compare for Word 11.9.0.82 Document comparison done on 5/28/2026 11:16:09 AM** | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://buchalter.cloudimanage.com/BUCHALTER/93055755/1 | |
| **Modified DMS:** iw://buchalter.cloudimanage.com/BUCHALTER/110574616/2 | |
| **Changes:** | |
| Add | 531 |
| Delete | 721 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 5 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 59 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 1316 |