# Exhibit Z

Akke Levin (NV Bar No. 9102)
GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
*Akke.Levin@gtlaw.com*

Hua Chen (*pro hac vice*)
SCIENBIZIP, P.C.
550 South Hope Street, Suite 2825
Los Angeles, California 90071
Telephone: (213) 426-1778
*huachen@scienbizippc.com*

Nicholas Brown (*pro hac vice*)
Patrick Michael (*pro hac vice*)
GREENBERG TRAURIG, LLP
101 2nd Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1300
*nicholas.brown@gtlaw.com*
*patrick.michael@gtlaw.com*

Aimee Housinger (*pro hac vice*)
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 6700
Houston, TX 77002
Telephone: (713) 374-3500
housingera@gtlaw.com

*Attorneys for Defendants Lepro Innovation, Inc., LE Innovation Inc., Innovation Rules Inc., Home Ever Inc., and LetianLighting, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V.,<br><br>Plaintiffs,<br><br>vs.<br><br>LEPRO INNOVATION INC., LE INNOVATION INC, INNOVATION RULES INC., HOME EVER INC., and LETIANLIGHTING, INC.,<br><br>Defendants. | Case No. 2:22-cv-02095-JAD-EJY<br><br>**LEPRO'S OPPOSITION TO SIGNIFY'S MOTION FOR ATTORNEY FEES**<br><br>**PUBLIC VERSION** |

## TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................1

II. LEGAL STANDARDS ................................................................................1

III. SIGNIFY SHOULD NOT BE AWARDED ITS ATTORNEYS FEES.............................3

A. The Amounts At Stake Matter In Evaluating What Occurred In This Case...........3

B. Lepro's Actions Contradict Signify's Claim Of "Callous Disregard".....................5

C. Lepro's Defenses Were Not "Substantively Weak" ...............................................7

1. Lepro has filed a Rule 50 motion and plans to appeal. ...............................7

2. Lepro's noninfringement defense on the '320 patent does not support an "exceptional case" finding. ...............................................7

3. Lepro's defense on the '336 patent does not support an "exceptional case" finding. ..........................................................8

4. Lepro's decision at trial not to present evidence of invalidity for the '577, '399, and '138 Patents does not show that they were "sham defenses" or "substantively weak" .............................................................9

5. Lepro's claim construction positions were not an "early window into a pattern of raising substantively weak positions." .......................................................................9

D. There Was No Litigation Misconduct Warranting A Fees Award. ......................10

1. The missing sales data was an embarrassing mistake that hurt Lepro, not litigation misconduct supporting a fees award. .....................................................................................10

2. Lepro's "unreasonably late withdrawal" of its defenses for the '577, '399, and '138 patents was not litigation misconduct. ...........................................................................10

3. Lepro's "unreasonably late patent exhaustion defense and Daubert motions" were not litigation misconduct supporting a fees award. ..........................................................11

4. Lepro's "unreasonable conduct before trial" was not litigation misconduct supporting a fees award.........................................12

E. The Law Related To Enhancing Damages Suggests Denying Signify's Request For Attorneys Fees. ...........................................................................14

F. The Jury's Willfulness Finding Does Not Justify Awarding Fees .......................16

IV. CONCLUSION...........................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) ....................8

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
880 F.3d 1356 (Fed. Cir. 2018) ....................8

*Checkpoint Systems, Inc. v. All-Tag Sec. SA*,
858 F.3d 1371 (Fed. Cir. 2015) ....................1, 2, 17

*Chrimar Holding Company, LLC v. ALE USA Inc.*,
732 Fed.Appx. 876, (Fed. Cir. 2018) ....................10

*Droplets, Inc. v. Yahoo! Inc.*, 658 F.Supp.3d 754, 767 N.D. Cal. 2023) ....................10, 11

*E.I. du Pont De Nemours & Co. v. Unifrax I LLC*,
921 F.3d 1060 (Fed. Cir. 2019) ....................8, 13

*Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324-25 (Fed. Cir. 2011)....................2

*Gart v. Logitech*,
254 F.3d 1334 (Fed. Cir. 2001) ....................8

*Georgetown Rail Equipment Co. v. Holland LP*,
867 F.3d 1229 (Fed. Cir. 2017) ) ....................14

*Halo Electronics, Inc. v. Pulse Electronics*,
579 U.S. 93 (2016) ....................1, 5, 14

*Ironburg Inventions Ltd. v. Valve Corp.*,
64 F.4th 1274 (Fed. Cir. 2023) ....................1

*Johns Hopkins Univ. v. Datascope Corp.*,
543 F.3d 1342 (Fed. Cir. 2008) ....................8, 14

*Kove IO, Inc., v. Amazon Web Services, Inc.*,
745 F.Supp.3d 685 (N.D. Ill. 2024) ....................11

*Lab. Corp. of Am. Holdings v. Qiagen Sciences*,
148 F.4th 1350 (Fed. Cir. 2025) ....................8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ....................1, 2

*Presidio Components v. American Technical Ceramics*,
875 F.3d 1369 (Fed. Cir. 2017) ....................14

*Raylon, LLC v. Complus Data Innovations, Inc.*,
700 F.3d 1361 (Fed. Cir. 2012) ....................9

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992) ....................14, 15

*Romag Fasteners, Inc. v. Fossil, Inc.*,
866 F.3d 1330 (Fed. Cir. 2017) ....................2, 5, 10, 11

*SFA Systems, LLC v. Newegg Inc.*,
793 F.3d 1344 (Fed. Cir. 2015) ....................2

*SiOnyx LLC v. Hamamatsu Photonics KK*,
981 F.3d 1339 (Fed. Cir. 2020) ....................2, 7, 8, 9, 11, 16

*Spectralytics, Inc. v. Cordis Corp.*,
649 F.3d 1336, 1349 (Fed. Cir. 2011) ....................14, 16

*SRI International, Inc. v. Cisco Systems, Inc.*,
14 F.4th 1323 (Fed. Cir. 2021) ....................2, 14

*Transclean Corp. v. Bridgewood Services, Inc.*,
290 F.3d 1364 (Fed. Cir. 2002) ....................14, 15

*WCM Indus., Inc. v. IPS Corp.*,
721 F. App'x 959 (Fed. Cir. 2018) ....................15

**Statutes & Other Authority**

35 U.S.C § 284....................1, 5, 14

35 U.S.C § 285....................1, 14

A.B.A. Model Rule 2.1 ....................3

Federal Rule of Civil Procedure 26(b)(2) ....................3

## I. Introduction

Signify won a verdict against Lepro based on six patents for a total of $410,544. Dkt. No. 281. The damages for three of those six patents totaled $4,461. *Id.*

Signify now moves for $4.326 million in attorneys' fees. For the reasons explained below, Signify's motion should be denied.

## II. Legal Standards

35 U.S.C § 285 permits attorneys' fees to be awarded in "exceptional cases." An "exceptional" case is one that stands out from others with respect to the substantive strength of a party's litigating position or the unreasonable manner in which the case was litigated. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Fee awards are for the "rare case" in which a party's unreasonable conduct is "so 'exceptional' as to justify an award of fees." *Id*. at 555.

An award of attorneys' fees under § 285 is distinct from an award of enhanced damages for willful infringement under 35 U.S.C § 284. That section permits the court to "increase the damages up to three times the amount found" in order to "punish" Lepro, *i.e.* as a sanction for "egregious infringement behavior." *Halo Electronics, Inc. v. Pulse Electronics*, 579 U.S. 93, 103 (2016). Such enhanced damages are permitted but not required when a jury finds willful infringement. *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1300 (Fed. Cir. 2023) (affirming denial of enhanced damages based on "the district court's finding that this is a 'garden variety' case of infringement and that there was no evidence of copying, notwithstanding the jury's finding of willfulness").

In contrast to the treble damages that § 284 permits as punishment for egregious infringement behavior, the purpose of § 285 is different: an award of attorneys' fees "should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees." *Checkpoint Systems, Inc. v. All-Tag Sec. SA*, 858 F.3d 1371, 1376 (Fed. Cir. 2015).

In considering whether it would be grossly unjust that Signify should be left to bear the burden of its own counsel fees, the court must consider the totality of the circumstances, including whether Lepro's arguments "are objectively unreasonable" and whether Lepro "litigated in bad faith." *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1336 (Fed. Cir. 2017) (citing *Octane Fitness*, 572 U.S. at 554.)

The Federal Circuit has found litigation misconduct sufficient to support an award of attorneys' fees where a party destroyed relevant documents and lodged incomplete and misleading extrinsic evidence as part of the claim construction process. *SFA Systems, LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) (citing *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324-25 (Fed. Cir. 2011).) The Federal Circuit has also affirmed an award of fees where a party "pursued litigation about as aggressively as the court has seen in its judicial experience," creating "a substantial amount of work" for the court that was "needlessly repetitive or irrelevant or frivolous." *SRI International, Inc. v. Cisco Systems, Inc.*, 14 F.4th 1323, 1332 (Fed. Cir. 2021).

In contrast, the Federal Circuit has affirmed a denial of attorneys' fees even where the defendant engaged in "overt copying" of the patented technology and engaged in an "aggressive defense" that the plaintiff viewed as inappropriate. *SiOnyx LLC v. Hamamatsu Photonics KK*, 981 F.3d 1339, 1354-55 (Fed. Cir. 2020). The Federal Circuit held that "despite the jury's finding of willful infringement," the district court properly determined that the defendant's "noninfringement and invalidity defenses were not so weak as to be exceptional, in particular [because the plaintiff] did not move for summary judgment on those issues." *Id.* at 1355.

Additionally, the Federal Circuit has found that it was an abuse of discretion to award attorneys fees where there was no "falsity or fraud or bad faith" by the losing party, and where the court had denied summary judgement and JMOL. *Checkpoint Systems*, 858 F.3d at 1375-1376. The Federal Circuit explained that in the absence of "misrepresentation to the court," a party is "entitled to rely on a court's denial of summary judgment and JMOL" as evidence that its claims were "objectively reasonable." *Id.* at 1376.

## III. Signify Should Not Be Awarded Its Attorneys Fees

### A. The Amounts At Stake Matter In Evaluating What Occurred In This Case

Signify's motion presents a distorted view of this case by disregarding what was (and is) at stake. When the cost of presenting a defense vastly outweighs the amount at stake, not presenting the defense does not imply that the defense is weak. In fact, it may be unethical for an attorney to present a defense if the cost of presenting that defense significantly outweighs its potential benefit to the client.[1]

In July 2024, Signify submitted an expert report on damages requesting a total of $370,550 for alleged infringement of the six asserted patents. (See Dkt. 146 at 2-3, Dkt. 146-2.) Of that sum, $350,545 (95%) was for the '320 and '604 patents. The damages Signify sought for the '336 patent was $15,723, and the damages Signify sought for the final three patents (the '577, '399, and '138 patents) totaled together was $4,281. *Id.*

By the time of trial in 2026, Lepro had made additional sales, and Signify's damages claim had increased to $410,544. *See* Dkt. No. 281. Of that, $390,360 (95%) was for the '320 and '604 patents. The amount for the '336 patent was unchanged ($15,723) because the patent had expired, and the total for the '577, '399, and '138 patents was $4,461. *Id.*

Signify's motion shows that it was willing to spend more than 10 times the amount of its compensatory damages claim to litigate this case. Even accounting for the possibility of enhanced damages, Signify was still willing to spend more than 3 times the maximum amount it could obtain in damages. Lepro believes that the reason Signify pursued this strategy—even though it was economically self-defeating—is because Signify's goal was not to resolve the parties' dispute about the patents actually asserted and the products actually accused of infringement, but to push Lepro to take a license where it pays a royalty on sales of *all* its LED products based on *all* of

---

[1] *See* A.B.A. Model Rule 2.1 Commentary ("Advice couched in narrow legal terms may be of little value to a client, especially where practical considerations, such as cost, are predominant. Purely technical legal advice, therefore, can sometimes be inadequate.") Relatedly, the Federal Rule of Civil Procedure 26(b)(2) require that discovery be limited when the "expense of the proposed discovery outweighs its likely benefit," taking into account the "amount in controversy."

Signify's 4000+ EnabLED patents. *See* Ex. A at 3. However, this case was not a good tool for that job, because only a small portion of Lepro's overall sales were accused of infringement. Thus, as Lepro's CEO explained to Signify, this case did not justify Signify's demand that Lepro pay "a percentage royalty on our entire lighting portfolio." Ex. B (Email dated 2025-12-18) at 1; *see also id.* at 2 (explaining why Lepro "will not sign a contract requiring a percentage of sales across *all* lightning categories").

Prior to trial, Lepro offered to pay the full amount of the damages that Signify sought at trial because Lepro knew it would cost more than that to present its defenses at trial. Ex. A at 9 (offering in writing to pay Signify "the full amount of its past damages claim" as well as "the full amount of the running royalty claimed by Signify for the products accused of infringement in this case.") That was common sense, not an admission that Lepro's defenses are weak.

Throughout the case, Lepro has sought to balance the cost of litigation versus the amount at stake—not because its defenses were weak, but because the economic reality is that the cost of defending this case is a cost that Signify can impose on Lepro that goes beyond the amount it can obtain in damages. For example, Lepro offered to pay "the $20,000 that Signify is seeking in past damages for the ['336, '577, '399, and '138] patents" in order to reduce the amount of deposition time needed with its expert. (Dkt. 146 at 1.) Lepro's offer to pay the damages that Signify sought for four of the patents in order to avoid an extended deposition was not an admission that Lepro's defenses were weak, it was a recognition of the economic reality that the deposition alone might cost Lepro more than the amount sought by Signify for those four patents.

The fact that Signify sought less than $4,500 in damages for the '577, '399, and '138 patents also led Lepro to make other decisions that Signify now characterizes as evidence that Lepro's defenses are so weak that fees should be awarded. For example, Lepro chose not to present any expert opinion on noninfringement for the '577, '399, and '138 patents. For the '399 and '138 patents, this was because Lepro did not believe it had a noninfringement defense under the Court's claim construction, and thus Lepro did not oppose entry of summary judgment on that issue. But for the '577 patent, the decision not to present expert testimony on non-infringement was purely

cost-driven. Lepro believes it would have proven noninfringement at trial, and that summary judgment should not have been granted. *See* Dkt No. 166 at 2-7, Dkt. No. 295 at 23.

Granting Signify attorneys' fees for its insistence on litigating four patent infringement claims that were worth a combined total of ~$21,000—and thus were impossible to defend cost-effectively—would set a dangerously perverse precedent.[2] It would effectively permit a patent owner to inflate its own damages claim.[3] That result is inconsistent with 35 U.S.C § 284, which caps enhanced damages at "three times the amount found." *See also Halo Electronics, Inc. v. Pulse Electronics*, 579 U.S. 93, 103 (2016). It is also inconsistent with the Federal Circuit's decision in *Romag Fasteners*, where the Federal Circuit reversed a district court's award of attorneys' fees where the defendant (Fossil) presented invalidity defenses, but ultimately decided not to pursue them "as the patent infringement claim amount was relatively small." *Romag Fasteners*, 866 F.3d at 1336.

**B. Lepro's Actions Contradict Signify's Claim Of "Callous Disregard"**

Signify relies on a text message sent by Lepro's owner, Mr. Wu, to argue that there is a "a need to send a message of deterrence" because Lepro believed "the money at stake was insufficient to take the matter seriously." Dkt. No. 291 at 3. Signify is wrong.

First, Lepro's actions show that it has taken this case seriously throughout. As stated above, Lepro offered to pay Signify the entire amount of damages that it sought at trial, even though it believed its defenses were correct. Ex. A at 9. Offering to pay the entire royalty demanded by Signify is the opposite of callous disregard.

Additionally, contrary to Signify's argument, Lepro engaged in good faith settlement discussions much earlier: Lepro made good faith attempts in the first half of 2024 to negotiate the full portfolio license that Signify demanded, offers which included [redacted]. Ex. A at

---

[2] Signify's motion does not allocate its fees' claim among the six asserted patents, so it is impossible to know what portion of the $4.326 million claimed relates to the assertion of the '336, '577, '399 and '138 patents.

[3] By pursuing a small damages claim, a patent plaintiff could make it economically irrational for a defendant to present any defense at all, and could then exploit that fact to argue that the defendant's case was substantively weak.

8-9 (table showing settlement offers from Lepro in May and June of 2024). It is unfair for Signify to accuse Lepro of not taking this matter seriously when Lepro made settlement offers to Signify that were significantly larger than the jury verdict.

Second, the text messages cited by Signify show the opposite of what Signify suggests. They show Mr. Wu *was* taking the matter seriously but was simply unwilling to pay the "percentage of global sales" that Signify demanded, because it would be better for Lepro to stop selling products that were found to infringe. Ex. C at 45; Dkt. No. 291 at 3-4. Mr. Wu states expressly that Lepro "won't produce products that are judged to be infringing by legal action." *Id.* That is respect for Signify's patents, not callous disregard. It is true that Mr. Wu states that "it is not much money anyway," but that statement is about the profit Lepro would forego by not making products found to infringe. Dkt. No. 291 at 4. That does not suggest "callous disregard" for Signify's patents, it shows that Mr. Wu is willing to forego making products that are found to infringe and believes that doing so would be preferable to paying Signify a "percentage of global sales."

Third, while this case was pending (and after the 2024 settlement discussions failed), Lepro began purchasing many of the products accused of infringement from Klite, a Signify subsidiary. Dkt. No. 235 at 2-3. Lepro did so because it believed that products sold by Klite were licensed under Signify's patents. *Id.*; *see also* Ex. B at 9. That approach was not successful, but it shows that Lepro was attempting to address Signify's patent infringement claims.

In sum, Lepro's actions contradict Signify's claim of "callous disregard" for its patent rights. And the economic reality that it was impossible to defend cost-effectively against the majority of Signify's asserted patents is not evidence of misconduct or "callous disregard." Lepro would have much preferred to pay Signify its alleged damages for the '336, '577, '399, and '138 patents rather than litigate those patents in this case, but Lepro did not have that option.

### C. Lepro's Defenses Were Not "Substantively Weak"

#### 1. Lepro has filed a Rule 50 motion and plans to appeal.

The court should reject Signify's argument that Lepro defenses were so "substantively weak" that it should be awarded fees. Lepro has filed a motion seeking judgment as a matter of law in its favor on many of its defenses. Dkt. No. 295. If that motion is denied, Lepro plans to appeal. Lepro submits that its motion and any subsequent appeal will demonstrate that its positions in this case are not substantively weak.

#### 2. Lepro's noninfringement defense on the '320 patent does not support an "exceptional case" finding.

Signify argues that Lepro's noninfringement defense to the '320 patent was "implausible" and a "baseless" attempt to "find a workaround to the Court's claim construction order." Not so. Signify filed a motion in limine asking the Court to exclude evidence on this basis, which the Court denied. Dkt. No. 195 at 9-10. Part of Lepro's position from the beginning has been that it cannot infringe because the interior metal lining in its products is completely covered in plastic and thus cannot be a heat sink that forms "a portion of an outer enclosure," as the claim requires. Lepro believes that position is correct as matter of law, both because the claim should be construed to exclude the possibility that an interior metal lining is "a portion of an outer enclosure" and because no reasonable jury could find that an interior metal lining is a "a portion of an outer enclosure." The Facebook post from Dr. Curran that Signify finds so compelling has nothing to do with whether an interior metal lining is "a portion of an outer enclosure." And contrary to Signify's argument, Lepro never disputed that "the plastic outer surface of the products gets hot and dissipates heat from the LEDs." Lepro understands Signify's position on this issue, and acknowledges that first the Court and then the jury found against it. But this is a typical disagreement in a patent case, not such an exceptionally weak position that Signify should be awarded its fees. Signify did not move for summary judgment of infringement on the '320 patent, which is evidence that Lepro's position was not so substantively weak as to justify an award of fees. *SiOnyx LLC*, 981 F.3d at 1354-55 (affirming denial of attorney's fees despite a jury's finding of willful infringement when the plaintiff "did not move for summary judgment on those issues.")

**3. Lepro's defense on the '336 patent does not support an "exceptional case" finding.**

Signify argues that "Lepro failed to adduce any evidence in support of non-infringement of the '336 Patent," and that its defense was thus "sham." That is not correct.

First, Lepro is entitled to judgment as a matter of law that it is not liable on the '336 patent because it did not receive notice prior to the expiration of the '336 patent that its accused products infringe. Dkt. No. 295 at 17-18. The only evidence of pre-expiration notice is a 2018 email about a "wireless ceiling light with bluetooth speaker," but that product was discontinued and was not at issue in the case. *Gart v. Logitech* establishes that notice about one product is not notice about a very different product. 254 F.3d 1334, 1346-1347 (Fed. Cir. 2001); Dkt. No. 295 at 17-18.

Second, Signify's assertion that Lepro was required to present testimony from its own expert is wrong. The Federal Circuit has upheld decisions based on "documentary evidence and cross-examination testimony" where the prevailing party "did not call an expert." *E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1075 (Fed. Cir. 2019). The Federal Circuit has also reversed a finding of infringement and found noninfringement as a matter of law based on the testimony of the patent owner's technical expert. *Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1345-1349 (Fed. Cir. 2008); *see also Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. 2018).

Third, Lepro presented evidence of noninfringement by cross-examining Signify's expert. *See* Dkt. No. 295 at 8-9; Signify's expert admitted that his only basis for asserting infringement for one Lepro product was testing in conditions chosen to guarantee infringement (a dark basement with all the lights off so that there would be no background noise). *See* Dkt. No. 295 at 8-9. That approach cannot be sufficient because it makes the claim language meaningless. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir. 2006) ("claim language should not treated as meaningless"); *Lab. Corp. of Am. Holdings v. Qiagen Sciences*, 148 F.4th 1350, 1358-1359 (Fed. Cir. 2025).

Finally, Signify did not move for summary judgment of infringement on the ’336 patent, which is evidence that Lepro’s position was not so substantively weak as to justify an award of fees. *SiOnyx LLC*, 981 F.3d at 1354-55.

**4. Lepro’s decision at trial not to present evidence of invalidity for the ’577, ’399, and ’138 Patents does not show that they were “sham defenses” or “substantively weak”**

Signify argues that because “Lepro failed to adduce any evidence” at trial about invalidity of the ’577, ’399, and ’138 Patents, the court should conclude that they were “sham defenses propped up by substantively weak positions.” That is not correct. As discussed above, the total damages claim for those patents was ~$4,500 (~$13,500 if trebled). There was a time clock at trial, and Lepro’s decision not to present those defenses at trial was based the amount of time available and the perceived value of using that time differently. Additionally, Signify did not move for summary judgment on these invalidity defenses, which is evidence that they were not so “substantively weak” as to justify an award of fees. *SiOnyx LLC*, 981 F.3d at 1354-55.

**5. Lepro’s claim construction positions were not an “early window into a pattern of raising substantively weak positions.”**

Signify argues that because “Lepro raised twelve terms for construction” and the Court “completely” rejected eleven of Lepro’s proposed constructions, it shows that Lepro’s claim construction positions were substantively weak. Lepro disagrees. The fact that the Court rejected Lepro’s positions does not imply that they were so “substantively weak” as to warrant an award of fees. To the contrary, “reasonable minds can differ as to claim construction positions and losing constructions can nevertheless be nonfrivolous.” *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012). Thus, the Federal Circuit has explained that losing claim construction positions are not a basis for a fees award unless they are so unreasonable that they “stand out.” *SFA Systems, LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015).

Here, the Court issued a detailed opinion addressing both sides’ arguments on claim construction. It is true that most of Lepro’s positions were rejected. Dkt. No. 91. But Lepro respectfully submits that the record—including the claim construction order itself—does not

suggest that Lepro's positions were unreasonable or otherwise so substantively weak as to support an award of attorneys' fees. Lepro plans to appeal several of the court's adverse constructions because it continues to believe that its positions are correct.

### D. There Was No Litigation Misconduct Warranting A Fees Award.

Contrary to Signify's arguments, Lepro did not engage in litigation misconduct.

#### 1. The missing sales data was an embarrassing mistake that hurt Lepro, not litigation misconduct supporting a fees award.

Signify argues that Lepro "hid the existence" of sales made through Walmart and Target, and that this was intentional litigation misconduct. Signify is wrong. The failure to produce this sales data was an embarrassing mistake that hurt Lepro, as evidenced by the fact that Signify chose to surprise Lepro with the missing sales at trial, in violation of the advance-disclosure rule that Signify had itself demanded. *See* Dkt. No. 265 (2/6/26 Tr.) at 76:16-79:2; Dkt. No. 220 (1/12/26 Tr.) at 19:5-20:12 and 23:21-24:16. Additionally, the amount of missing sales was $33,842. Ex. D. At the 6.5% royalty rate Signify requested, that is $2,200. It not credible that Lepro was intentionally concealing these sales; it would have been dramatically better for Lepro if it had produced the missing data. At trial, Lepro's representative acknowledged the mistake, explained what happened, and apologized. Dkt. No. 275 (2/9/26 Tr.) at 101:14-104:8; 106:12-15; 109:6-14. This mistake was not the type of litigation misconduct that should lead to an award of attorneys' fees.

#### 2. Lepro's "unreasonably late withdrawal" of its defenses for the '577, '399, and '138 patents was not litigation misconduct.

Signify argues that fees are warranted because Lepro "intentionally and unnecessarily" prolonged the litigation by not dropping its invalidity defenses regarding the '577, '399, and '138 patents until the middle of trial. But as explained above, the total damages claim for those patents was ~$4,500 (~$13,500 if trebled), and there was a time clock at trial. At most, Lepro's decision not to use its time to put on those defenses at trial shows that Lepro should have better managed its use of time at trial. It does not show that there was litigation misconduct. The Federal Circuit has reversed a finding of attorneys fees (i.e. found that the fee award was an abuse of discretion)

in a case where the defendant withdrew its invalidity defenses immediately before trial. *Romag Fasteners*, 866 F.3d at 1341. The Federal Circuit has also affirmed a denial of attorneys' fees where the defendant "pressed a large number of defenses and counterclaims for years, only to drop most of them … late in the litigation, even during trial." *Chrimar Holding Company, LLC v. ALE USA Inc.*, 732 Fed.Appx. 876, 2018 WL 2120618, *11-*12 (Fed. Cir. 2018). Here, Lepro did not pursue a large number of defenses for the '577, '399, and '138 patents. Instead, Lepro had a narrowly focused invalidity theory for each of these patents. Dkt. No. 212 at 9-10 ('399/'138 patents), 17-18 ('577 patent). Lepro's decision to drop these defenses at trial does not show that Lepro engaged in misconduct by unnecessarily prolonging the litigation.[4] *See Droplets, Inc. v. Yahoo! Inc.*, 658 F.Supp.3d 754, 767 N.D. Cal. 2023) (denying attorneys' fees even though the defendant "forced Droplets to prepare for the invalidity case at trial, before withdrawing the invalidity case during trial"); *Kove IO, Inc., v. Amazon Web Services, Inc.*, 745 F.Supp.3d 685, 730 (N.D. Ill. 2024) (denying attorneys' fees despite the defendant's "abandonment of its invalidity defenses" shortly before trial).

### 3. Lepro's "unreasonably late patent exhaustion defense and Daubert motions" were not litigation misconduct supporting a fees award.

Signify argues that Lepro's" late patent exhaustion defense and Daubert motion" were "objectively unreasonable tactics" that should be punished by awarding Signify its fees. Lepro acknowledges that the Court found that it raised the patent exhaustion issue too late, and precluded it from offering that defense at trial. Dkt. No. 238. But this was not the type of litigation misconduct that justifies an award of attorneys' fees, as shown by the cases cited in the prior section. The court found that the defense arose in January 2025, when "Lepro knew it might begin purchasing Klite products with the understanding that sales from those products would be 'subject to patent

[4] Signify appears to argue that it would not have been required to put on a damages case for the '577, '399, and '138 patents if Lepro had withdrawn its invalidity defenses prior to trial. That is not true. Damages is a separate issue requiring separate proof, and one where Signify bears the burden of proof. Signify had each of its technical experts testify about damages issues, and Signify's damages expert relied on that testimony in offering his opinions. Signify offers no reason to believe that any of this would have changed if Lepro had withdrawn its invalidity defenses prior to trial, or at *any* earlier point in the case.

exhaustion.'" Dkt. 238 at 3. The sanction the court imposed—finding that the defense was waived—was significant, and in Lepro's view incorrect. Imposing a further sanction by awarding Signify millions in attoneys' fees would be unjust.

Similar logic applies to the Lepro's motion to exclude the testimony of Signify's damages expert. The Court denied Lepro's motion. But Lepro did not file this motion for an improper purpose, and timing of the motion seems to have prejudiced Lepro more than Signify. As discussed above, courts have denied attorneys' fees in circumstances where the losing party's conduct was much more egregious than the circumstances here. *E.g. Romag Fasteners*, 866 F.3d at 1341; *SiOnyx LLC*, 981 F.3d at 1354-55; *Droplets, Inc. v. Yahoo! Inc.*, 658 F.Supp.3d at 767.

**4. Lepro's "unreasonable conduct before trial" was not litigation misconduct supporting a fees award.**

Signify also argues (at 10-11) that Lepro engaged in "unreasonable conduct before trial" that formed a "pattern" of refusing to withdraw "baseless defenses." Signify identifies the following conduct by Lepro: (i) agreeing not to oppose a summary judgment motion related to the '336 patent instead of withdrawing Dr. Curran's expert report on the issue; (ii) opposing summary judgment on its indefiniteness defense for the '336 patent; (iii) opposing summary judgment on its written description defense for the '320 patent; (vi) opposing summary judgment of noninfringement on the '577 patent without having offered an expert opinion on that issue. None of this was litigation misconduct.

First, the fact that Lepro agreed to withdraw an invalidity defense (because it agreed that certain references it had identified as prior art were not able to meet the required legal standards to be accorded their foreign priority dates) shows that Lepro was willing to withdraw defenses. In other words, after meet-and-confer Lepro *accepted* Signify's position on the substance of its prior art defense. This avoided an opposed motion for summary judgment, and avoided the need for Signify to submit an expert report on this issue. Dkt. No. 141 at 63 ("Dr. Pattison will not be providing a substantive response to the Shimizu and Kuwabara references in his rebuttal report given that these references are moot.") The fact that the parties had a dispute about the appropriate

procedural vehicle for memorializing that substantive agreement does not suggest that Lepro was engaged in misconduct. Lepro expected that an unopposed motion would be a simple 2-3 page document, not the burdensome task that Signify now paints it to have been. Lepro also continues to believe that the issue was not correctly addressed by withdrawing Dr. Curran's report, because that report did not address the issue about foreign priority dates of the prior art references.

Second, it was not misconduct for Lepro to oppose summary judgment on its indefiniteness defense for the '336 patent. *See* Dkt. 166 at 8-9 (Lepro's opposition brief). The court held that the indefiniteness argument had been disposed of by its claim construction argument. Dkt No. 175 at 9. The Court also held that "Lepro's future opportunity to cross-examine Dr. Pattison doesn't raise a genuine issue of material fact that precludes summary judgment." Dkt No. 175 at 10. Lepro acknowledges, of course, that the Court's claim construction order was the law of the case—but Lepro also acknowledged that at the outset of its summary judgment opposition on this issue. Dkt. 166 at 8. Lepro's opposition then explained why the testimony of *both* parties' experts would show that the '336 patent was still indefinite *under the Court's construction*. Dkt. 166 at 8-9. While the court rejected Lepro's arguments, it was not misconduct for Lepro to explain its position.

Third, it was not misconduct for Lepro to oppose summary judgment by raising a written description defense on the '320 patent. The Court found that Lepro had waived that defense by failing to disclose it in its invalidity contentions, as required by L.P.R. 1-8. Dkt. 175 at 10-11. That does not suggest that it was improper for Lepro to have attempted to raise the defense. To the contrary, L.P.R. 1-12 expressly permits amendment of invalidity contentions for "a showing of good cause." Perhaps Lepro should have filed separate motion to make a showing of good cause for its written description defense, or otherwise presented its position differently, but that is not litigation misconduct, let alone the sort of misconduct that has been found to warrant an award of attorneys' fees. *See SFA Systems, LLC*, 793 F.3d at 1350 (affirming an award of attorney's fees where a party destroyed relevant documents and lodged incomplete and misleading extrinsic evidence as part of the claim construction process.)

Finally, it was not misconduct for Lepro to oppose summary judgment of noninfringement on the ’577 patent without offering an affirmative expert opinion. As explained above, the Federal Circuit has upheld decisions based on “documentary evidence and cross-examination testimony” where the prevailing party “did not call an expert.” *E.I. du Pont De Nemours & Co.*, 921 F.3d at 1075. The Federal Circuit has also found noninfringement as a matter of law based solely on the testimony of the patent owner’s technical expert. *Johns Hopkins Univ.*, 543 F.3d at 1345–49. Thus, despite the court’s adverse ruling on the ’577 patent, Lepro believes its noninfringement defense is correct and should prevail on appeal. But even if it does not, it was not misconduct for Lepro to maintain that defense without offering an affirmative expert opinion, particularly when the amount at stake was less than $3,000 and Federal Circuit authority supports Lepro’s position.

### E. The Law Related To Enhancing Damages Suggests Denying Signify’s Request For Attorneys Fees.

Signify’s motion seeks an award of attorneys’ fees that is approximately five times larger than the statutory cap on what a court can award in order to “punish” Lepro for “egregious infringement behavior.” *Halo Electronics*, 579 U.S. at 103. Specifically, 35 U.S.C. § 284 caps the enhancement of damages at “three times the amount found.” Here, that means the court could award an additional $821,088 (2 * $410,544). *See* Dkt. No. 281. Signify is seeking more than 5 times that amount ($4.326 million) in fees.

As explained above in § II, an award of attorneys’ fees under § 285 is distinct from an award of enhanced damages under 35 U.S.C § 284. However, the inquiries overlap. On the one hand, “attorney misconduct or other aggravation of the litigation process may weigh heavily with respect to attorney fees, but not for enhancement of damages.” *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1349 (Fed. Cir. 2011).

On the other hand, a district court’s decision to deny enhanced damages, based on a “careful analysis of the *Read* factors,” has been held to be sufficient grounds for denying an award of attorneys’ fees. *Transclean Corp. v. Bridgewood Services, Inc.*, 290 F.3d 1364, 1379 (Fed. Cir. 2002). Thus, it makes sense to consider the factors listed in *Read Corp. v. Portec, Inc.*, 970 F.2d

816 (Fed. Cir. 1992), which courts often consider in determining whether to enhance damages. *Georgetown Rail Equipment Co. v. Holland LP*, 867 F.3d 1229, 1244-1245 (Fed. Cir. 2017), *SRI International, Inc. v. Cisco Systems, Inc.*, 14 F.4th 1323, 1330-1331 (Fed. Cir. 2021).[5]

The *Read* factors are as follows:

(1) whether the infringer deliberately copied;

(2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;

(3) the infringer's behavior as a party to the litigation;

(4) defendant’s size and financial condition

(5) closeness of the case;

(6) duration of the defendant’s misconduct;

(7) remedial action by the defendant;

(8) defendant motivation for harm

(9) whether defendant attempted to conceal its misconduct.

*See Read Corp.*, 970 F.2d at 827-828.

For factors 2 and 6, Lepro acknowledges that the fact that it did not respond to Signify’s notice letters may weighs against it. On the other hand, Lepro stopped selling many of the products that Signify identified in its notice letters, as shown by the fact that the only infringement of the ’336 patent alleged in this case was for products that Signify did not identify as infringing until after the patent had expired. More importantly, the majority of the *Read* factors weigh against enhancement of damages. There was no evidence of copying, no attempt to conceal anything, and no suggestion that Lepro was acting based on a motivation to harm Signify. Lepro took remedial

---

[5] Consideration of the *Read* factors is not required in determining whether to enhance damages. *Presidio Components v. American Technical Ceramics*, 875 F.3d 1369, 1382 (Fed. Cir. 2017). However, the *Read* factors “do assist the trial court in evaluating the degree of the infringer’s culpability and in determining whether to exercise its discretion to award enhanced damages at all, and if so, by how much.” *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 972 (Fed. Cir. 2018).

action by switching suppliers to Signify's subsidiary (Klite), and by offering to pay Signify the entire amount of the royalty that Signify demanded for the products accused of infringement. Lepro is a much smaller company than Signify. Further, as discussed above, Lepro did not engage in litigation misconduct, and had a good faith belief in its defenses (which were not substantively weak). Thus, the *Read* factors counsel against enhancement of damages. *See Ironburg Inventions Ltd.*, 64 F.4th at 1300 (affirming denial of enhanced damages based on "the district court's finding that this is a 'garden variety' case of infringement and that there was no evidence of copying, notwithstanding the jury's finding of willfulness").

The above analysis also weighs against awarding Signify its attorneys' fees.

**F. The Jury's Willfulness Finding Does Not Justify Awarding Fees**

Signify argues that the jury's finding of willful infringement weighs heavily in favor of finding that is an "exceptional case" and awarding attorney's fees. While the willfulness finding is relevant, it is not dispositive and does not have the weight that Signify suggests. In *SiOnyx LLC v. Hamamatsu Photonics KK*, the Federal Circuit held that despite the jury's finding of willful infringement, the defendant's "noninfringement and invalidity defenses were not so weak as to be exceptional, in particular [because the plaintiff] did not move for summary judgment on those issues." 981 F.3d at 1355. The same is true here: Signify did not move for summary judgment on most of the defenses that it now contends were "substantively weak."

Relatedly, the Court denied Signify's Rule 50(a) motion on all issues except for the invalidity defenses on the '577, '399, and '138 patents (where Lepro did not present evidence and agreed that judgment should be entered as a matter of law). Dkt. No. 276 at 5-6. And as the Federal Circuit has explained, in the absence of "misrepresentation to the court," a party is "entitled to rely on a court's denial of summary judgment and JMOL" as evidence that its claims were "objectively reasonable" such that attorneys' fees should not be awarded. *Checkpoint Systems,* 858 F.3d at 1375-1376.

Additionally, as discussed above, the *Read* factors regarding enhanced damages weigh against enhancing damages. That means they also weigh against awarding attorney's fees, because

"careful analysis of the *Read* factors," has been held to be sufficient grounds for denying an award of attorneys' fees. *Transclean Corp.*, 290 F.3d at 1379. That is especially true because an important difference between attorneys' fees inquiry and the enhanced damages inquiry is that "attorney misconduct or other aggravation of the litigation process may weigh heavily with respect to attorney fees, but not for enhancement of damages." *Spectralytics*, 649 F.3d at 1349. Here, Lepro did not engage in litigation misconduct. That underscores the conclusion that this case does not stand out as one where it would be "grossly unjust that [Signify] be left to bear the burden of [its] own counsel fees." *Checkpoint Systems,* 858 F.3d at 1376 (Fed. Cir. 2015).

## IV. CONCLUSION

For the reasons described above, Signify's motion should be denied.

Dated: March 11, 2026

Respectfully submitted,

*/s/ Nicholas Brown*

Akke Levin (NV Bar No. 9102)
GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Akke.Levin@gtlaw.com

Nicholas Brown (*pro hac vice*)
Patrick Michael (*pro hac vice*)
Corey Leggett (*pro hac vice*)
GREENBERG TRAURIG, LLP
101 2nd Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1300
nicholas.brown@gtlaw.com
patrick.michael@gtlaw.com
corey.leggett@gtlaw.com

Aimee Housinger (*pro hac vice*)
GREENBERG TRAURIG, LLP
1000 Louisiana, Suite 6700
Houston, TX 77002
Telephone: (713) 374-3570
housingera@gtlaw.com

Hua Chen (*pro hac vice*)
SCIENBIZIP, P.C.
550 South Hope Street, Suite 2825
Los Angeles, California 90071
Telephone: (213) 426-1778
huachen@scienbizippc.com

*Counsel for Defendants LEPRO Innovation Inc., LE Innovation Inc., Innovation Rules Inc., Home Ever Inc., and Letianlighting, Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the above date a true and correct copy of this document was filed electronically via the Court's CM/ECF system. Notice of filing will be served on all parties by operation of the Court's EM/ECF system, and parties may access this filing through the Court's CM/ECF system.

*/s/ Nicholas A. Brown*