**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V.,<br><br>Plaintiffs,<br><br>v.<br><br>ETI SOLID STATE LIGHTING, INC.,<br><br>Defendant. | Case No. 2:25-cv-00121-RWS |

# SIGNIFY HOLDING B.V.'S AND SIGNIFY NORTH AMERICA CORPORATION'S OPPOSITION TO ETI'S MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER AND COUNTERCLAIMS

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

A. ETI Has Been Aware of Signify's Licensing Program for Years ..... 1

B. Relevant Discovery Between Parties and Procedural History ..... 2

C. Courts Have Dismissed Similar "Patent Misuse" Allegations Made Against Signify's LED Licensing Program ..... 3

III. LEGAL STANDARDS ..... 4

A. Rule 16 ..... 4

B. Rule 15 ..... 5

C. Patent Misuse ..... 6

IV. ARGUMENT ..... 8

A. Rule 16's Good Cause Standard Precludes Modification of the Scheduling Order Because ETI was Not Diligent ..... 8

1. ETI Had the Facts Underlying Its Allegations Prior to the Deadline in the Scheduling Order, Precluding a Showing of Good Cause ..... 9

2. ETI Waited More Than Five Months Before Seeking to Amend After Receiving Licenses, Precluding a Showing of Good Cause ..... 15

B. ETI's Motion to Amend Should be Denied Under Rule 15 Because the Amendment is Futile ..... 16

1. ETI Failed to Allege Misuse of Any Particular Patent-in-Suit. 17

2. ETI Has Not Adequately Identified the Relevant Market ..... 18

3. Signify's Royalty Base is Not Overbroad ..... 19

4. Neither ETI's Allegations Regarding Certain License Agreements Nor its "Statistical Analysis" Support a Finding of Misuse ..... 20

5. Signify is Entitled to Confidentiality ..... 21

6. The Qualified Supplier Structure Is Not a Tying Arrangement

.......................................................................................... 22
7. Allegations Regarding Satco and Lepro .................................. 23
8. ETI Has Not Identified Any Anticompetitive Effects ............. 24
9. Signify's Conduct with Respect to ETI Is Not Misuse............ 25
V. CONCLUSION........................................................................................ 25

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Allergan Holdings Unlimited Co. v. MSN Labs. Priv. Ltd.*,
No. 23-794-RGA, 2024 U.S. Dist. LEXIS 126557
(D. Del. July 17, 2024) ....................20

*AMG Trade & Distribution, LLC v. Nissan N. Am., Inc.*,
813 F. App'x 403 (11th Cir. 2020) ....................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................5

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
157 F.3d 1340 (Fed. Cir. 1998) ....................6, 7

*Cockrell v. Sparks*,
510 F.3d 1307 (11th Cir. 2007) ....................5

*Davidson v. MTD Prods. Co.*,
No. 24-11504, 2025 U.S. App. LEXIS 1588
(11th Cir. Jan. 24, 2025) ....................5, 10, 13

*Depuy, Inc. v. Zimmer Holdings, Inc.*,
343 F. Supp. 2d 675 (N.D. Ill. 2004) ....................8

*Diversey, Inc. v. Pops Techs.*,
No. 1:18-CV-04210-AT, 2019 U.S. Dist. LEXIS 234409
(N.D. Ga. Nov. 13, 2019) ....................15

*EEOC v. Exel Inc.*,
259 F.R.D. 652 (N.D. Ga. 2008) ....................15, 16

*Engel Indus., Inc. v. Lockformer Co.*,
96 F.3d 1398 (Fed. Cir. 1996) ....................19

*Gaull v. Wyeth Laboratories, Inc.*,
687 F.Supp. 77 (1988) ....................22

*Griffin v. Emory Healthcare*,
No. 25-12457, 2026 U.S. App. LEXIS 13269 (11th Cir. May 7, 2026) ....................15

*In re Certain LED Lighting Devices, LED Power Supplies, and Components Thereof*,
Inv. No. 337-TA-1081, Order No. 27, 2018 WL 1110484 (Feb. 20, 2018).........4

*James v. XPO Logistics Freight Inc.,* No. 1:24-CV-5149-CCB, 2026 U.S. Dist. LEXIS 85556, (N.D. Ga. Mar. 31, 2026) ................................................12

*Kolene Corp. v. Motor City Metal Treating, Inc.*,
440 F.2d 77 (6th Cir. 1971) ..........................................................................17

*Martinez v. D2C, LLC*,
Civil Action No. 23-21394-Civ-Scola, 2024 U.S. Dist. LEXIS 52297 (S.D. Fla. Mar. 25, 2024)..........................................................................16

*Monsanto Co. v. McFarling*,
363 F.3d 1336 (Fed. Cir. 2004) ......................................................................6

*Morgan v. Bill Vann Co., Inc.*,
No. 11-0535-WS-B, 2012 U.S. Dist. LEXIS 97431 (S.D. Ala. July 13, 2012) ..........................................................................................10

*NCI Grp., Inc. v. Cannon Servs.*,
No. 1:09-CV-0441-RWS, 2011 U.S. Dist. LEXIS 131908 (N.D. Ga. Nov. 16, 2011) ..........................................................................................9

*Ohai v. Delta Cmty. Credit Union*,
No. 1:20-cv-02220-SCJ-AJB, 2021 U.S. Dist. LEXIS 124616 (N.D. Ga. June 7, 2021)..........................................................................................5

*Omar v. Safety Holdings Inc.*,
No. CV-23-02532-PHX-DLR, 2025 U.S. Dist. LEXIS 253368 (D. Ariz. Sep. 26, 2025) ..........................................................................................13

*Princo Corp. v. Int'l Trade Comm'n*,
616 F.3d 1318 (Fed. Cir. 2010) (*en banc*) ............................................6, 7, 8, 17

*Pub. Citizen Health Rsch. Grp. v. Nat'l Institutes of Health*,
209 F. Supp. 2d 37 (D.D.C. 2002)...................................................................22

*Rav Bah., Ltd. v. Genting Ams., Inc.*,
No. 24-CV-23874, 2026 U.S. Dist. LEXIS 37445 (S.D. Fla. Feb. 24, 2026) ..........................................................................................14, 15

*Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.*, No. 18 Civ. 11098 (ER) 2020 U.S. Dist. LEXIS 49792 (S.D.N.Y. Mar. 23, 2020) ....................3, 4

*Trading Techs. Int'l, Inc. v. IBG LLC*, No. 10-Cv-715, 2021 U.S. Dist. LEXIS 334 (N.D. Ill. Jan. 4, 2021) ....................19, 20

*U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005) ....................6, 7, 18, 22

*U.S. v. Studiengesellschaft Kohle, m.b.H.*, 670 F.2d 1122 (1981)....................24

*Uniloc USA, Inc. v. Apple Inc.*, 25 F.4th 1018 (Fed. Cir. 2022) ....................22

*United States ex rel. Southard v. Kipper Tool Co.*, No. 2:23-cv-225-RWS, 2024 U.S. Dist. LEXIS 134857 (N.D. Ga. June 3, 2024) ....................4, 5

*Wells v. Gen. Dynamics Info. Tech. Inc.*, 571 F. App'x 732 (11th Cir. 2014)....................8

*Zenith Radio Corp. v. Hazeltine Res., Inc.*, 395 U.S. 100, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969) ....................19

**RULES**

Fed. R. Civ. P. 12 ....................3

Fed. R. Civ. P. 15 ....................5, 6, 16

Fed. R. Civ. P. 16 ....................passim

**STATUTES**

U.S. Code § 271 ....................7, 14, 21, 24

## TABLE OF EXHIBITS


| Exhibit | Reference |
|---|---|
| 1 | Wayback Machine PDF of webpage titled "Licensing program for LED-based luminaires and retrofit bulbs," SIGNIFY, https://www.signify.com/global/our-company/intellectual-property/licensing. |
| 2 | Letter from Signfiy to ETI, produced by ETI as ETI_010808. |
| 3 | Publicly available Signify presentation titled "EnabLED Licensing Program for LED Luminaires and Retrofit Bulbs" (March 2025). |

# I. INTRODUCTION

ETI's motion to add a patent misuse claim over a year into the litigation and over eight months after the pleading amendment deadline is both untimely and futile. The proposed patent-misuse theory is not based on newly discovered facts: ETI has known for a decade about the terms of Signify's well-established licensing program and yet waited over a year to make any misuse claims. Even under ETI's version of events, it waited more than five months after receiving the license agreements it now cites to seek leave to amend. That lack of diligence alone forecloses amendment under Rule 16.

Amendment would be futile in any event because ETI's proposed allegations do not come close to pleading patent misuse, a narrow doctrine that requires far more than generalized attacks on lawful portfolio licensing and ordinary patent enforcement. The Court should deny ETI's untimely motion.

# II. FACTUAL BACKGROUND

## A. ETI Has Been Aware of Signify's Licensing Program for Years

Signify launched its EnabLED Licensing Program ("Program") in 2008 to provide companies with access to Signify's vast array of granted patents covering core LED technology. *See* Ex. 1 at 2, 6. This Program offers a standardized framework through which manufacturers can obtain rights to use Signify's proprietary LED innovations in finished products. *See id.*

ETI knew about the Program for years—well before Signify filed this lawsuit.

Indeed, since 2015, Signify has repeatedly notified ETI that its products infringe Signify's patents and sought to negotiate a license. Dkt. Nos. 1, ¶38; 30-1 at 3–4. Despite years of correspondence and efforts to resolve the dispute, ETI has refused to take a license to Signify's patents. Dkt. No. 1, ¶38; Dkt. No. 13, at 2.

ETI acknowledges as much, conceding that, for years before this case, it knew Signify was attempting to negotiate a license. Dkt. No. 14 at 1. ETI's own document production likewise confirms that, in 2021, Signify told ETI it needed a license and directed ETI to information regarding Signify's Program. *See* Ex. 2 at 1 (Signify stating that it had already explained its SSL licensing program to ETI, including the availability of a portfolio license, and directing ETI to Signify's website.). As discussed below, Signify's website contains detailed information regarding its licensees and the licensing options available to prospective licensees.

### B. Relevant Discovery Between Parties and Procedural History

The Scheduling Order deadline for amending pleadings in this case expired approximately eight months prior to ETI's current motion, on September 21, 2025. Dkt. Nos. 101-1 at 4; 22 at 9–10.

On September 26, 2025, ETI served its first set of Requests for Production on Signify. Dkt No. 101-31. Request No. 21 sought "[a]ll Documents relating to any patent licenses, settlements, or covenants not to sue that You contend are comparable to a license that would have been negotiated between Signify and ETI." Because

responsive materials were subject to confidentiality restrictions that required court authorization for production, the parties filed a Stipulated Joint Motion to Order Production on December 10, 2025. Dkt. No. 62. The Court entered its Consent Order on December 15, 2025. Dkt. No. 67. Signify produced its licenses that same day.

Over five months passed with no word from ETI. On May 27, 2026, the Court granted Signify's motion to dismiss ETI's inequitable conduct counterclaims. Dkt. No. 100. The Court further ordered that, "*for the sake of clarity*, ETI may file an Amended Answer & Counterclaim consistent with the Court's Rule 12 rulings (including dismissal of Cooper Lighting) within 14 days, or no later than June 11, 2026." *Id.* at 30. The Court's Order therefore permitted ETI to *clarify* its pleading by removing dismissed allegations against Cooper Lighting LLC and the stricken inequitable conduct counterclaims but did not authorize ETI to add new allegations.

Instead of complying with the Court's Order, the very next day—May 28, 2026—ETI moved for leave to file a Second Amended Answer and Counterclaims, seeking to add an entirely new affirmative defense of patent misuse. Dkt. No. 101-2. This was the first time ETI had mentioned patent misuse to Signify, despite the parties' dealings over more than a decade.

### C. Courts Have Dismissed Similar "Patent Misuse" Allegations Made Against Signify's LED Licensing Program

Other courts and agencies have already considered and rejected claims like the ones ETI now seeks to inject into this case. For example, in 2020, the Southern

District of New York dismissed Reggiani Lighting USA's patent misuse allegation that "Signify is asserting patents it knows to be invalid and/or asserting unfounded grounds for infringement in bad faith in order to stifle competition in the market." *Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.*, No. 18 Civ. 11098 (ER) 2020 U.S. Dist. LEXIS 49792, at *27 (S.D.N.Y. Mar. 23, 2020). The U.S. International Trade Commission likewise found inadequate Feit Electric's allegation "that Philips[1] uses its economic might to bully third parties to accept illegal patent licenses of the patents-in-suit . . . upon the threat of expensive patent litigation," as well as Satco Products' allegation that "Complainants require licensees to pay royalties for the entire portfolio, regardless of whether products infringe with improper anti-competitive effect." *In re Certain LED Lighting Devices, LED Power Supplies, and Components Thereof*, Inv. No. 337-TA-1081, Order No. 27, 2018 WL 1110484, at *8, (Feb. 20, 2018). The Commission struck the allegations, explaining that Respondents' pleadings "contain[ed] no allegations of facts relating to anticompetitive effect." *Id.* at *9.

## III. LEGAL STANDARDS

### A. Rule 16

Rule 16 states that a schedule may only be modified "for good cause." Fed. R. Civ. P. 16(b)(4). "[A] party *cannot* establish good cause if they were

---

[1] Philips is Signify's former name.

not diligent in attempting to comply with the missed deadline." *United States ex rel. Southard v. Kipper Tool Co.*, No. 2:23-cv-225-RWS, 2024 U.S. Dist. LEXIS 134857, at *18 (N.D. Ga. June 3, 2024) (Story, J.) (emphasis in original). "Rule 16(b)'s good cause standard precludes modification of the scheduling order unless the schedule cannot be met despite the diligence of the party seeking the extension." *Davidson v. MTD Prods. Co.*, No. 24-11504, 2025 U.S. App. LEXIS 1588, at *8 (11th Cir. Jan. 24, 2025) (internal quotation marks & brackets omitted).

**B. Rule 15**

In pertinent part, Rule 15 states that "a party may amend its pleading only with . . . the court's leave." Fed. R. Civ. P. 15(a)(2). "A court may choose to deny a motion to amend a complaint when the amendment . . . is futile." *Ohai v. Delta Cmty. Credit Union*, No. 1:20-cv-02220-SCJ-AJB, 2021 U.S. Dist. LEXIS 124616, at *30 (N.D. Ga. June 7, 2021) (internal quotation marks omitted). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While "the Court must accept the facts alleged in the complaint as true, drawing all reasonable

inferences in the plaintiff's favor," "the Court ignores legal conclusions or factual contentions masquerading as legal conclusions." Dkt. No. 100 at 6 (internal quotation marks omitted).

### C. Patent Misuse

Patent misuse is a defense characterized "as the patentee's act of impermissibly broadening the physical or temporal scope of the patent grant with anticompetitive effect." *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (*en banc*) (citation modified). It is "a judicially created defense." *Id.* at 1329.

There are two types of misuse: misuse per se, and misuse under a rule of reason analysis. *Monsanto Co. v. McFarling*, 363 F.3d 1336, 1341 (Fed. Cir. 2004). "Under the rule of reason, the finder of fact must determine if the practice at issue is reasonably within the patent grant, i.e., that it relates to subject matter within the scope of the patent claims." *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1197 (Fed. Cir. 2005) (internal quotation marks omitted).

The misuse doctrine has a "narrow scope" and is "not available to a presumptive infringer simply because a patentee engages in some kind of wrongful commercial conduct, even conduct that may have anticompetitive effects." *Princo*, 616 F.3d at 1329 (citing *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998) ("Although the defense of patent misuse . . . evolved to protect against

'wrongful' use of patents, the catalog of practices labelled 'patent misuse' does not include a general notion of 'wrongful' use.")). This is because "the patent grant entitles the patentee to impose a broad range of conditions in licensing the right to practice the patent[,]" meaning "the doctrine of patent misuse has largely been confined to a handful of specific practices by which the patentee seemed to be trying to 'extend' his patent grant beyond its statutory limits." *Id.* (internal quotation marks omitted).

Indeed, Congress has placed limits on the doctrine of misuse, specifically excluding certain licensing practices from the scope of the defense. In particular, 35 U.S. Code § 271(d) provides that "no patent owner . . . Shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following: . . . (4) refused to license or use any rights to the patent; or (5) conditioned the license on any rights to the patent or the sale of the patented product on acquisition of a license to rights in another patent or purchase of a separate product, unless, in view of the circumstances, the patent owner has market power in the relevant market for the patent or patented product on which the license or sale is conditioned."

Thus, "[t]o establish the defense of patent misuse, the accused infringer must show that the patentee has power in the market for the tying product." *U.S. Philips Corp.*, 424 F.3d at 1186. Finally, to constitute patent misuse, "[t]he misuse must be

of the patent in suit." *Princo*, 616 F.3d at 1329.

## IV. ARGUMENT

### A. Rule 16's Good Cause Standard Precludes Modification of the Scheduling Order Because ETI was Not Diligent

The deadline to amend pleadings under the Court's Scheduling Order was September 21, 2025. Dkt. Nos. 101-1 at 4; 22 at 9–10; 23. ETI therefore must satisfy Rule 16(b)(4) before it can obtain leave to amend its answer to add a patent misuse defense and counterclaim.[2] That rule requires ETI to show "good cause," which in turn requires diligence. Fed. R. Civ. P. 16(b)(4); *Wells v. Gen. Dynamics Info. Tech. Inc.*, 571 F. App'x 732, 734 (11th Cir. 2014) ("A lack of diligence in pursuing a claim is sufficient to establish a lack of good cause under Rule 16."). ETI lacks good cause for two independent reasons. First, the information underlying ETI's patent misuse allegations was known to ETI before this litigation began, yet ETI never timely asserted patent misuse. Second, even giving ETI the benefit of the doubt, ETI waited five and a half months after receiving the documents it now claims are relevant before seeking leave to amend.[3] Either failure independently warrants

---

[2] Patent misuse is an affirmative defense, not a counterclaim. This is yet another reason ETI's "counterclaim" of patent misuse should be struck. *Depuy, Inc. v. Zimmer Holdings, Inc.*, 343 F. Supp. 2d 675, 684 n.4 (N.D. Ill. 2004) ("Zimmer styles its patent misuse pleading as a counterclaim. However, patent misuse is an affirmative defense, not, a counterclaim.").

[3] ETI admits that it did not even serve discovery until after the deadline to amend pleadings, further highlighting ETI's lack of diligence. *See* Dkt. No. 101-1 at 4.

denial of ETI's motion. *See NCI Grp., Inc. v. Cannon Servs.*, No. 1:09-CV-0441-RWS, 2011 U.S. Dist. LEXIS 131908, at *14 (N.D. Ga. Nov. 16, 2011) (Story, J.) ("Factors that are relevant to the 'diligence' inquiry are whether the information supporting the proposed amendment was available to the plaintiff, and whether the plaintiff delayed in seeking leave to amend after obtaining that information.").

**1. ETI Had the Facts Underlying Its Allegations Prior to the Deadline in the Scheduling Order, Precluding a Showing of Good Cause**

**i. ETI Admits that it Had the Underlying Facts for its Patent Misuse Allegation for Years**

ETI argues that its patent misuse claims are "based on newly discovered evidence obtained after the amendment deadline." Dkt. No. 101-1 at 1. But that assertion is contradicted by the very allegations ETI seeks to add. ETI bases those allegations on conduct that allegedly occurred during "pre-litigation negotiations" when ETI claims it was "pressure[d] . . . into accepting the Licensing Program under threat of litigation" and presented "two alternatives" including "a portfolio-wide license incorporating the standardized Licensing Program terms, including a worldwide revenue base, coverage waiver and Qualified Supplier structure." Dkt. No. 103-2 ("Amended Answer"), ¶¶169–70.

Signify disputes that anything it did during pre-litigation negotiations could support a patent misuse claim. But even accepting ETI's theory, those allegations foreclose any showing of diligence under Rule 16. If ETI believed that Signify's

alleged pre-suit licensing offer supported a patent misuse defense, it should have asserted that defense when it answered the Complaint—or, at the latest, by the September 21, 2025 amendment deadline. It did neither. Indeed, ETI never mentioned patent misuse to Signify until filing the present motion. Under Rule 16, that delay is fatal to ETI's motion. The Eleventh Circuit has made clear that Rule 16(b)'s good-cause standard permits modification of a scheduling order only where "the schedule cannot be met despite the diligence of the party seeking the extension." *Davidson*, 2025 U.S. App. LEXIS 1588, at *8. "This rule is strictly enforced." *Morgan v. Bill Vann Co., Inc.*, No. 11-0535-WS-B, 2012 U.S. Dist. LEXIS 97431, at *6 (S.D. Ala. July 13, 2012). ETI's own proposed allegations show that it knew of the supposedly relevant conduct before this case began and therefore cannot satisfy Rule 16.

Pleadings in this case likewise confirm that ETI was aware not only of Signify's position that ETI needed a license when Signify filed its Complaint, but also of Signify's efforts to obtain a license for years before this case began. For example, multiple documents show that Signify had been attempting since 2015 to negotiate with ETI regarding ETI's longstanding infringement. *See* Dkt. Nos. 1, ¶38; 30-1 at 3–4. ETI has likewise acknowledged that it knew, for years before this case, that Signify was attempting to negotiate a license with ETI. Dkt. No. 14 at 1. And ETI's own document production includes materials showing that, in 2021, Signify

told ETI it needed a license and directed ETI to Signify's Enabled licensing program. *See* Ex. 2 at 1 (noting that Signify had already explained its SSL licensing program to ETI, including the availability of a portfolio license, and directing ETI to Signify's website for more information.). ETI therefore cannot credibly claim that it was unaware of Signify's licensing position or program before this lawsuit began. Instead, ETI chose to wait until eight months after the pleading amendment deadline—and only after the Court struck its deficient (and unrelated) inequitable-conduct claims—to assert these new allegations.

**ii. Public Documents Contained the Facts ETI Relies on Prior to the Filing of this Lawsuit**

ETI not only knew the facts underlying its belated patent misuse theory from its own interactions with Signify, but those same facts were also publicly available before this lawsuit was filed. ETI's theory appears to rest on alleged "royalty overbreadth" and on "royalty relief" related to the Signify's Qualified Supplier program. *See e.g.*, 103-2, ¶¶177–78. Leaving aside the merits of that theory, the relevant features of Signify's licensing program were publicly accessible and could have been identified at the outset of this case. For example, Signify's website contained—and still contains—information describing the licensing options available to prospective licensees. *See* Ex. 1 (webpage from Signify's website as it appeared on April 29, 2025, just days before this action was filed). Among other things, the site lists the number of licensees and explains that one available option is

a "flat rate approach" under which licensees pay "a single percentage flat rate." *Id.* at 1–2, 13. The webpage also expressly discusses "Qualified components / exemption of royalty." *Id.* at 13. Signify likewise publishes public materials describing the "EnabLED Licensing Program," "flat rate approach," and "qualified components." Ex. 3 (Signify presentation dated March 2025) at 7, 10.

The facts underlying ETI's allegations were thus publicly available before this lawsuit was filed. That alone independently defeats any showing of good cause because a party "lacks the diligence required under Rule 16 when (1) the information giving rise to the need to amend was available . . . before the deadline expired." *James v. XPO Logistics Freight Inc.,* No. 1:24-CV-5149-CCB, 2026 U.S. Dist. LEXIS 85556, at *5 (N.D. Ga. Mar. 31, 2026). *See also AMG Trade & Distrib., LLC v. Nissan N. Am., Inc.*, 813 F. App'x 403, 408 (11th Cir. 2020) ("That the information supporting the proposed amendment to the complaint was available to the plaintiff even before she filed suit weighs against a finding of diligence." (citation modified)). That is especially true here, where Signify expressly directed ETI to publicly available information describing its licensing practices. *See supra,* Section II.A.

To the extent ETI contends it lacked Signify's license agreements before the amendment deadline, that does not establish good cause. At most, it shows only that ETI did not yet possess every piece of evidence it now cites—not that it could not have asserted its theory earlier. ETI alleges that these agreements demonstrate

Signify's "standard licensing program" (Dkt. No.103-2, ¶¶101–13) and "Qualified Supplier" structure (*id.*, ¶¶137–44). But, as explained above, those features of Signify's licensing program were known to ETI and publicly available before this action was filed. And even assuming the agreements provided additional support for ETI's theory—they do not—that still would not satisfy Rule 16. The question is not whether ETI later obtained more evidence; it is whether the Scheduling Order "could not be met despite the diligence of the party seeking the extension." *Davidson*, 2025 U.S. App. LEXIS 1588, at *8. It could have been met here.

The U.S. District Court of Arizona recently addressed a similar issue and held that a party may not preserve a claim past the amendment deadline simply in the hope of later obtaining additional supporting evidence:

> [P]laintiffs need only have a good-faith factual basis for the allegations in their pleadings. Admissible evidence becomes an issue later, at summary judgment or at trial. Much earlier in this litigation, [plaintiff[ could have alleged in good faith that [defendant's] MVR misrepresented the number of violations on his official MVD record. And even if [plaintiff] believed it prudent to conduct more research into the matter, he could have asked the Court to extend the deadline for amending pleadings before that deadline expired. Instead, he waited four months after it expired, and roughly a month before the end of fact discovery, to seek permission to belatedly inject a new liability theory into the case. The Court does not find [plaintiff] pursued his amendment with the sort of diligence Rule 16 demands.

*Omar v. Safety Holdings Inc.*, No. CV-23-02532-PHX-DLR, 2025 U.S. Dist. LEXIS 253368, at *4–5 (D. Ariz. Sept. 26, 2025).

ETI's remaining "new facts" fare no better, including its allegation that the

"Lepro litigation"—in which a jury found willful infringement of all asserted patents—constitutes new evidence supporting its patent misuse theory. *See* Dkt No.103-2, ¶¶149–162. ETI's own proposed pleading undercuts that point: it describes the Lepro allegations only as "further support[]," confirming that ETI does not view them as the basis for its patent misuse theory. *See id.*, ¶149. In any event, ETI's reliance on *Lepro* is legally misplaced. As explained below, a patent misuse claim cannot be premised on a patentee's efforts to enforce its patent rights against alleged infringement. *See* 35 U.S.C § 271(d). ("No patent owner . . . shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following: . . . (3) sought to enforce his patent rights against infringement or contributory infringement.").

Ultimately, ETI's motion and amended answer are nothing more than a belated attempt to inject new allegations into the case after the Court struck another of ETI's deficient counterclaims. Such gamesmanship in disregard of Scheduling Order deadlines should be rejected by this Court. The factual basis for ETI's patent misuse allegations is not new; ETI had it years before this lawsuit was filed. Rule 16 exists to prevent exactly this kind of late-stage revision of a party's theories. *Rav Bah., Ltd. v. Genting Ams., Inc.*, No. 24-CV-23874, 2026 U.S. Dist. LEXIS 37445, at *25 (S.D. Fla. Feb. 24, 2026) ("Rule 16 is designed to prevent parties from revising theories in reaction to motion practice when the factual basis for the theory

was available earlier.").

### 2. ETI Waited More Than Five Months Before Seeking to Amend After Receiving Licenses, Precluding a Showing of Good Cause

Even if the Court were to conclude that Signify's produced license agreements gave ETI a basis to seek amendment after the Scheduling Order's deadline, ETI's motion still fails because ETI did not act diligently in seeking leave to amend.

As ETI admits, Signify produced its license agreements to ETI on December 15, 2025. *See* Dkt. No. 101-1 at 2. ETI nevertheless waited more than five months—until May 28, 2026—to seek leave to amend, and did so only after the Court dismissed an unrelated counterclaim the day before. This delay demonstrates that ETI was not diligent. In fact, courts in this district and across the Eleventh Circuit routinely hold that even shorter delays preclude a finding of diligence. *Griffin v. Emory Healthcare*, No. 25-12457, 2026 U.S. App. LEXIS 13269, at *2–3 (11th Cir. May 7, 2026) ("She was not diligent, as she had the documents that formed the basis of her amendments since—at the latest—September 27, 2024, and did not file until four months later, on January 27, 2025."); *Diversey, Inc. v. Pops Techs.*, No. 1:18-CV-04210-AT, 2019 U.S. Dist. LEXIS 234409, at *14 (N.D. Ga. Nov. 13, 2019) ("By waiting four months after learning of the facts underlying the basis for inducement and contributory infringement claims on '441 Patent, Diversey's actions do not exhibit the diligence required to establish good cause under Rule 16."); *EEOC v. Exel Inc.*, 259 F.R.D. 652, 655 (N.D. Ga. 2008) ("[A]n over two month

delay between the time Baugh's deposition was taken and the motion to amend was filed does not show 'good cause.'").

And ETI offers no adequate explanation for its over five-month delay. Instead, it says only that it was occupied with other aspects of the case, even though it sought and received substantial extensions for many of those matters. *See e.g.*, Dkt. Nos. 33, 86. That excuse is insufficient as a matter of law to establish good cause under Rule 16. *Martinez v. D2C, LLC*, No. 23-21394-Civ-Scola, 2024 U.S. Dist. LEXIS 52297, at *6–7 (S.D. Fla. Mar. 25, 2024) ("Diligence means more than just being busy."). The problem is especially acute here because ETI not only delayed for months, but also failed to give Signify any notice that it intended to seek amendment.[4]

The bottom line is that ETI did not act diligently. Because ETI cannot satisfy Rule 16's good-cause standard, its motion for leave to amend should be denied.

### B. ETI's Motion to Amend Should be Denied Under Rule 15 Because the Amendment is Futile

ETI's theory of patent misuse is extraordinary. According to ETI, every single one of Signify's patents is unenforceable because Signify has entered into 1,600+

[4] Notably, ETI also never sought an extension of the amendment deadline—not before September 21, 2025, and not during the five-and-a-half months between receiving Signify's license agreements and filing its motion. If ETI genuinely believed it needed additional time to evaluate a patent misuse theory, it could have moved for an extension of the amendment deadline at any point. Its failure to do so confirms that ETI was not diligently pursuing its amendment.

portfolio licenses—a practice that is not only endorsed by the Federal Circuit but also specifically allowed by statute. The foundation of ETI's misuse claim is so weak that neither its Motion for Leave nor the proposed Amended Answer cite to even a *single* case on the doctrine of misuse. And while ETI attempts to cobble together a listing of allegedly anticompetitive activities, it fails to provide *any* factual allegations regarding the patents that are at issue in this case, as it must do to support a misuse defense. ETI's misuse defense is nothing more than a generalized complaint that Signify has patents and chooses to enforce them. The Court should therefore find that ETI has failed to plausibly allege misuse, and its motion for leave should be denied as a result.

**1. ETI Failed to Allege Misuse of Any Particular Patent-in-Suit**

In order to survive dismissal, allegations of misuse must be tied to the Asserted Patents. *See Princo*, 616 F.3d at 1329 ("[T]he misuse must be of the patent in suit.") (citing *Kolene Corp. v. Motor City Metal Treating, Inc.*, 440 F.2d 77, 84–85 (6th Cir. 1971). As explained by one court, there is **"no authority suggesting . . . 'misuse in the air.'"** *Kolene Corp.*, 440 at 84–85 (emphasis added). Yet, that is exactly where ETI's allegations are.

Not once in the proposed misuse counterclaim does ETI analyze the Asserted Patents or their scope, nor does ETI provide any factual allegation about how the scope of any specific Asserted Patent has been extended beyond Signify's statutory

right to exclude. ETI instead presents a parade of untethered allegations that fail to connect supposed misconduct to any particular Asserted Patent. Such allegations are insufficient to plead patent misuse.

**2. ETI Has Not Adequately Identified the Relevant Market**

"To establish the defense of patent misuse, the accused infringer must show that the patentee has power in the market for the tying product." *U.S. Philips Corp.*, 424 F.3d at 1186. ETI alleges, without factual support, that the "relevant market" is "cove and concealed lighting." *See* Dkt. No. 103-2, ¶99. But, ETI fails to plead any *factual* allegations tying this conclusion to the Asserted Patents or their scope. Accordingly, the Court need not accept that conclusory allegation.

Several of the Asserted Patents themselves demonstrate that ETI's assertion that the "relevant market" is "cove and concealed lighting" is incorrect. U.S. Patent No. 7,654,703 is entitled "Directly Viewable Luminaire"—the antithesis of cove lighting.[5] U.S. Patent Nos. 9,677,727 and 10,473,280 are entitled "Wall Pack Light Fixture," which are typically conspicuously attached to the outer walls of buildings. *See e.g.,* Dkt. No. 1-6 at 1:21–23. At least these asserted patents do not fall within the "cove and concealed lighting" segment. The claims of U.S. Patent Nos. 7,511,437, 10,506,682, and 11,408,588 also undermine ETI's incorrect market

[5] The Court may properly consider the Asserted Patents as they are both cited in and are central to ETI's proposed counterclaim and no party contests the contents of any Asserted Patent.

analysis as they are directed to various aspects of driver or control circuitry and are agnostic to the particular lighting application.

ETI's failure to plausibly define the *relevant* market is therefore another reason amendment would be futile.

**3. Signify's Royalty Base is Not Overbroad**

ETI's proposed misuse counterclaim also states, generally, and without identifying any specific license covering the Asserted Patents, that the royalty base used in Signify's licenses is overbroad. ETI specifically alleges that the use of a "total worldwide Net Revenue" royalty base is overbroad with respect to geography and product scope. That theory is both legally wrong and factually unsupported.

First, the Federal Circuit has endorsed the total revenue approach when done for the convenience of the parties. *See, e.g.*, *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1408 (Fed. Cir. 1996); *see also Zenith Radio Corp. v. Hazeltine Res., Inc.*, 395 U.S. 100, 138 (1969) ("If convenience of the parties rather than patent power dictates the total-sales royalty provision, there are no misuse of the patents and no forbidden conditions attached to the license."). Following this rationale, courts have similarly approved a worldwide royalty base where a product is patented in many jurisdictions and the parties agree to use worldwide sales a matter of convenience rather than conduct a jurisdiction-by-jurisdiction analysis. *See Trading Techs. Int'l, Inc. v. IBG LLC*, No. 10-Cv-715, 2021 U.S. Dist. LEXIS 334, at *13

(N.D. Ill. Jan. 4, 2021).

Here, as ETI admits, the cited licenses expressly state that the royalty base was adopted for "convenience." *See* Dkt. No. 103-2, ¶112. ETI tries to avoid that admission by labeling the convenience rationale a "sham," but fails to plead *facts* from which the Court could plausibly draw that inference. That deficiency is fatal because ETI's allegation that certain provisions in Signify's contracts are "shams" sounds in fraud and must be pled with particularity under Rule 9(b). *Allergan Holdings Unlimited Co. v. MSN Labs. Priv. Ltd.*, Civil Action No. 23-794-RGA, 2024 U.S. Dist. LEXIS 126557, at *15 (D. Del. July 17, 2024) (finding Rule 9(b) applied where a patent-misuse defense sounded in fraud). ETI's allegations fail to satisfy Rule 8, much less Rule 9(b). In virtually identical circumstances, courts have rejected such unfounded and undeveloped misuse theories. *See, e.g.*, *Trading Techs. Int'l, Inc.*, 2021 U.S. Dist. LEXIS 334, at *13 (granting summary judgment of no misuse). The Court should do the same here.

#### 4. Neither ETI's Allegations Regarding Certain License Agreements Nor its "Statistical Analysis" Support a Finding of Misuse

In Section IV (¶¶114–126) and V (¶¶127–133) of its proposed misuse counterclaim, ETI purports to recite the history of license agreements between Signify and certain parties, and then offers a purported "statistical analysis" of Signify's licensing history. These allegations fail to support an inference of misuse. ETI does not allege that any of the Asserted Patents were at issue in the referenced

litigations, specifically negotiated in the cited agreements, or included in the licenses underlying ETI's "statistical analysis." Thus, even if these allegations suggested misuse (which they do not), they are insufficient to support an inference that any Asserted Patent was misused—a necessary element for ETI's patent misuse claim.

ETI also omits any discussion of the alleged Relevant Market with respect to these licenses. Instead, ETI alleges that its statistical analysis "independently evidences market power," but ETI fails to identify a single patent that it believes relevant to the "cove and concealed lighting" market it identified as the "Relevant Market."

ETI's allegations also show (and ETI plainly admits) that Signify is willing to modify its standard licensing terms. *See* Dkt. No. 103-2, ¶114. Signify's willingness to not only enter into good-faith negotiations with those who infringe its intellectual property, but also to then license that property when it is under absolutely no obligation to do so (*see* 35 U.S. Code § 271(d)(4)) is unquestionably procompetitive—the licensing program is called EnabLED for a reason. The fact that Signify has been willing to do so over 1,700 times only underscores the procompetitive nature of Signify's licensing program.

**5. Signify is Entitled to Confidentiality**

ETI's allegations regarding confidentiality are entirely meritless and serve only to highlight ETI's willingness to make conclusory allegations without regard

to the underlying legal or factual merits. Confidentiality provisions are, of course, standard in business negotiations between parties, including license agreements, and are routinely endorsed. *See e.g.*, *Uniloc USA, Inc. v. Apple Inc.*, 25 F.4th 1018, 1024 (Fed. Cir. 2022) ("But no rule of law or binding precedent says that the public is generally entitled to know what consideration a patentee receives for licensing its patent."); *Pub. Citizen Health Rsch. Grp. v. Nat'l Insts. of Health*, 209 F. Supp. 2d 37, 53 (D.D.C. 2002) (noting that that "every licensing agreement contains a confidentiality clause" and that disclosure of royalty information would "seriously impair" the agency's ability to carry out its public health responsibilities, since "licensees will not negotiate with NIH without an expectation that the financial terms of the licenses will remain confidential."); *Gaull v. Wyeth Laboratories, Inc.*, 687 F. Supp. 77, 83 (S.D.N.Y. 1988) (finding that disclosure of license terms would have "chilling effect . . . on future settlement negotiations in other litigation.").

**6. The Qualified Supplier Structure Is Not a Tying Arrangement**

ETI also alleges that Signify's license agreements include a tying arrangement. These allegations amount to nothing more than legally unsupported attorney argument. A tying arrangement is one "in which a patentee conditions a license under the patent on the purchase of a separable, staple good." *U.S. Philips Corp.*, 424 F.3d at 1185. In other words, the license is conditioned on the purchase of a product or good that has nothing to do with the patent being licensed.

Despite using the word "tying," ETI does not actually allege a tying arrangement. As ETI acknowledges, the Qualified Supplier arrangement is an *exemption* under with the licensee need not pay any royalites to Signify if it purchases certain components from a Qualified Supplier. It is not a requirement that a licensee purchase from a Qualified Supplier—quite the opposite. This defect alone is fatal to ETI's allegations regarding tying.

ETI's allegations that the tied products are "(1) LED light engine modules; (2) LED drivers; and (3) output-control components" are also meritless. *See* Dkt. No. 103-2, ¶139. Rather than being unrelated components, each of these components is covered by the patented technology. Indeed, every one of the Asserted Patents in this case claims one or more of these components. By way of example, claim 1 of U.S. Patent No. 8,789,978 specifically recites "at least one LED light source" and "a driver electrically coupled to the at least one LED light source." Similarly, claim 1 of U.S. Patent No. 10,506,682 recites "a control module" that has "at least one first switch," as well as "a light source coupled to the control module." Thus, even if the Qualified Supplier arrangement was a tying arrangement (it is not), it still would not constitute impermissible misuse as the allegedly tied products are components of the patented inventions.

**7. Allegations Regarding Satco and Lepro**

As with ETI's allegations concerning other specific parties, the allegations

concerning Satco and Lepro do not even suggest misuse. As an initial matter, ETI has not provided any analysis regarding the patents at issue in either case and thus cannot use those cases to establish misuse of the Asserted Patents in this case.

Furthermore, Signify is entitled to enforce its patent rights and doing so is not patent misuse. *See* 35 U.S. Code § 271(d). Whether Signify has been willing to license to Lepro is therefore irrelevant. Signify took Lepro to trial, where a jury found that Lepro willfully infringed Signify's patents. Given Lepro's exceptional conduct, Signify has the statutory right to seek enhanced damages and attorneys fees. This Court should not condone ETI's improper effort to twist Signify's exercise of its statutory rights against a party found to willfully infringe its patents into a claim of patent misuse.

There is likewise no legal basis for ETI's position that license terms must be the minimum "necessary to enforce patent rights." *See* Dkt. No. 103-2, ¶147. "A patentee has the right to exclude others from profiting from the patented invention . . . include[ing] the right to suppress the invention while continuing to prevent all others from using it, . . . to license others, or refuse to license, and to charge such royalty as the leverage of the patent monopoly permits." *U.S. v. Studiengesellschaft Kohle, m.b.H*, 670 F.2d 1122, 1127 (1981).

**8. ETI Has Not Identified Any Anticompetitive Effects**

While ETI's misuse counterclaim purports to identify "anticompetitive

effects," ETI has not provided a single detailed factual allegation. Instead, ETI has provided nothing but generalized conclusions, which the Court need not accept. This defect alone is sufficient to dismiss ETI's patent misuse counterclaim, as other courts have already found. *See supra,* Section II.C.

#### 9. Signify's Conduct with Respect to ETI Is Not Misuse

Finally, ETI alleges that Signify's enforcement efforts against ETI constitute misuse. *See* Dkt. No. 103-2, ¶¶169–176. As an initial matter, ETI acknowledges that Signify offered ETI a license limited to the Asserted Patents. That allegation refutes any suggestion that Signify demanded an overbroad license from ETI. *Id.* at ¶170. Moreover, Signify's offer of a portfolio license to ETI is not misuse for the reasons described above. Finally, ETI's allegation that Signify has relied on invalid patents (¶175) is wholly without merit. ETI cites to Ex. BB, which is a final written decision in which claims of U.S. Patent No. 10,299,336 ("the '336 Patent") were *confirmed valid.* Dkt. No. 101-30 at 4, 163. Thus, Signify is perfectly within its rights to enforce those claims against any and all infringers. ETI's intentional inaccuracy aside, the '336 Patent has not been asserted against ETI in this action; ETI therefore cannot establish misuse of an Asserted Patent based on the '336 Patent.

## V. CONCLUSION

Based on the foregoing, Signify respectfully requests that the Court deny ETI's motion for leave to file an amended answer and counterclaim of patent misuse.

Dated: June 11, 2026

Respectfully submitted,

/s/ *Joshua M. Weeks*
W. Peachtree Street
Atlanta Joshua M. Weeks
Georgia Bar No. 545063
ALSTON & BIRD LLP
1201, Georgia 30309
Telephone: (404) 881-7405
joshua.weeks@alston.com

Adam D. Swain
ALSTON & BIRD LLP
950 F. Street, NW
Washington, D.C. 20004
Telephone: (202) 239-3300
adam.swain@alston.com

Ravi Shah
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9459
ravi.shah@alston.com

Sierra B. Weingartner
ALSTON & BIRD LLP
1120 S. Tryon Street, Suite 300
Charlotte, NC 28203
Telephone: (704)444-1242
sierra.weingartner@alston.com

*Attorneys for Signify Holding B.V. and Signify North America Corporation*

## LOCAL RULE 7.1(D) CERTIFICATION

The undersigned hereby certifies that on June 11, 2026, the foregoing **Plaintiffs' Opposition to ETI's Motion for Leave** was prepared in Times New Roman, 14-point front, in compliance with Local Rule 5.1.

Dated: June 11, 2026

*/s/ JOSHUA M. WEEKS*
Joshua M. Weeks

**CERTIFICATE OF SERVICE**

This is to certify that I have this day electronically filed the foregoing Plaintiffs Signify North America Corporation and Signify Holding B.V.'s Opposition to ETI's Motion for Leave with the Clerk of Court using the CM/ECF System.

This 11th day of June, 2026.

/s/ *Joshua M. Weeks*
Joshua M. Week