**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V.,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>ETI SOLID STATE LIGHTING, INC.<br><br>Defendant/Counterclaim Plaintiff. | Case No. 2:25-cv-00121-RWS<br><br>Hon. Judge Richard W. Story |

**ETI'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE A SECOND AMENDED ANSWER AND COUNTERCLAIMS**

# Table of Contents

I. There is Good Cause To Amend the Claims Under Rule 16 .....1

A. Because Signify Kept Its Licensing Terms Confidential, ETI Could Not Assert Patent Misuse Before the Amendment Deadline .....1

B. ETI Diligently Sought Relevant Facts to Plead Patent Misuse .....4

C. ETI Diligently Moved to Amend Shortly After Reviewing the [redacted] Pages of License Agreements from Signify .....4

II. ETI's Motion Is Appropriate Under Rule 15 .....7

A. Signify Will Not Be Prejudiced if the Court Grants Leave .....7

B. ETI's Patent Misuse Defense is Governed by Plausibility .....7

C. ETI Plausibly Alleges That Signify Uses the Asserted Patents to [redacted] .....8

D. The Court Cannot Resolve Signify's Merits Arguments .....9

E. Signify's Patent Misuse Cases are Easily Distinguished .....9

F. ETI Identified the Relevant Market .....10

G. Signify's Royalty Requirement Impermissibly [redacted] .....12

H. ETI's Patent Misuse Defense is Not Predicated on Fraud .....13

I. ETI Alleges That Signify's Licensing Practices are Anticompetitive .....14

III. CONCLUSION .....15

## I. There is Good Cause To Amend the Claims Under Rule 16

### A. Because Signify Kept Its Licensing Terms Confidential, ETI Could Not Assert Patent Misuse Before the Amendment Deadline

Signify's opposition incorrectly conflates two different concepts: because ETI generally knew Signify had a licensing program prior to the commencement of litigation, this also means ETI somehow knew about Signify's confidential licensing terms. (*See* ECF 107, 1, 2, 8, 11.) But knowing about Signify's licensing program is different than learning in litigation that Signify's confidential license provisions require licensees [redacted]—which is the basis for ETI's patent misuse defense.

ETI had no such knowledge until December 2025 when Signify for the first time produced [redacted] license agreements (i.e., more than [redacted] pages)—months after the amendment deadline. (ECF 107, 3.) It took ETI months to review all of those license agreements while still handling all other aspects of this suit, including: (1) addressing Signify's improper infringement contentions that the Court ordered Signify to amend (ECF 96); and (2) briefing claim construction on dozens of claimed terms. (ECF 77; ECF 91; ECF 92.) ETI was diligent under these circumstances.

Signify incorrectly points to its website and a PowerPoint presentation to claim that ETI had knowledge prior to its December 2025 production. (ECF 107, 11–12 (citing Exs. 1 and 3).) Neither document identifies that licensees have to pay royalties on all revenue whether or not products are covered under Signify's patents.

Signify's website merely identifies a "flat rate approach" and an "exemption of royalty"—neither of which disclose Signify's real licensing scheme that it maintains as confidential. (*Id.* (citing Ex. 1, 13–14).) The PowerPoint similarly identifies a "flat rate approach" and "qualified components." (*Id.* (citing Ex. 3, 8, 11).) Signify's website and PowerPoint do *not* disclose the confidential terms that form the basis of ETI's patent misuse defense, such as: [redacted] (*Id.*)

In fact, the PowerPoint and website suggest [redacted] a royalty structure would be tailored to products that are "relevant and require a license." (*See* ECF 107-2 and 107-4.) The confidential license agreements Signify disclosed in December 2025 [redacted] and confirms the good cause for ETI's motion.

Signify never disputes that it always maintained the operative contract language for its licensing program confidential and unavailable to ETI. (ECF 107.) Signify's strict confidentiality of its licensing terms refutes its argument that ETI would have known them prior to December 2025. For example, Signify's counsel confirmed to ETI in 2021 that its license agreement terms were confidential:

> Another reason why we need an NDA is to allow Signify to share its confidential patent licensing templates with ETi. *Whereas general information about Signify's licensing program is online*, as you pointed

> out, *the template licenses* *(just like our 1,300+ licensing agreements) are confidential and not publicly available*.

(Ex. A, July 13, 2021, Email from Hartoonian to Hochberg, 1 (emphasis added).) This evidence from Signfy's counsel about the confidential nature of Signify's license terms, and no disclosure of them to ETI, contradicts its opposition argument.

Signify also ignores a critical fact: during the parties' prelitigation discussions, Signify refused to disclose the specific terms of its licensing program unless ETI first executed a nondisclosure agreement. (*Id.*) ETI declined to do so. Thus, the record establishes that ETI did not receive them before this litigation because Signify affirmatively conditioned disclosure on execution of an NDA.

Signify argues that confidentiality provisions are "standard," but this misses the point. (ECF 107, 21–22.) ETI does not contend that Signify acted improperly by maintaining confidentiality. Rather, Signify cannot simultaneously argue that these license terms were publicly available while the evidence shows Signify treating them as confidential until Signify produced them in December 2025.

Signify also argues that Signify "presented ETI with two alternative[]" license structures pre-litigation. (ECF 107, 9.) Signify, however, *never* provided ETI with a formal proposal until December 2025—the same month it produced its confidential license agreements for the first time. (Ex. B, December 18, 2025, Email from Mher to Cupar, 1.) The evidence shows: (1) Signify did not publicly disclose that licensees must [redacted]; (2) Signify only did

so confidentially; and (3) Signify disclosed those to ETI in December 2025. (Ex. B; Ex. C, December 15, 2025 Email from Shah to Cupar, 1.)

B. ETI Diligently Sought Relevant Facts to Plead Patent Misuse

Signify argues that ETI could not have been diligent because it served discovery requests five days after the amendment deadline. (ECF 107, 8 n. 3.) Signify cites no law supporting its position, and courts have allowed amendments in such situations. *See Bowers v. American Heart Ass'n*, 513 F.Supp.2d. 1364 (N.D. Ga. 2007) (good cause based on deposition after amendment deadline).

Even if ETI had served the discovery requests five days earlier or with its first amended answer and counterclaims on August 27, 2025, ETI still would have been unable to meet the amendment deadline 21 days later because: (1) Signify would have been allowed 30 days to respond under Rule 34; and (2) Signify insisted on negotiating and entering a protective order before producing the licenses at issue, delaying production of those licenses by three months. (*See* ECF 62.) Signify's delayed production of its confidential licenses until the Court entered a protective order refutes its opposition argument that ETI was not diligent.

C. ETI Diligently Moved to Amend Shortly After Reviewing the 90,000 Pages of License Agreements from Signify

Signify incorrectly argues that the passage of five months from the time it served [redacted] pages of [redacted] confidential licenses to the time ETI filed its motion shows lack of diligence. (ECF 107, 15–16.) Not so. The cases Signify cites are

distinguishable. *See Griffin v. Emory Healthcare*, No. 25-12457, 2026 U.S. App. LEXIS 13269 (11th Cir. May 7, 2026) (affirming denial because motion was filed after discovery closed); *Diversey, Inc. v. Pops Techs.*, No. 1:18-CV-04210-AT, 2019 U.S. Dist. LEXIS 234409 (N.D. Ga. Nov. 13, 2019) (all necessary information was publicly available and plaintiff offered no explanation for delay); *EEOC v. Exel Inc.*, 259 F.R.D. 652 (N.D. Ga. 2008) (counsel attended deposition where information provided and no additional research required to immediately seek leave); *cf. Maree v. Igou*, No. 7:19-CV-00046 (WLS), 2020 WL 13281408, at *2 ("The mere passage of time, without anything more, is an insufficient reason to deny leave to amend.").

The opposite is true: courts have found diligence when a party receives large amounts of evidence that requires months to review, analyze the law, and then file a motion to amend the pleadings after. *See Nobles v. Rural Community Ins. Servs.*, 303 F.Supp.2d 1279, 1281–85 (M.D. Al. 2004) (finding diligence, despite moving to amend six months after June deadline, because opposing counsel did not produce 2,000 pages of information until September and plaintiff "diligently pursued the discovery efforts"); *Maree*, 2020 WL 13281408, at *2 (finding diligence after deadline because "two months is not an unduly delayed period of time to review document and video productions and prepare an amended complaint" nor was "five weeks an unreasonably long time to prepare a motion to amend").

While making the bald argument that ETI "waited" five months, Signify provides no evidence or explanation on how long it would take to: (1) analyze over [redacted] pages across [redacted] licensing agreements; (2) draft 87 paragraphs of patent misuse contentions (ECF 101-02, ¶¶ 96–182); (3) prepare 11 new exhibits to that amended pleading (ECF 101-20–101-30); (4) draft the motion for leave (ECF 101); (5) research and prepare the 14-page brief in support (ECF 101-01); (6) draft a proposed order (ECF 102); (7) prepare redacted copies of (2), (3), and (5); (8) draft a notice under seal (ECF 103); (9) draft a motion of that sealed filing (ECF 104); and (10) draft a proposed order. (ECF 104-1.)

Signify acknowledges it took: (1) 10 years to file this suit (ECF 107, 1–2); and (2) three months to produce its license agreements after ETI served discovery requests. (*Id.* at 2–3.) The Court should reject Signify's diligence double standard.

Signify does not contest that it took ETI a significant amount of time to review and analyze the [redacted] pages. (ECF 107, 8–9; Ex. C.) Instead, Signify argues that ETI simultaneously working on numerous other obligations in this suit was insufficient. (ECF 107, 16.) Signify misses the point. ETI does not argue busyness alone shows diligence, but that analyzing the licenses coupled with all of the other obligations in this case further establishes diligence, not delay.

Signify also complains ETI did not provide notice before moving to amend the pleadings. (ECF 107, 16.) The Local Rules do not require such prior notice, and

Signify cites no law requiring such notice. Signify's bald argument that ETI improperly filed the motion a day after the Court issued an order as an act of gamesmanship are both meritless. (ECF 107, 3, 14). That is coincidence. ETI was diligent in pursuing its patent misuse defense in accordance with Rule 16.

## II. ETI's Motion Is Appropriate Under Rule 15

### A. Signify Will Not Be Prejudiced if the Court Grants Leave

Signify would not be unduly prejudiced if the Court were to grant ETI's motion. The Court has not yet scheduled a *Markman* hearing, discovery will not end until 45 days after a claim construction ruling pursuant to L.P.R. 6.7, and granting ETI's motion will not require any amendment to the current scheduling order.

Signify does not dispute that ETI would be prejudiced if the Court were to deny ETI's motion. (*See* ECF 107). Denying ETI's motion would deny ETI the ability to raise a defense where the facts necessary to raise patent misuse were unavailable until Signify's December 2025 production. *Supra* § I.A. Justice supports allowing ETI to amend the pleadings.

### B. ETI's Patent Misuse Defense is Governed by Plausibility

Signify acknowledges that futility is evaluated under the same Rule 12(b)(6) standard. (ECF 107, 5–6.) The Court only needs to determine whether ETI plausibly alleges patent misuse. (ECF 100, 7.) Signify acknowledges that the Court must

accept ETI's factual allegations as true and draw reasonable inferences in ETI's favor. (*Id.* (citing ECF 100, 6).)

C. ETI Plausibly Alleges That Signify Uses the Asserted Patents to [redacted]

ETI plausibly alleges patent misuse. (ECF 101-02, ¶¶ 96–182.) ETI alleges:

- Signify's [redacted] licenses and its prior litigation history shows how it systematically and improperly leveraged its patents. (*Id.* at 114–33, 145–68.);

- Signify misuses the Asserted Patents against ETI by [redacted] (*Id.* at ¶¶ 109–12, 169–82.); and

- Signify misused the Asserted Patents as leverage to require [redacted] (*Id.* at ¶¶ 109–12, 127–33.)

Accepting those allegations as true, ETI plausibly alleges patent misuse.

Those allegations fall squarely within the type of conduct the Supreme Court identified as patent misuse: using patent leverage to [redacted]. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 135 (1969) ("[redacted]"). [redacted]

[redacted] *Id.* at 139.

D. The Court Cannot Resolve Signify's Merits Arguments

Signify's futility arguments fail because they depend on disputing ETI's interpretation of Signify's confidential licenses and the economic effect of those agreements. (ECF 107, 16–25.) Those disputes concern the meaning, operation, and economic effect of Signify's licensing agreements and present factual issues that cannot be resolved at this stage. The relevant inquiry therefore is whether ETI plausibly alleges misuse.

E. Signify's Patent Misuse Cases are Easily Distinguished

Signify cites two cases that are distinguishable. (ECF 107, 3–4.) In *Signify Corp. v. Reggiani Lighting USA, Inc.*, the court rejected Reggiani's pleading because it was based on a "bad faith" theory the Federal Circuit previously rejected. 2020 WL 1331919 (S.D.N.Y. Mar. 23, 2020) (citing *C.R. Bard. v. M3 Systems, Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998)). The Court noted Reggiani's pleading contained no allegations of "licensing conditions that have 'the effect of impermissibly broadening the patent grant.'" *Id.* ETI alleges precisely that type of conduct here.

*In re Certain LED Lighting Devices* is distinguishable because the ITC uses a different pleading standard than Rule 15. ITC cases require a unique pleading

standard under 19 C.F.R. § 210.13(b) requiring "as much specificity as possible" that is different that Rules 8, 9, 12, and 15. Inv. No. 337-TA-1081, Order No. 27, 2018 WL 1110484, at *7–9, (Feb. 20, 2018). While those heightened pleading standards do not apply here, ETI nevertheless pled with specificity in its 87 paragraphs of new patent misuse contentions. (*See, e.g.*, ECF 101-02, ¶¶ 96–182.)

To show that difference in pleading standards, the ITC dismissed Satco from the above proceeding and Satco later successfully asserted its patent misuse defense in federal court. *Signify North America Corp. v. Satco Products, Inc.*, No. 2:19-cv-06125 (E.D.N.Y.) (Dkt. 10 (Satco's answer), ¶¶ 157–70). [redacted]

F. <u>ETI Identified the Relevant Market</u>

Signify argues that ETI must plead facts establishing market power, but ETI did not do so. (ECF 107, 18 (citing *U.S. Philips Corp. v. Int'l Trade Com'n*, 424 F.3d 1179, 1186 (Fed. Cir. 2005))). Signify's argument overlooks a dispositive distinction identified in the *U.S. Philips* case: proof of market power is required only for patent misuse theories predicated on patent tying under 35 U.S.C. § 271(d)(5).

*Id.* (citing *Independent Ink, Inc. v. Ill Tool Works, Inc.*, 396 F.3d 1342, 1349 n. 7 (Fed. Cir. 2005) ("Proof of actual market power is required to establish a patent misuse defense based on patent tying […] [as] codified at 35 U.S.C. § 271(d)(5) (2000)."), *rev'd on other grounds,* 545 U.S. 1127 (2005)).

*U.S. Philips* supports ETI's pleading, recognizing that leveraging patents to [redacted] constitutes patent misuse whether or not the licensor has market power. *See* 424 F.3d at 1184 ([redacted]). Signify then incorrectly misapplies that law to argue ETI failed to define the relevant market or establish that Signify has market power in the relevant "cove and concealed lighting" market. (ECF 107, 18–19.) ETI's pleadings complies with controlling law.

In any event, ETI alleges market power. (ECF 101-02, ¶ 99 (defining relevant market as "LED cove and concealed lighting luminaires, sold for general, architectural, theatrical, and entertainment illumination in the United States"), ¶ 100 (providing evidence of Signify's market power, including its 44.6% market share by revenue, $2.2 billion annual revenue in United States, and over 5,000 patents); ECF 101-21, EPICOR Cove and Concealed Lighting Market Share.)

Signify argues that ETI's allegations are not sufficiently "tied to the Asserted Patents." (ECF 107, 17–18.) ETI's pleading alleges otherwise, asserting that Signify relies on the Asserted Patents as leverage to [redacted]. (ECF 101-02, ¶¶ 109–12, 169–76, 180–81.) The Asserted Patents "significantly contribute to the practice under attack" because there is a "'connection' between the patent right and the misconduct in question." *See Princo Corp. v. Int'l Trade Com'n*, 616 F.3d 1318, 1331 (Fed. Cir. 2010). Thus, ETI's pleading shows that the Asserted Patents are not merely incidental to the challenged conduct; they are the source of [redacted].

Signify again does not argue plausibility but rather the merits of its market power at the pleading stage, which is incorrect as a matter of law.

G. Signify's Royalty Requirement Impermissibly [redacted]

Signify makes another merit-based argument that [redacted] does not constitute patent misuse because the parties could agree to [redacted] for the sake of convenience. (ECF 107, 19.) That argument does not address the plausibility of ETI's allegation that Signify improperly leverages the Asserted Patents to [redacted]. (ECF 101-01, ¶¶ 169–176.) Accepting those allegations as true, ETI

plausibly alleges patent misuse under *Zenith,* and Signify's disagreement with the merits of that allegation is of no consequence. *Zenith*, 395 U.S. at 135, 139.

Signify's reliance on its post-suit "alternative license" is another merits-based argument the Court should reject. (ECF 107, 9–10.) According to ETI's pleading, Signify's alternative license required: [redacted] (ECF 101-01, ¶ 171). ETI's pleading therefore plausibly shows that this "alternative license" was nothing more than a Hobson's choice.

Finally, Signify incorrectly analyzes only the number of irrelevant licensed patents in its portfolio, but not [redacted]. (ECF 107, 25); *see also Zenith*, 395 U.S. at 135 ([redacted]). Therefore, ETI's allegations are plausible.

H. <u>ETI's Patent Misuse Defense is Not Predicated on Fraud</u>

Signify makes a red herring argument that ETI's pleading is fraud-based under Rule 9(b). (ECF 107, 20.) ETI's theory of patent misuse is <u>*not*</u> fraud-based because ETI does <u>*not*</u> allege that the [redacted] language contained in the license agreements was fraudulent and does not seek to establish patent misuse based on

alleged misrepresentations made to other licensees. (*Cf.* ECF 107, 20 (citing *Allergan Holdings Unlimited Co. v. MSN Labs. Priv. Ltd.*, Civil Action No. 23-794-RGA, 2024 U.S. Dist. LEXIS 126557, at *15 (D. Del. July 17, 2024) (patent misuse claim sounded in fraud because it was based solely on allegations that "Plaintiffs filed suit to enforce a patent they knew to be invalid"); *Trading Techs. Inc. v. IBG LLC*, No. 10-Cv-715, 2021 U.S. Dist. LEXIS 334 (N.D. Ill. Jan. 4, 2021) (patent misuse defense not based on any fraud theory)). ETI instead alleges that it disputes that [redacted] and objects to Signify's insistence on [redacted]. (*See, e.g.*, ECF 101-02, ¶¶ 103–04, 108–12.)

I. <u>ETI Alleges That Signify's Licensing Practices are Anticompetitive</u>

Signify again incorrectly makes a merit-based argument that "ETI has not provided a single detailed factual allegation" concerning the anticompetitive effects of its licensing strategy. (ECF 107, 24–25.) ETI alleges detailed facts concerning the anticompetitive effects of Signify's licensing practices. (ECF 101-02, ¶¶ 163–68.) ETI also alleges that Signify uses the Asserted Patents to [redacted]

[redacted]. (*See* ECF 101-02, ¶¶ 103–12, 127–33, 145–62, 164–68.)

ETI's anticompetitive allegations are based on those identified in *Zenith*. As the Supreme Court explained, a patent owner may not [redacted]

That is exactly what Signify is doing here. ETI therefore has alleged not only the challenged licensing practices themselves, but also concrete anticompetitive effects flowing from those practices. Those allegations sufficiently defeat Signify's futility argument.

## III. <u>CONCLUSION</u>

For the reasons set out above, ETI respectfully requests that the Court grant its motion for leave to amend the pleadings.

Dated: June 25, 2026

Respectfully submitted,

*<u>/s/ Coby S. Nixon</u>*
Coby S. Nixon
Georgia Bar No. 545005
Seth K. Trimble
Georgia Bar No. 851055
Cory Mull
Georgia Bar No. 595376
**BUCHALTER LLP**
3475 Piedmont Road NE, Suite 1100
Atlanta, Georgia 30305
Telephone: (404) 832-7530
Email:cnixon@buchalter.com
strimble@buchalter.com
cmull@buchalter.com

David B. Cupar (*pro hac vice*)
**MCDONALD HOPKINS LLC**
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114
Telephone: (216) 348-5400
Email: dcupar@mcdonaldhopkins.com

*Counsel for Defendant and Counterclaim-Plaintiff ETI Solid State Lighting, Inc.*